1  DIANE ANDERSON (Bar No. 247393)
   ATTORNEY AT LAW
2  270 Hanford St., Suite B
   Sutter Creek, CA  95685
3  Telephone:  (209) 267-5214
   Attorneys for Plaintiffs
4  JOSEPH HARDESTY and YVETTE HARDESTY

5              UNITED STATES DISTRICT COURT

6      EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| 7  JOSEPH HARDESTY, an individual; and YVETTE HARDESTY, an individual, | CASE NO.: |
| 8  Plaintiffs, | **COMPLAINT FOR VIOLATIONS OF THE CLEAN AIR ACT; THE CIVIL RIGHTS** |
| 9  v. | **ACT OF 1871, 42 U.S.C. § 1983, BIVENS ACTION, THE SUPREMACY CLAUSE,** |
| 10 SACRAMENTO METROPOLITAN AIR | **THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, THE** |
| 11 QUALITY MANAGEMENT DISTRICT, a municipal entity and political subdivision of the | **FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE** |
| 12 state of California; DAVID GROSS, in his official and individual capacity as an employee | **FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION** |
| 13 of Sacramento Metropolitan Air Quality Management District; JAMES GOLDSTENE, | |
| 14 Executive Officer of California Air Resources Board, in his official and individual capacity; | **DEMAND FOR JURY TRIAL** |
| 15 OFFICE OF MINE RECLAMATION, a political subdivision of the state of California; | |
| 16 DENNIS O'BRYANT, in his official and individual capacity as an employee of the | |
| 17 Office of Mine Reclamation; GAY NORRIS, in her official and individual capacity as an | |
| 18 employee of the Office of Mine Reclamation; CALIFORNIA STATE MINING AND | |
| 19 GEOLOGY BOARD, a political subdivision of the state of California; STEVE TESTA, in his | |
| 20 official and individual capacity as an employee of the California State Mining and Geology | |
| 21 Board; ZACHARY SIMMONS, an individual; CALIFORNIA DEPARTMENT OF FISH | |
| 22 AND GAME, a political subdivision of the State of California; LIZ GREGORY, in her | |
| 23 official and individual capacity as an employee of the Department of Fish and Game; | |
| 24 SACRAMENTO COUNTY, a political subdivision of the state of California; | |
| 25 RICHARD SHERRY, Director of Sacramento Department of Planning and Community | |
| 26 Development, in his official and individual capacity; AND DOES 1 through 10, inclusive, | |
| 27 Defendants. | |
| 28 | |

COMPLAINT

1    Plaintiffs Joseph Hardesty and Yvette Hardesty (collectively "Hardesty"), allege as

2  follows:

3                    **JURISDICTION UNDER CIVIL RIGHTS ACT**

4         1.    This action is based on, and seeks to redress violations of, the Clean Air Act, Civil

5  Rights Act of 1871, 42 U.S.C. § 1983, the Supremacy Clause, the Fourth Amendment to the United

6  States Constitution, the Fifth Amendment to the United States Constitution, and the Fourteenth

7  Amendment to the United States Constitution.  Accordingly, this Court has jurisdiction over this

8  action pursuant to 28 U.S.C. §1331 & 1343, in that this action arises under the Constitution and

9  laws of the United States.

10                  **JURISDICTION UNDER A BIVENS ACTION**

11        2.    This action is also based on, and seeks to redress violations and denial of

12 Constitutional rights by federal officers acting under federal law under *Bivens v. Six Unknown*

13 *Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Accordingly, this Court has

14 jurisdiction over this action pursuant to 28 U.S.C. § 1331 & 1343, in that this action arises under the

15 Constitution and the laws of the United States.

16                              **VENUE**

17        3.    Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) and because Plaintiffs

18 and at least one of the Defendants reside in this District and the events giving rise to Plaintiffs'

19 claims occurred in this District.

20                          **INTRODUCTION**

21        4.    This action centers on Plaintiffs' small rock aggregate business and one of their

22 competitors, A. Teichert & Son, Inc. ("Teichert"), a very large rock aggregate company who has

23 employed tactics reminiscent of Rockefeller or Standard Oil to drive Plaintiffs out of business.  This

24 strategy began with using their lobbyist, who is the brother of a Congressman, the Congressman

25 himself and a state Senator, as well as Teichert employees to engage in a relentless campaign to

26 contact federal and state agencies in an effort to generate warrantless searches in violation of state

27 and Federal law and trumped up "violations" that have no merit.  All of this unlawful conduct is

28 designed with the sole purpose to drive Plaintiffs out of business.

5.     The conduct alleged in the complaint below consists of state, county, federal agencies and individuals acting on their own and their official capacity, to violate state and federal law, including the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, the Equal Protection Clause and the Supremacy Clause of the Constitution by, among other things, impeding commerce, instructing customers not to purchase from Plaintiffs, conducting warrantless searches and inspections, usurping Federal law by violating the Clean Air Act, precluding Plaintiffs from selling aggregate to public agencies, and attempting to hold hearings on vested rights that were conclusively determined more than a decade ago, as the vested right to mine has continued for over 100 years on this historic property.  Defendants and each of them acting under Federal law and the color of state law are attempting to completely shut down Plaintiffs rock plant regardless of Federal and state law.  As will be shown, these actions by Defendants have repeatedly violated the Constitutional rights of Plaintiffs and continue to cause great harm and financial detriment and damage to Plaintiffs.

## THE PARTIES

6.     At all times mentioned herein, Plaintiff Joseph Hardesty is an individual residing in Sacramento County, and is the owner of Hardesty Sand and Gravel.

7.     At all times mentioned herein, Plaintiff Yvette Hardesty is an individual residing in Sacramento County, and is the owner of Hardesty Sand and Gravel.

8.     At all times mentioned herein, Defendant SACRAMENTO METROPOLITAN AIR QUALITY MANAGEMENT DISTRICT ("SMAQMD") is the local agency designated to regulate air emission in Sacramento County, California, a unit of local government, duly formed and authorized under the laws of the State of California.  Upon information and belief, SMAQMD as part of its duties, regulates and provides supervision of all persons employed by SMAQMD and is responsible for its ordinances, resolutions, customs, and usage of regulations.  Upon information and belief, SMAQMD's responsibility is to provide redress to plaintiffs and to supervise its employees.  SMAQMD is being sued as a person.

9.     At all times mentioned herein, Defendant DAVID GROSS is a public officer who is employed by SMAQMD, and the County of Sacramento, for the purposes of enforcing State and

1    Federal laws under the Clean Air Act.  Defendant Gross is enriched, rewarded, and compensated for

2    his official duties and carries out discretionary functions while in his official capacity as a unit of

3    local government, duly formed and authorized under the laws of the State of California.  Defendant

4    Gross is being sued individually and in his official capacity.  Plaintiffs are informed and believe that

5    each of the defendants is liable for the damage to Plaintiffs in some manner.

6            10.      At all times mentioned herein, Defendant JAMES GOLDSTENE, is a public officer

7    who is employed by the California Air Resources Board ("CARB"), a state agency, and is enriched,

8    rewarded, and compensated for his official duties and carries out discretionary functions while in

9    his official capacity as a unit of State government, duly formed and authorized under the laws of the

10    State of California.  Defendant Goldstene is being sued individually and in his official capacity.

11    Plaintiffs are informed and believe that each of the defendants is liable for the damage to Plaintiffs

12    in some manner.

13            11.      At all times mentioned herein, Defendant OFFICE OF MINE RECLAMATION

14    ("OMR") a state agency, a unit of local government, duly formed and authorized under the laws of

15    the State of California.  OMR is the division of the California Department of Conservation

16    designated to track regulatory compliance with the Surface Mining and Reclamation Act of 1975.

17    Upon information and belief, OMR as part of its duties, regulates and provides supervision of all

18    persons employed and is responsible for its ordinances, resolutions, customs and usage of

19    regulations.  Upon information and belief, OMR is responsible for providing redress to Plaintiffs

20    and for supervising its employees.  OMR is being sued as a person.

21            12.      At all times mentioned herein, Defendant DENNIS O'BRYANT is a public officer

22    who is employed by OMR.  Defendant O'Bryant is enriched, rewarded, and compensated for his

23    official duties and carries out discretionary functions while in his official capacity as a unit of State

24    government, duly formed and authorized under the laws of the State of California.  Defendant

25    O'Bryant is being sued individually and in his official capacity.  Plaintiffs are informed and believe

26    that each of the defendants is liable for the damage to Plaintiffs in some manner.

27            13.      At all times mentioned herein, Defendant GAY NORRIS is a public officer who is

28    employed by OMR.  Defendant Norris is enriched, rewarded, and compensated for her official

1    duties and carries out discretionary functions while in her official capacity as a unit of State

2    government, duly formed and authorized under the laws of the State of California.  Defendant

3    Norris is being sued individually and in her official capacity.  Plaintiffs are informed and believe

4    that each of the defendants is liable for the damage to Plaintiffs in some manner.

5         14.    At all times mentioned herein, Defendant CALIFORNIA STATE MINING AND

6    GEOLOGY BOARD ("SMGB") is the division of the California Department of Conservation that

7    serves, in part, as a policy-making and appeals board with authority to accept certain appeals and

8    petitions and grant certain exemptions pursuant to the Surface Mining and Reclamation Act of

9    1975, including appeals of orders to comply, designation appeals, administrative penalty appeals,

10   financial assurance appeals, low gross exemption appeals, reclamation plan appeals and failure of

11   lead agency to act appeals.  Upon information and belief, SMGB as part of its duties, regulates and

12   provides supervision of all persons employed and is responsible for its ordinances, resolutions,

13   customs and usage of regulations.  Upon information and belief, SMGB is responsible for providing

14   redress to Plaintiffs and for supervising its employees.  SMGB is being sued as a person.

15        15.    At all times mentioned herein, Defendant STEVE TESTA is a public officer who is

16   employed by the SMGB.  Defendant Testa is enriched, rewarded, and compensated for his official

17   duties and carries out discretionary functions while in his official capacity as a unit of State

18   government, duly formed and authorized under the laws of the State of California.  Defendant Testa

19   is being sued individually and in his official capacity.  Plaintiffs are informed and believe that each

20   of the defendants is liable for the damage to Plaintiffs in some manner.

21        16.    At all times mentioned herein, Defendant ZACHARY SIMMONS is a public officer

22   who is employed by the USACE.  Defendant Simmons is enriched, rewarded, and compensated for

23   his official duties and carries out discretionary functions while in his official capacity as a unit of

24   State government, duly formed and authorized under the laws of the State of California.  Defendant

25   Simmons is being sued in his individually capacity.  Plaintiffs are informed and believe that each of

26   the defendants is liable for the damage to Plaintiffs in some manner.

27        17.    At all times mentioned herein, Defendant CALIFORNIA DEPARTMENT OF FISH

28   AND GAME ("DFG") is a state agency, a unit of local government, duly formed and authorized

1   under the laws of the State of California.  DFG is the department of the California Natural

2   Resources Agency designated to manage and protect California's fish, wildlife, plant resources, and

3   native habitats.  Upon information and belief, DFG as part of its duties, regulates and provides

4   supervision of all persons employed and is responsible for its ordinances, resolutions, customs and

5   usage of regulations.  Upon information and belief, DFG is responsible for providing redress to

6   Plaintiffs and for supervising its employees.  DFG is being sued as a person.

7        18.   At all times mentioned herein, Defendant LIZ GREGORY is a public officer who is

8   employed by the DFG.  Defendant Gregory is enriched, rewarded, and compensated for her official

9   duties and carries out discretionary functions while in her official capacity as a unit of State

10   government, duly formed and authorized under the laws of the State of California.  Defendant

11   Gregory is being sued individually and in her official capacity.  Plaintiffs are informed and believe

12   that each of the defendants is liable for the damage to Plaintiffs in some manner.

13        19.   At all times mentioned herein, Defendant SACRAMENTO COUNTY  is a unit of

14   local government, duly formed and authorized under the laws of the State of California.  Upon

15   information and belief, Sacramento County as part of its duties, regulates and provides supervision

16   of all persons employed and is responsible for its ordinances, resolutions, customs and usage of

17   regulations.  Upon information and belief, Sacramento County is responsible for providing redress

18   to Plaintiffs and for supervising its employees.  Sacramento County is being sued as a person.

19        20.   At all times mentioned herein, Defendant ROBERT SHERRY is a public officer and

20   the Director Sacramento Department of Planning and Community Development.  Defendant Sherry

21   is enriched, rewarded, and compensated for his official duties and carries out discretionary functions

22   while in his official capacity as a unit of State government, duly formed and authorized under the

23   laws of the State of California.  Defendant Sherry is being sued individually and in his official

24   capacity.  Plaintiffs are informed and believe that each of the defendants is liable for the damage to

25   Plaintiffs in some manner.

26        21.   At all times mentioned herein, Plaintiffs do not know the true names or capacities,

27   whether individual, corporate, and associate or otherwise, of Defendants Does 1 through 10,

28

COMPLAINT

1   inclusive, and therefore sue said Defendants under fictitious names.  Plaintiffs will amend this

2   Complaint to show their true names and capacities when and if the same have been ascertained.

3   **GENERAL ALLEGATIONS**

4       22.    Hardesty owns and operates Hardesty Sand and Gravel, a sand and gravel operation

5   in Sacramento County.  The Schneider Historic Mine (the Mine) in eastern Sacramento County, has

6   been in operation on the Schneider Family Ranch since at least the early 1900's.  The Mine is

7   currently owned by Jay Schneider and family.  Hardesty Sand and Gravel is authorized to operate

8   on, and purchase material from the Schneider Historic Mine.  In response to evidence submitted by

9   Mr. Schneider, the County of Sacramento wrote a letter in 1994 confirming historical grandfathered

10   vested rights to mine the Property absent the need for future surface mining and/or conditional use

11   permits required under the California Surface Mining and Reclamation Act ("SMARA"), and

12   specifically acknowledging that this evidence "has been accepted as evidence of vested interest and

13   therefore, we are not requiring a use permit for the mining operation."  This confirmation was

14   reaffirmed in many subsequent communications with the County of Sacramento.

15       23.    Hardesty Sand and Gravel, owned and operated by Plaintiffs, has been the principal

16   operator at the Mine, without any notable complaints or findings of violations, since the early

17   1980's.  The Mine is operated pursuant to the aforementioned vested legal non-conforming use and

18   a Reclamation Plan, which was approved by Sacramento County on November 8, 2002.  In

19   addition, representatives of Sacramento County performed its required annual site inspection of the

20   Mine in December 2008, and concluded that the Mine was operating in accordance with the

21   Reclamation Plan and in accordance with applicable SMARA requirements.

22       24.    One of Hardesty's main competitors is A. Teichert & Son, Inc. ("Teichert"), which is

23   a large construction materials and contracting company doing business in Sacramento and other

24   northern California counties.  Teichert, which is known to be very politically active in Sacramento

25   County, operates a competing aggregate mining operation near the Mine.  Customers often choose

26   to buy from Hardesty rather than Teichert because Hardesty's prices for aggregate products often

27   are much lower.  Such lower prices are based upon lower costs, in part due to the fact that Hardesty

28   is a "hands on" sole proprietor who works on the mine from 6:00 in the morning until 4:30 in the

COMPLAINT

1    evening six days a week.  Hardesty functions as the owner, manager, operator, mechanic, and

2    whatever other role needs to be fulfilled in order to keep the mine functioning.  Thus, his payroll,

3    one of a company's main expenses, is lower than that of a "Teichert" or similar sized company.

4    Further, due to the "mom and pop" nature of Hardesty's business, the overhead costs in other areas

5    as well are much lower than compared to larger companies.  The vested right to mine, which is a

6    legal non-conforming use on the Schneider property, is not the only reason Hardesty can sell his

7    aggregate for less money.  Although this vested legal non-conforming use enables Hardesty to mine

8    and conduct related aggregate production operations without obtaining a land use permit, he is still

9    obligated to comply with most of the same laws, including environmental and health and safety

10   laws, as Teichert and other companies in the business.

11          25.     Teichert bought the mining rights on the Pelican Ranch, which is an aggregate mine

12   immediately to the south of the Mine and uses the same county road for access to the highways and

13   freeways as Hardesty's operation.  Pelican Ranch was permitted for approximately 50 loads a day.

14   However, Teichert is attempting to increase that to 400 loads a day.  Considering Hardesty

15   transports 150 to 300 loads per day from its Mine, Teichert's proposed increase would cause

16   significant impacts on the county roads used by both mines.  These impacts on the roads would

17   cause Teichert to implement mitigation measures that Hardesty's operation would not be required to

18   do because of the vested legal non-conforming use on the Mine.  Thus, it is clear, that the Hardesty

19   operation poses a severe competitive threat to Teichert both from its cost competitive advantage and

20   its ability to avoid any additional costs associated with maintaining the county roads if Hardesty

21   were not operating.

22          26.     In or about March 2007, Becky Wood and John Lane, employees of Teichert, began

23   to contact various state and federal agencies, including at least SMAQMD, the Central Valley

24   Regional Water Quality Control Board, US Fish and Wildlife Services, and the USACE, requesting

25   that these agencies investigate Hardesty's mining operation.  Thereafter, Teichert's employees

26   facilitated, and continue to facilitate, a coordinated investigation of the Mine by sending

27   photographs of, and information regarding, the alleged violations on the Mine, updating these

28

1    agencies on the actions of other agencies and politicians, and requesting that these agencies take

2    action.

3         27.    On information and belief, Teichert also contacted several politicians to discuss the

4    Hardesty operation.  However, Teichert failed to give these politicians all the facts including that

5    the Mine had vested rights to mine legally granted by the lead agency, Sacramento County.

6    Coincidentally, Teichert employs the brother of a Congressman as a lobbyist.

7         28.    In or about September 2008 a Congressman's representative contacted the USACE to

8    discuss an investigation of the Mine.  The USACE had already investigated Hardesty at Teichert's

9    request, but assured the Congressman that they would continue their efforts and coordinate with

10   various state agencies including the DFG.  In or about February 2010, the Congressman's office

11   began contacting the USACE, DFG, and the U.S. Fish and Wildlife Services to coordinate further

12   efforts and "pick [the investigation] up again."

13        29.    On or about October 3, 2008, a State Senator sent a letter to the Secretary of the

14   California Resources Agency.  In this letter, the Senator requested that the Resources Agency

15   coordinate departmental actions with the Agency including the Department of Conservation

16   ("DOC"), SMGB, and the DFG review Hardesty's mining operations for potential legal violations,

17   including specifically reviewing whether Hardesty could be removed from the AB 3098 List.  The

18   AB 3098 List is a list of approved aggregate operations where the state can purchase material.

19   According to Surface Mine and Reclamation Act ("SMARA"), OMR must put any mine that has a

20   reclamation plan, financial assurances, and an annual mining inspection on the AB 3098 List.

21   Dennis O'Bryant of OMR removed Hardesty from the AB 3098 List.  Hardesty requested an appeal

22   of his removal from the list from the SMGB, their reply was that no such appeal was available, and

23   no procedure for the appeal had been adopted.

24        30.    Thus, Hardesty believed for all these years he was on the list and was selling to

25   government agencies legally since he met all the requirements.  Further, a copy of the letter was

26   also sent to the Director of Caltrans causing Hardesty lost jobs.

27        31.    As a result, of this political involvement, the Defendants either began or renewed

28   investigations and continued to arbitrarily and improperly investigate and regulate Hardesty.

COMPLAINT

1   Accordingly, Plaintiffs have been deprived of their civil rights under the Supremacy Clause,

2   Fourth Amendment, Fifth Amendment, and Fourteenth Amendment.

3                    **Army Corp of Engineering Improper Cease & Desist Letter**

4           32.    In or about May 2008, Hardesty received a phone call from Zachary Simmons'

5   office, a representative of the USACE.  Mr. Simmons requested a site inspection of the Mine,

6   contending that Hardesty's operations were improperly impacting wetlands.  Hardesty asked Mr.

7   Simmons to place his request in writing and to identify the Army's specific concerns with the Mine

8   in order to evaluate his request for an inspection.

9           33.    Without any notice or any type of a hearing, on June 2, 2008, the USACE sent a

10  letter to Hardesty ordering Hardesty to cease and desist all operations at the Mine, claiming that the

11  USACE had determined that Hardesty was discharging dredged or fill material into creeks and

12  wetlands without a USACE permit.

13          34.    Hardesty informed Mr. Simmons that his information was incorrect, and offered to

14  allow Mr. Simmons to inspect the Mine.  Hardesty arranged for the USACE to inspect several

15  designated areas of the Mine.  However, at the site inspection, the USACE demanded that it be able

16  to inspect the Mine outside of the designated areas.  Hardesty initially permitted a search of the

17  additional areas but soon realized the search was a "witch hunt."  Because USACE was not

18  inspecting the Mine to make an objective determination of any alleged improprieties, Hardesty

19  called off the site inspection and requested the USACE to leave.  To date, the USACE has not

20  retracted its cease and desist letter, and has afforded Hardesty no opportunity to appeal the decision.

21          **Army Corp of Engineering & Department of Fish and Game Warrantless Search**

22          35.    Subsequently, in or around September of 2008 Zachary Simmons and a DFG officer,

23  Liz Gregory, were discovered conducting an unlawful search of the Mine without a warrant.  They

24  were immediately asked to leave.

25                          **Improper Removal from AB 3098 List**

26          36.    Upon receiving the Senator's October 3, 2008 letter, the Resources Agency

27  contacted the DOC, the SMGB, and the DFG and began a collective investigation of the operations

28  at the Mine.  By late October, emails from individuals at the Resources Agency indicate that

COMPLAINT

1  wardens from the DFG had visited the Mine, but found no potential violations which warranted

2  additional investigation.  Nevertheless, OMR, a sub-agency of the DOC, continued its own

3  investigation, which included pursuing an administrative search warrant in order to conduct an

4  on-site inspection of the Mine.  On or about December 23, 2008, several representatives of OMR

5  performed an inspection of the Mine.  On or about February 27, 2009, OMR completed an

6  inspection report which identified ten alleged violations of SMARA and other statutory

7  requirements.  Eight of the purported violations are:

(a) OMR alleged that the pits are located less than ten feet from the bankfull level of an adjacent river, and are below the current low flow level of the river.  OMR went on to state that the depth of the pit, unconsolidated alluvial material separating the pit from the Consumnes River and the unengineered levee created by the mining operation caused staff geologists to believe that the potential for pit capture "is imminent and substantial."

(b) OMR alleged that the water level in the pits was 4' to 5' deeper than the water level in the adjoining Consumnes River, which created a positive groundwater gradient allowing seepage from the river to the pit and thereby increasing the probability of pit capture.

(c) OMR alleged that the pit depth in the Mine's approved reclamation plan is 30 feet, but the current pit depth was 50-60 feet.

(d) OMR alleged that the pit slopes are required to be reshaped to a maximum slope of 2:1 and reseeded at the end of each mining session pursuant to the reclamation plan, but that numerous pit slopes were found to be steeper than this requirement and had not been reseeded.

(e) OMR alleged that the existing financial assurance mechanism of $94,888.34 was not adequate.  Specifically, OMR claimed that the cost estimates supporting this amount addressed reclamation of 40 acres, but that the site had a total disturbance of approximately 180 acres.

(f) OMR alleged that its inspection revealed gold mining equipment and that Hardesty's consultant stated during the inspection that significant amounts of gold were currently being produced from the Mine, yet Hardesty allegedly failed to report collection of gold since fees on gold and silver took effect on January 1, 2004.

(g) OMR alleged that the sedimentation pond adjacent to the main plant area showed signs of recent failure and overtopping.

(h) OMR alleged that the topsoil and growth media stockpiles were not marked and lacked effective erosion control measures.

37.     On or about March 3, 2009, OMR issued a memo to the Natural Resources Agency, in which OMR summarized the findings in its February 27, 2009 report as well as three additional allegations, including that:

(i) Hardesty was unable to produce a Storm Water Pollution Protection Plan for the Mine or plant site.

(j) Hardesty was improperly selling material to the East Bay Municipal Utility District, as Hardesty was not on the "AB 3098 List" of mines eligible to sell materials to local agencies.

(k) The mining site was covered under one or more Williamson Act contracts, but that the Mine does not qualify as a compatible use under these contracts because the reclamation plan does not address mandatory reclamation standards, and the duration of the mine is listed as approximately 100 years.

38.     Each of OMR's allegations is in error.  Following along with the outline of allegations above, briefly, here are the reasons why:

(a) There is no factual basis for OMR's allegation that pit capture is "imminent." Among other things, the water line for the Consumnes River over 80-100 feet from the top of the slope of the open pit and an additional 30 feet to the toe of the cut slope in the pit.  Furthermore, the river level was approximately 25-30 feet from the top of the bank adjacent to the open pit, while the river itself was only 2-3 feet in depth.  The combination of the significant distance of the river water line away from the pit wall and the low level of the river make the scenario of an imminent slope failure resulting in pit capture remote.  Furthermore, the riverbank on the opposite north side of the river is well documented to be lower than the south riverbank adjacent to the open pit, meaning that if the river overflowed it would do so away from the open pit.  The possibility of a rainfall event that would cause overtopping of the river to the north is also extremely remote, and would require rain on the order of a 500-year event.  Furthermore, even though only a remote possibility, if pit capture occurred, any breach of the river would be localized and would not impact downstream property and the environmental impact would be minimal and temporary.

(b) The water observed in the pits was runoff from rain, not seepage from the river. Furthermore, even if there was minor seepage from the river, it would be insufficient to cause pit recapture during mining, and reclamation material will increase the elevation of the pit water and cease any potential seepage from the river to the pit.

(c) OMR's claim that the pits are currently 50-60 feet deep is false.  The pits are 35 feet deep or less, and in fact, during the inspection OMR's employee measured the depth at 29 feet.  More importantly, the reclamation plan does not limit the depth of the pits during mining, only the depth at the conclusion of the reclamation efforts, which have not yet begun.

(d) Likewise, OMR incorrectly claims that the pit slopes must be maintained at a slope of 2:1 and reseeded at the end of each mining session.  In fact, the approved reclamation plan only requires a 2:1 slope and reseeding at the conclusion of the reclamation efforts.

(e) OMR's claim that the current financial assurance mechanism is inadequate is incorrect.  OMR's claim that assurances must cover 180 acres of disturbance improperly includes portions of the mining site which have already been reclaimed.  Furthermore, financial assurances were recently increased by the lead agency and cost analyses establish that the current bond amount will be sufficient to cover the reclamation.

(f) Contrary to OMR's aspersions, Hardesty is not mining gold or silver at the Mine.  The equipment cited by OMR is not used for gold or silver mining.  Furthermore, the comments cited by OMR in its report and allegedly made by a Hardesty representative were relating to gold mined at a different site and/or gold which was mined in the 1930's in the surrounding area.

(g) The sedimentation pond adjacent to the main plant area did not recently fail or overtop.  OMR's observations were merely the result of an excavator cleaning out the wash material to be sold in the course of Hardesty's operations.

(h) The topsoil and growth media stockpiles do not require erosion controls because material from the stockpiles is regularly sold, and therefore does not remain in place long enough to require erosion control practices or have any effect on the topography of the land.

(i) Hardesty is not required to hold a storm water permit because the Mine does not have any storm water discharge to receiving waters of the United States.  Water is 100% contained in process on the site.

(j) Because Hardesty complied with the AB 3098 requirements, it should have been listed and therefore eligible to sell material to local agencies at the time of the inspection in December 2008.  Therefore, Hardesty did not violate any regulation or statute by selling material to the East Bay Municipal District.  To the extent Hardesty was not on the AB 3098 List at that time, it was an error by OMR, which is responsible for maintaining the list.

(k) The Mine is permitted to operate under the applicable Williamson Act contracts pursuant to a 1968 contract.

39.     On March 18, 2009, OMR sent a letter to Hardesty summarizing its incorrect allegations, and informing Hardesty that due to these false violations Hardesty was being removed from the AB 3098 List effective as of that date.  OMR provided no prior notice that it was considering removing Hardesty from this list, and providing no hearing or other procedure by which Hardesty could challenge the findings of the report before being removed from the AB 3098 List.

40.     Hardesty's counsel immediately sent a letter to OMR requesting an appeal of OMR's decision under the Public Resources Code.  That request was denied in a letter by OMR, stating that just as it does not provide any mechanism for a hearing prior to rendering its decision, OMR also does not provide any administrative procedure for appealing its decision relating to the AB 3098 List.  OMR continues to refuse to put Hardesty back on the AB 3098 List.

41.     Similarly, Hardesty requested an appeal of OMR's decision from the SMGB.  This request was also denied.  OMR and SMGB continue to keep Hardesty off the AB 3098 List.  As a result, Hardesty cannot sell mined materials to state or local agencies, a significant portion of his customer base, which has a significant financial impact on the business.

**Improper Instructions Not to Buy from Hardesty**

42.     On July 21, 2010, a USACE Official instructed Mike Caster, a trucker and a contractor, not to buy "Joe's rock" for a job on which they were working.

43.     On or about October or November 2008 Gay Norris, an OMR agent, stopped several contractors and instructed them not to buy from Hardesty.  Ms. Norris warned the contractors, that if they were to buy from Hardesty, OMR would sue them.

**SMAQMD's Improper Order of Abatement**

44.     In April of 2009, SMAQMD improperly issued a petition alleging that Hardesty Sand and Gravel ("HSG") was operating equipment in violation of SMAQMD Rule 201.  The petition listed several pieces of equipment including (1) a generator that was used as a non-stationary Central Plant Engine, and (2) several additional engines and equipment under 175 horsepower.

45.     Regulation of the non-stationary Central Plant Engine is expressly prohibited by California State Law.  In California, CARB has the primary responsibility for control of air pollution from vehicular and non-stationary nonroad engines, whereas local and regional authorities, such as SMAQMD, have control over air pollution from stationary engines.  The California Legislature enacted statutory provisions governing the registration of portable equipment ("PERP").  Health & Saf. Code § 41750, *et seq*.  If an engine has a PERP permit, it does not need to obtain a permit from the local air district.  Health & Saf. Code § 41753(b).  In order to obtain a

1    PERP permit, an engine must not remain at a "fixed location" for more than twelve consecutive

2    months.  Health & Saf. Code § 41751.  The Legislature has defined a "fixed location" to be any

3    "single site at a building, structure, facility, or installation."  Health & Saf. Code § 41751(b)(1).

4         46.     In addition, regulation of the non-stationary Central Plant engine and other engines

5    and equipment **under 175 horsepower** is expressly preempted by federal law.  Under the federal

6    Clean Air Act, 42 U.S.C. sections 7401, *et seq*., ("CAA") the federal government has authority to

7    promulgate regulations containing standards applicable to new nonroad engines and vehicles.  The

8    CAA, under § 7543(e)(1)(A) expressly prohibits states and local governments from adopting or

9    enforcing "any standard or other requirement relating to the control of emissions from . . . nonroad

10    engines . . . smaller than 175 horsepower."  42 U.S.C. § 7543(e)(1)(A).  For those vehicles

11    175 horsepower or more, the CAA, under § 7543(e)(2)(A), allows California to "adopt and enforce

12    standards and other requirements relating to the control of emissions" only after obtaining a waiver

13    from the Administrator of the Environmental Protection Agency.  The CAA distinguishes between

14    "standards" and very minimal "in-use requirements," such as carpool lanes, restrictions on car use,

15    and controls over extended engine idling.  The latter are not preempted.

16         47.     SMAQMD Rule 201 is in direct violation of the CAA because it requires a permit to

17    operate any nonroad engine over **50 horsepower** which emits 2 lbs of pollutant or more per hour

18    without the benefit of air pollution control devices.  SMAQMD Rule 201.

19         48.     Similarly, SMAQMD Rule 201 is in direct violation of the CAA because it attempts

20    to regulate engines outside the scope of its waiver.  CARB has obtained a waiver from the EPA to

21    regulate emission standards of **stationary** nonroad engines.  However, SMAQMD has enforced

22    Rule 201 against Hardesty's **non-stationary** nonroad engine.  A stationary engine is one that

23    remains at a "fixed location" for more than twelve consecutive months.  Although SMAQMD has

24    not defined "fixed location," CARB has defined a "fixed location" is a "single site at a building,

25    structure, facility, or installation."  The Mine is not a "fixed location" pursuant to CARB's

26    definition because it is a massive 3800 acre property.  Hardesty's engine is not a stationary engine

27    because in addition to travelling to three other sites from Placerville to Nevada, it travels around the

28    entire 3800 acres of the Mine.  Nevertheless, SMAQMD has attempted to classify the Mine as a

COMPLAINT

"fixed location," taking advantage of the fact that, unlike CARB, SMAQMD has not actually defined "fixed location." This is an improper attempt at an underground regulation. The waiver obtained by CARB only allows the regulation of those nonroad engines that do not remain at a "single site at a building, structure, facility, or installation." SMAQMD has improperly regulated Hardesty's engine outside the scope of the waiver.

49.     Despite this clear law and a multi-day evidentiary hearing, SMAQMD Board issued an Order of Abatement determining that Hardesty was operating its equipment in violation of Rule 201. At the Order of Abatement hearing in 2009, under penalty of perjury, members of SMAQMD and CARB testified to differing definitions of a "single or fixed location." SMAQMD ordered Hardesty to cease and desist operations of all specified unpermitted and unregistered engines pending compliance with SMAQMD Rule 201. However, SMAQMD stayed the abatement order pending timely application for and issuance of the specified permits.

50.     On April 23, 2010 Hardesty petitioned the Superior Court of California, under California Code of Civil Procedure § 1094.5 for a Writ of Mandate arguing, in part, that (1) CARB's rules and regulations as set forth in the PERP program preempt SMAQMD from enforcing the PERP program and regulations under State law; (2) CARB's PERP regulations preempt Rule 201; (3) regulation of the Central Plant Engine is based upon an improper underground regulation; and (4) SMAQMD's attempts to regulate the Hardesty mining operations interferes with Schneider's vested legal non-conforming use. CARB intervened in the action opposing Hardesty's Writ of Mandate. CARB argued against Hardesty's preemption argument as well as his vested legal non-conforming use argument. On June 24, 2010, the Superior Court of California denied Hardesty's application and upheld the Abatement Order.

51.     With no other choice, Hardesty applied to SMAQMD for permits despite the fact that the federal Clean Air Act preempts this permitting requirement. Hardesty spent over $50,000 in applying for the permits. On August 19, 2010, SMAQMD denied Hardesty's applications advising Hardesty in a letter that:

> **any type of operation at the facility, including but not limited to operating any air pollutant emitting equipment or engines, sand and gravel processing equipment, the loading or unloading of trucks, and the movement of aggregate**

**from the stockpiles, prior to receiving an Authority to Construct/Permit to Operate from the District is a violation of the air pollution regulations and is subject to civil or criminal penalties prescribed in the California Health and Safety Code.  Any such activity will also violate the Abatement Order issued by the District Hearing Board.**

This Letter was overbroad in its application of the ruling made by the SMAQMD Board as the Board stated in its order that Hardesty and his employees were to (1) "cease and desist from operation of any and all unpermitted and unregistered internal combustion engines with a horsepower greater than 50 at any location within the District's boundaries," and (2) "cease and desist from operation of the Central Plant Equipment (or any equipment that replaces or supplements the Central Plant Equipment) unless and until they obtain from the SMAQMD an Authority to Construct and Permit to Operate as required by SMAQMD Rule 201."  Further, this letter overreaches SMAQMD's jurisdiction as defined by CARB.  CARB's intervening brief submitted in opposition to Hardesty's Petition for Writ of Mandate specifically stated "The State Air Board has exclusive authority over the regulation of mobile sources of air pollution and the fuels they use" and "Local air districts . . . have primary authority of stationary sources."  CARB's intervening brief makes no mention of SMAQMD or CARB's authority over "any type of operation at the facility, including . . . the movement of aggregate from the stockpiles."  In fact, CARB's brief explicitly stated that "the issue in this action is . . . not whether the Hardestys may continue their mining operations at the Hardesty facility."  Despite this, SMAQMD's August 19, 2010 letter attempts to totally restrict the Hardesty mining operations.

<u>**Sacramento State Board of Supervisors Review of Vested Legal**</u>

<u>**Non-Conforming Use**</u>

52.     The Hardesty Mine is operated pursuant to a vested legal non-conforming use granted by the County of Sacramento in 1994.  However, on April 14, 2010, the owner of the Mine, Jay Schneider received a notice from the County of Sacramento stating that an investigation had revealed that the mining operation had expanded in violation of zoning requirements.  Despite Schneider's vested right to mine, the County of Sacramento notified Schneider that he could either (1) obtain a rezone and a conditional use permit; or (2) cease the mining operation within 90 days.  The County noted that if neither of these courses of action were taken by July 14, 2010 one or more

1   of the following actions would be taken: (1) a hearing before a County appointed Hearing Officer to

2   declare the property a public nuisance, (2) referral of the case to the County Counsel's Office to

3   initiate legal action, (3) a public hearing to revoke any use permit or other discretionary permit,

4   and/or (4) referral of the case to the District Attorney's office for criminal prosecution.

5        53.     Schneider appealed the notice of violation citing the vested legal non-conforming

6   use.  The appeal was scheduled to be heard on May 23, 2010, but was continued to July 13, 2010.

7        54.     On July 6, 2010 Mr. Schneider requested that the hearing be continued to October

8   13, 2010.  On July 8, 2010 counsel for Teichert wrote a letter to the County Board of Supervisors

9   requesting that Schneider's appeal be denied.

10       55.     The County Board of Supervisors continued the hearing to October 13, 2010.

11                                    **COUNT ONE**

12          **(Violation of the Clean Air Act Against SMAQMD, Sacramento County,**

13                        **David Gross, and James Goldstene)**

14       56.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 55 above, and

15   incorporate those allegations herein by this reference.

16       57.     The herein above described actions by Defendants SMAQMD, Sacramento County,

17   David Gross, and James Goldstene, acting under the color of state law, county ordinances,

18   regulations, customs and usage of regulations and authority, individually and in their official

19   capacity, have violated § 7543 of the federal Clean Air Act ("CAA") through their ordinances,

20   resolutions, customs and usage of regulations policy and practice of (1) regulating construction

21   equipment under 175 horsepower; (2) enforcing state law regulating construction equipment under

22   175 horsepower; (3) declaring the entire Mine a single location in violation of 40 CFR 89.2; and

23   (4) issuing an order that Plaintiffs cannot operate any piece of mechanical equipment to load rock at

24   Plaintiffs' plant.

25       58.     The herein above described actions by Defendants SMAQMD, Sacramento County,

26   David Gross, and James Goldstene acting under the color of state law, county ordinances,

27   regulations, customs and usage of regulations and authority, individually and in their official

28   capacity, have violated § 7543 of the federal CAA by creating an "emission standard" that prohibits

1    emission levels of PM, NOx, Sox in excess of 2 pounds per day without purchasing a permit.  The

2    quantitative level can only be calculated by the use of techniques, controls, and technology.

3           59.      As a direct and proximate result of the foregoing, Plaintiffs have incurred substantial

4    costs arising from SMAQMD, Sacramento County, David Gross, and James Goldstene's improper

5    enforcement of Rule 201, including without limitation costs associated with obtaining permits, the

6    loss of Hardesty's business, as well as substantial costs in defending civil and criminal prosecutions,

7    all to the Plaintiffs' damage in an amount according to proof at trial.

8           60.      Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

9           61.      Plaintiffs are further entitled to equitable relief, including, without limitation, an

10    injunction requiring SMAQMD, Sacramento County, David Gross, and James Goldstene, to allow

11    Hardesty to operate his mine with the engines in question without obtaining a permit under Rule

12    201; an order enjoining SMAQMD, Sacramento County, David Gross, and James Goldstene from

13    enforcing Rule 201 against those engines under 175 horsepower; an order requiring that SMAQMD,

14    Sacramento County, David Gross, and James Goldstene define "fixed location" as CARB has; and

15    an order enjoining SMAQMD, Sacramento County, David Gross, and James Goldstene from

16    enforcing Rule 201 against non-stationary engines.

17                                   **COUNT TWO**

18    **(Violation of 42 U.S.C. § 1983 Through Violation of The Due Process Clause of the**

19             **Fourteenth Amendment and the Supremacy Clause Against SMAQMD,**

20                **Sacramento County, David Gross, and James Goldstene)**

21           62.      Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 above, and

22    incorporate those allegations herein by this reference.

23           63.      The herein above described actions by Defendants SMAQMD, Sacramento County,

24    David Gross, and James Goldstene, acting under the color of state law, county ordinances,

25    regulations, customs and usage of regulations and authority, individually and in their official

26    capacity, and in violation of 42 U.S.C. § 1983 have deprived Plaintiffs of their rights under the

27    Supremacy Clause, as well as their rights privileges or immunities secured by the Due Process

28    Clause of the Fourteenth Amendment.  Specifically Defendants SMAQMD, Sacramento County,

1   David Gross, and James Goldstene have deprived Plaintiffs of their rights under the Supremacy

2   Clause and Due Process Clause through their ordinances, resolutions, customs and usage of

3   regulations policy and practice of (1) regulating construction equipment under 175 horsepower;

4   (2) enforcing state law regulating construction equipment under 175 horsepower; (3) declaring the

5   entire Mine a single location in violation of 40 CFR 89.2; and (4) issuing an order that Plaintiffs

6   cannot operate any piece of mechanical equipment to load rock at Plaintiffs' plant.

7         64.    Similarly, Defendants SMAQMD, Sacramento County, David Gross, and James

8   Goldstene have deprived Plaintiffs of their rights under the Supremacy Clause and Due Process

9   Clause through their ordinances, resolutions, customs and usage of regulations policy and practice

10   by creating an "emission standard" that prohibits emission levels of PM, NOx, SOx in excess of

11   2 pounds per day without purchasing a permit.  The quantitative level can only be calculated by the

12   use of techniques, controls, and technology.

13         65.    As a direct and proximate result of the foregoing, Plaintiffs have incurred substantial

14   costs arising from SMAQMD, Sacramento County, David Gross, and James Goldstene's

15   enforcement of Rule 201 including, without limitation, costs associated with obtaining permits, the

16   loss of Hardesty's business, as well as substantial costs in defending civil and criminal prosecutions,

17   all to the Plaintiffs' damage in an amount according to proof at trial.

18         66.    Defendants engaged in such actions maliciously, willfully, and knowingly.

19   Accordingly, Plaintiffs are entitled to punitive damages.

20         67.    Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

21         68.    Plaintiffs are further entitled to equitable relief, including, without limitation, an

22   injunction requiring SMAQMD to withdraw its Order of Abatement; an injunction requiring

23   SMAQMD, Sacramento County, David Gross, and James Goldstene to allow Hardesty to operate

24   his mine with the engines in question without obtaining a permit under Rule 201; an order enjoining

25   SMAQMD, Sacramento County, David Gross, and James Goldstene from enforcing Rule 201

26   against those engines under 175 horsepower; an order requiring that SMAQMD define "fixed

27   location" as CARB has; and an order enjoining SMAQMD, Sacramento County, David Gross, and

28   James Goldstene from enforcing Rule 201 against non-stationary engines.

COMPLAINT

## COUNT THREE

### (Violation of 42 U.S.C. § 1983 Through Violation of the Fifth and

### Fourteenth Amendments Against OMR, Gay Norris, and Dennis O'Bryant)

69.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 68 above, and incorporate those allegations herein by this reference.

70.     Defendants OMR, Gay Norris, and Dennis O'Bryant, acting under the color of state law, county ordinances, regulations, customs and usage of regulations and authority, individually and in their official capacity, and in violation of 42 U.S.C. § 1983, have deprived Plaintiffs of the rights, privileges or immunities secured by the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments.

71.     Defendants OMR, Gay Norris, and Dennis O'Bryant have violated Plaintiffs' rights to procedural due process by removing Plaintiffs' business, HSG, from the AB 3098 List without due process of law after placing HSG on the AB 2098 list for three months.

72.     Defendant OMR, Gay Norris, and Dennis O'Bryant have violated Plaintiffs' right to substantive due process by instructing various truckers, under the threat of litigation, not to buy mined materials from Hardesty.

73.     Defendants OMR, Gay Norris, and Dennis O'Bryant have violated Plaintiffs' rights to equal protection by intentionally and irrationally singling out Plaintiffs for unwarranted removal from the AB 3098 List.

74.     As a direct and proximate result of the foregoing, Plaintiffs have incurred substantial costs arising from Plaintiffs' inability to sell its mined materials to state or local agencies, including, without limitation, lost profits, all to the Plaintiffs' damage in an amount according to proof at trial.

75.     Defendants engaged in such actions maliciously, willfully, and knowingly. Accordingly, Plaintiffs are entitled to punitive damages.

76.     Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

77.     Plaintiffs are further entitled to equitable relief, including, without limitation, an injunction requiring Defendants OMR, Gay Norris, and Dennis O'Bryant to withdraw OMR's false

allegations against Hardesty; and an injunction requiring Defendants OMR, Gay Norris, and Dennis O'Bryant to include Hardesty on the AB 3098 List.

**COUNT FOUR**

**(Violation of 42 U.S.C. § 1983 Through Violation of The Right to Due Process**

**Protected by the Due Process Clause of the Fifth and Fourteenth Amendments**

**Against SMGB and Steve Testa)**

78.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 77 above, and incorporate those allegations herein by this reference.

79.     Defendants SMGB and Steve Testa, acting under the color of state law, county ordinances, regulations, customs and usage of regulations and authority, individually and in their official capacity, and in violation of 42 U.S.C. § 1983, have deprived Plaintiffs of the rights, privileges or immunities secured by the Due Process Clause of the Fifth and Fourteenth Amendments.

80.     Defendant SMGB and Steve Testa have violated Plaintiffs' right to procedural due process by refusing Plaintiffs' request for an appeal of OMR's decision to remove Hardesty from the AB 3098 List.

81.     As a direct and proximate result of the foregoing, Plaintiffs have incurred substantial costs arising from Plaintiffs' inability to sell its mined materials to state or local agencies, including, without limitation, lost profits, all to the Plaintiffs' damage in an amount according to proof at trial.

82.     Defendants engaged in such actions maliciously, willfully, and knowingly. Accordingly, Plaintiffs are entitled to punitive damages.

83.     Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

84.     Plaintiffs are further entitled to equitable relief, including, without limitation, an injunction requiring SMGB and Steve Testa to have Hardesty placed back on the AB 3098 List.

## COUNT FIVE

**(*Bivens* Action for Violation of The Right to Due Process Protected by the**

**Due Process Clause of the Fifth Amendment and the Right to be Free From**

**Unreasonable Searches Under the Fourth Amendment Against Zachary Simmons)**

85.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 84 above, and incorporate those allegations herein by this reference.

86.     Defendant Zachary Simmons, acting under the color of federal authority, has deprived Plaintiffs of the rights, privileges or immunities secured by the Due Process Clause of the Fifth Amendment and has violated Plaintiffs' rights to be free from unreasonable search and seizure under the Fourth Amendment under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

87.     Defendant Zachary Simmons has violated Plaintiffs' right to procedural due process by issuing a cease and desist letter demanding that Hardesty stop all operations at the Mine without any notice, hearing, or opportunity for appeal.

88.     Defendant Zachary Simmons has violated Plaintiffs' right to be free from unreasonable search and seizure under the Fourth Amendment by conducting an unwarranted search of the Mine.

89.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an amount according to proof at trial.

90.     Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

91.     Plaintiffs are further entitled to equitable relief, including, without limitation, an injunction requiring Zachary Simmons to withdraw the USACE cease and desist letter; an injunction requiring Zachary Simmons to cease investigating Hardesty; an order enjoining Zachary Simmons from reentering the Mine without a warrant.

1

**COUNT SIX**

2

3

**(Violation of 42 U.S.C. § 1983 Through Violation of the Fourth Amendment Protection Against Unreasonable Search and Seizure Against Liz Gregory and DFG)**

4      92.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 91 above, and

5 incorporate those allegations herein by this reference.

6      93.    Defendants Liz Gregory and DFG, acting under the color of state law, county

7 ordinances, regulations, customs and usage of regulations and authority, individually and in their

8 official capacity, and in violation of 42 U.S.C. § 1983, have deprived Plaintiffs of the right against

9 unlawful search and seizure provided by the Fourth Amendment.

10     94.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an

11 amount according to proof at trial.

12     95.    Defendants engaged in such actions maliciously, willfully, and knowingly.

13 Accordingly Plaintiffs are entitled to punitive damages.

14     96.    Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

15     97.    Plaintiffs are further entitled to equitable relief, including, without limitation, an

16 injunction requiring Liz Gregory and DFG to cease its investigation of Hardesty; and an order

17 enjoining Liz Gregory and DFG from reentering the Mine without a warrant.

18

**COUNT SEVEN**

19

20

**(Violation of U.S.C. § 1983 Through Violation of the Due Process Clause of the Fifth and Fourteenth Amendments Against Sacramento County and Robert Sherry)**

21     98.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 97 above, and

22 incorporate those allegations herein by this reference.

23     99.    Defendants Sacramento County and Robert Sherry, acting under the color of state

24 law, county ordinances, regulations, customs and usage of regulations and authority, individually

25 and in their official capacity, and in violation of 42 U.S.C. § 1983, have deprived Plaintiffs of the

26 rights, privileges or immunities secured by the Due Process Clause of the Fifth and Fourteenth

27 Amendments by arbitrarily, intentionally and irrationally initiating proceedings to rehear and

28 redetermine whether or not a vested legal non-conforming use exists.

COMPLAINT

- 24 -

1        100.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an

2    amount according to proof at trial.

3        101.    Defendants engaged in such actions maliciously, willfully, and knowingly.

4    Accordingly Plaintiffs are entitled to punitive damages.

5        102.    Plaintiffs are further entitled to their attorneys fees pursuant to 42 U.S.C. § 1988.

6        103.    Plaintiffs are further entitled to equitable relief, including, without limitation, an

7    order enjoining Sacramento County and Robert Sherry from redetermining the vested legal non-

8    conforming use; and an order enjoining Sacramento County and Robert Sherry from removing the

9    vested legal non-conforming use.

10                               **PRAYER FOR RELIEF**

11        WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

12        1.      For damages from Defendants SMAQMD, Sacramento County, David Gross, and

13    James Goldstene in an amount according to proof at trial;

14        2.      For equitable relief including, without limitation, an injunction requiring SMAQMD,

15    Sacramento County, David Gross, and James Goldstene to allow Hardesty to operate his mine with

16    the engines in question without obtaining a permit under Rule 201; an order enjoining SMAQMD,

17    Sacramento County, David Gross, and James Goldstene from enforcing Rule 201 against those

18    engines under 175 horsepower; an order requiring that SMAQMD define "fixed location" as CARB

19    has; and an order enjoining SMAQMD, Sacramento County, David Gross, and James Goldstene

20    from enforcing Rule 201 against non-stationary engines;

21        3.      For compensatory and punitive damages from Defendants SMAQMD, Sacramento

22    County, David Gross, and James Goldstene in an amount according to proof at trial;

23        4.      For equitable relief, including, without limitation, an injunction requiring SMAQMD

24    to withdraw its Order of Abatement; an injunction requiring SMAQMD, Sacramento County, David

25    Gross, and James Goldstene to allow Hardesty to operate his mine with the engines in question

26    without obtaining a permit under Rule 201; an order enjoining SMAQMD, Sacramento County,

27    David Gross, and James Goldstene from enforcing Rule 201 against those engines under 175

28    horsepower; an order requiring that SMAQMD define "fixed location" as CARB has; and an order

1  enjoining SMAQMD, Sacramento County, David Gross, and James Goldstene from enforcing Rule

2  201 against non-stationary engines;

3      5.     For compensatory and punitive damages from Defendant OMR, Gay Norris, and

4  Dennis O'Bryant in an amount according to proof at trial;

5      6.     For equitable relief, including, without limitation, an injunction requiring OMR, Gay

6  Norris, and Dennis O'Bryant to withdraw OMR's false allegations against Hardesty; and an

7  injunction requiring OMR, Gay Norris, and Dennis O'Bryant to include Hardesty on the AB 3098

8  List;

9      7.     For compensatory and punitive damages from Defendant SMGB and Steve Testa in

10  an amount according to proof at trial;

11      8.     For equitable relief, including, without limitation, an injunction requiring SMGB and

12  Steve Testa to have Hardesty placed back on the AB 3098 List;

13      9.     For damages from Defendant Zachary Simmons in an amount according to proof at

14  trial;

15      10.     For equitable relief, including, without limitation, an injunction requiring Zachary

16  Simmons to withdraw its cease and desist letter; an injunction requiring Zachary Simmons to cease

17  investigating Hardesty; an order enjoining Zachary Simmons from reentering the Mine without a

18  warrant;

19      11.     For compensatory and punitive damages from Defendant Liz Gregory and DFG in an

20  amount according to proof at trial;

21      12.     For equitable relief, including, without limitation, an injunction requiring Liz

22  Gregory and DFG to cease investigating Hardesty; an order enjoining Liz Gregory and DFG from

23  reentering the Mine without a warrant;

24      13.     For compensatory and punitive damages from Sacramento County and Robert Sherry

25  in an amount according to proof at trial;

26      14.     For equitable relief, including, without limitation, a order enjoining Sacramento

27  County and Robert Sherry from redetermining the vested legal non-conforming use; and an order

28

1    enjoining Sacramento County and Robert Sherry from removing the vested legal non-conforming

2    use;

3         15.    For attorneys' fees pursuant to 42 U.S.C. § 1988;

4         16.    For pre-judgment interest at the appropriate legal rate;

5         17.    For the costs of suit incurred herein;

6         18.    For such other and further relief as the Court deems just and proper.

7

8    DATED:  September 8, 2010            DIANE ANDERSON
                                        Attorney at Law
9

10                                      By: /S/ DIANE ANDERSON
                                            DIANE ANDERSON
11
                                        Attorneys for Plaintiff JOSEPH HARDESTY AND
12                                      YVETTE HARDESTY DOING BUSINESS AS
                                        HARDESTY SAND AND GRAVEL AN
13                                      UNINCORPORATED ENTITY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT