1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH HARDESTY, et al.,

12               Plaintiffs,                    Civ. No. S-10-2414 KJM JFM
               vs.
13                                              ORDER
     SACRAMENTO METROPOLITAN AIR
14   QUALITY MANAGEMENT DISTRICT,
     et al.,
15
               Defendants.
16   _____/

17           This case was on calendar on June 8, 2011 for a hearing on motions to dismiss

18   filed by defendants Sacramento Metropolitan Air Quality Management District and David Grose

19   (SMAQMD defendants); Sacramento County and Robert Sherry (County defendants); State of

20   California, acting by and through California State Mining and Geology Board (SMGB), Office

21   of Mine Reclamation (OMR), Department of Fish and Game (DFG), James Goldstene, Dennis

22   O'Bryant, Gay Norris, Steve Testa, and Elizabeth Gregory (referred to generally as "state

23   defendants" or named individually); and Zachary Simmons.  The SMAQMD, state and county

24   defendants argue that the complaint fails to state a claim under Rule 12(b)(6); Simmons argues

25   that the court lacks subject matter jurisdiction under Rule 12(b)(1) and that the complaint fails to

26   state a claim under 12(b)(6).

1   Plaintiffs' motion for leave to file an amended complaint and a motion for

2   sanctions filed by the SMAQMD defendants also are pending.

3   As explained below, plaintiffs' motion to file an amended complaint is granted.

4   The SMAQMD defendants' motion to stay is granted.  The state, federal and county defendants'

5   motions to dismiss are granted in part, and the SMAQMD motion for sanctions is denied.

6   I.  The Impact Of The Motion To Amend

7   Both plaintiffs' original and their proposed amended complaints describe a series

8   of actions taken against plaintiffs, who operate a gravel mining operation in Sacramento County

9   and who allege that their ability to continue their mining operations has been disrupted by a

10  series of actions taken by defendants after A. Teichert & Sons, one of plaintiffs' main

11  competitors, contacted the agencies to ask them to regulate plaintiffs and thus drive their prices

12  up.

13  The original complaint contains seven claims: (1) a violation of the Clean Air Act

14  against the SMAQMD defendants, Sacramento County, and James Goldstene; (2) a civil rights

15  claim,[1] alleging violations of the Fourteenth Amendment and Supremacy Clause against the

16  SMAQMD defendants, Sacramento County and James Goldstene; (3) a civil rights claim

17  alleging violations of the Fifth and Fourteenth Amendments against OMR, Norris and O'Bryant;

18  (4) a civil rights claim alleging due process violations against SMGB and Testa; (5) a *Bivens*

19  claim alleging violations of the Fourth and Fifth Amendments against Simmons; (6) a civil rights

20  claim alleging a Fourth Amendment violation against Gregory and DFG; and (7) a civil rights

21  claim alleging violations of the Fifth and Fourteenth Amendments against the county defendants.

22  ECF No. 2.

23  The proposed amended complaint drops as defendants the State of California,

24  DFG, SMGB, OMR and Goldstene, but seeks to add as defendants Cindy Storelli, in her official

25

26  [1] Plaintiffs describe various of their claims as "actions."

1   and individual capacity as a senior planner for Sacramento County; Leighann Moffitt in her

2   official and individual capacity as Interim Planning Manager for Sacramento County; Bret

3   Koehler in his official and individual capacity as Senior Engineering Geologist of the OMR;

4   Michael Jewell; and Curt Taras in his individual and official capacity as Chief of the

5   Encroachment Control and Land Use Section of the Central Valley Flood Protection Board.

6   This complaint also contains seven claims: (1) a civil rights claim, alleging violations of the Due

7   Process, Equal Protection and Supremacy Clauses against the SMAQMD defendants; (2) a civil

8   rights claim, alleging a due process violation against defendants Koehler, Norris, Testa and

9   O'Bryant; (3) a *Bivens* claim based on a due process violation against defendants Jewell and

10  Simmons and on the Fourth Amendment against Simmons; (4) a civil rights claim, based on the

11  Fourth Amendment, against defendant Gregory; (5) a civil rights claim, alleging a due process

12  violation against defendant Taras; (6) a civil rights action, based on due process and equal

13  protection violations against Sacramento County and defendant Sherry; and (7) a civil rights

14  claim, alleging a due process and equal protection violation against the County and defendants

15  Storelli and Moffitt.  ECF No. 42-1 (FAC).

16          Defendants Sacramento County, Storelli, Moffit and Sherry argue that the

17  amendment should not be permitted because the complaint fails to state a cause of action against

18  them.  ECF No. 48.  The state defendants argue that the motion to amend was not timely filed so

19  as to be heard on the court's June 8 calendar.  ECF No. 43.  They also argue  plaintiffs filed the

20  request too late, namely seventy-two days after the state defendants filed their motion to dismiss.

21  ECF No. 43 at 4.  Plaintiffs respond that the motion was timely filed, that the defendants will not

22  be prejudiced by amendment, and that their request should be granted because defendants did not

23  meet and confer before they filed the motions to dismiss.  Defendants Simmons and Jewell argue

24  that the amendment would be futile because the amended complaint does not state a claim

25  against them.  ECF No. 44.

26  /////

3

1    A properly filed amended complaint supersedes the original complaint and

2    constitutes a waiver of those claims in the original complaint that are not included in the

3    amended complaint.  As a result, when an amended complaint is filed while a motion to dismiss

4    is pending, it generally moots the motion to dismiss.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262

5    (9th Cir. 1992) (amended pleading supersedes the original pleading); *Sechrest v. Ignacio*,

6    549 F.3d 789, 804 (9th Cir. 2008), *cert. denied sub nom.*, *McDaniel v. Sechrest*, __ U.S. __,

7    130 S. Ct. 243 (2009) (amendment of a complaint constitutes waiver of claims not carried over

8    from previous versions of the complaint); *Marty v. Wells Fargo Bank*, 2011 WL 1103405, at *1

9    (E.D Cal. Mar. 22, 2011) (amendment moots motion to dismiss).

10    Under Federal Rule of Civil Procedure[2] 15(a)(1)(B) and 15(a)(2), a party may

11    amend a pleading as a matter of course within twenty-one days after serving it or, if the

12    complaint is one to which a responsive pleading is required, within twenty-one days after the

13    service of a motion under Rule 12(b).  In this case, the state, county and SMAQMD defendants

14    filed their motions to dismiss on February 28, 2011; the state defendants filed an amended

15    motion to dismiss on May 6, 2011.  Simmons filed his motion to dismiss on April 29, 2011.

16    Plaintiffs filed their motion to amend on May 11, 2011.

17    Although defendants have not raised Rule 15 directly, plaintiffs recognize its

18    impact and argue that the amended complaint is timely, at least as to Simmons, because it was

19    filed within twenty-one days of the filing of Simmons' motion to dismiss.  ECF No. 56 at 5.

20    There is little law on the question whether a motion to amend is timely as to all defendants if

21    filed within twenty-one days of the filing of the last-filed motion to dismiss.  *See Barksdale v.*

22    *King*, 699 F.2d 744, 747 (5th Cir. 1983) (under prior version of Rule 15, plaintiff's right to

23    amend complaint as to those who had not answered continued even after some defendants had

24    answered); *but see Lau v. Guam Dept. Of Education*, 2011 WL 2531061, at *3 (D. Guam June

25    ───────────────────

26    [2] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil
Procedure.

4

1  23, 2011) (under current version of Rule 15, plaintiff could not amend as matter of course when

2  not within 21 days of first motion, though request was filed before second motion).

3          This court, however, need not reach whether the motion to amend is timely.  As a

4  practical matter and a matter of judicial economy, ignoring the amended complaint makes little

5  sense, particularly when that proposed document does not include some of the claims under

6  attack in the motion to dismiss.   Ignoring the amended complaint also makes little sense in light

7  of the Ninth Circuit's admonition that district courts should grant leave to amend when

8  dismissing a case for failure to state a claim, "unless the court determines that the pleading could

9  not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

10  Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  With the amended

11  complaint on file, the court can better determine whether any deficiencies are curable.

12          Accordingly, in resolving the pending motions to dismiss, the court will consider

13  the amended complaint, to the extent that it contains claims substantially similar to the original

14  complaint.  Also in light of that complaint, the court deems the original claim of a violation of

15  the Clean Air Act and all claims against the State of California and the state agencies to have

16  been waived, and grants the motion to dismiss as to that claim and those defendants.

17  II.  Standards For A Motion To Dismiss

18          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

19  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

20  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

21  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

22  1990).

23          Although a complaint need contain only "a short and plain statement of the claim

24  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

25  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

26  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,

1  1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must

2  include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"

3  or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"

4  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a

5  motion to dismiss for failure to state a claim is a "context-specific task that requires the

6  reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Ultimately,

7  the inquiry focuses on the interplay between the factual allegations of the complaint and the

8  dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

9          In making this context-specific evaluation, this court must construe the complaint

10  in the light most favorable to the plaintiff and  accept as true the factual allegations of the

11  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

12  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

13  (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

14  to judicial notice" or to material attached to or incorporated by reference into the complaint.

15  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

16  consideration of documents attached to a complaint or incorporated by reference or matter of

17  judicial notice will not convert a motion to dismiss into a motion for summary judgment.

18  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003);  *Parks School of Bus. v. Symington*,

19  51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.

20  2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally

21  court is limited to face of the complaint on 12(b)(6) motion).

22  III.  <u>SMAQMD Defendants' Motion To Dismiss</u>

23          A.    <u>Allegations In Amended Complaint</u>

24          In the FAC plaintiffs allege that in April 2009, SMAQMD issued a petition

25  alleging that Hardesty Sand and Gravel (HSG) was operating equipment, specifically a generator

26  and several engines, in violation of its Rule 201, despite the fact that regulation of the non-

1    stationary engine is prohibited by state law and that regulation of other pieces of the equipment

2    is preempted by the Clean Air Act (CAA), 42 U.S.C. §§7401, *et seq.* FAC, ECF No. 42-1 ¶¶ 57-

3    58.  Plaintiffs allege that SMAQMD's Rule 201 is in direct violation of several provisions of the

4    CAA.  *Id.* ¶¶ 61-62.

5              Plaintiffs further allege that at the hearing on the Order of Abatement, defendant

6    Grose,[3] an employee of SMAQMD relied on SMAQMD's policy about engines on single sites

7    and fixed locations, which policy the hearing panel and later the Superior Court accepted and

8    which is not applied to similarly situated people.  FAC ¶¶ 63-64.  SMAQMD's definition is an

9    improper underground regulation, used to expand SMAQMD's jurisdiction from stationary

10   engines to portable engines.  *Id.* ¶ 65.  Plaintiffs sought review of the Order of Abatement in the

11   Superior Court, which upheld the abatement order.  *Id.* ¶ 70.  Thereafter, plaintiffs spent over

12   $50,000 to apply for permits from SMAQMD, but defendant Grose denied the request, notifying

13   them that any type of operation at the mine is a violation of various regulations, subject to

14   penalties, as well as a violation of the abatement order.  *Id.* ¶ 72.   With these facts as a backdrop,

15   plaintiffs allege that the SMAQMD defendants have deprived plaintiffs of their rights under the

16   Supremacy Clause and the Due Process Clause, through their regulation of construction

17   equipment operating with less than 175 horsepower and enforcement of that regulation, their

18   declaring the mine to be a single site in violation of 40 CFR § 89.2,[4] and issuing an order that

19   plaintiffs cannot use equipment to load rock.  *Id.* ¶ 95.  In addition, defendants have violated

20   plaintiffs' due process rights by designating the 3800 acre mine as a single site despite

21   Environmental Protection Agency (EPA) rulings that this could not constitute a single site.  *Id.*

22   ¶ 96.  Defendants have also violated plaintiffs' rights under the Supremacy and Due Process

23   clauses by creating an emission standard, which requires plaintiffs to purchase a permit to

24   _____

25        [3]  This defendant is identified as "Gross" in some portions of the FAC and "Grose" in
     others.

26        [4] This regulation defines engines for purposes of emission control.

7

1  undertake emissions in excess of two pounds per day. *Id.* ¶ 97.  Finally, plaintiffs allege that

2  defendants have violated their right to equal protection by defining the mine as a single site

3  without using the same definition with similarly situated people. *Id.* ¶ 98.  In the FAC, plaintiffs

4  seek only damages, having dropped the claim for equitable relief contained in the original

5  complaint. *Compare* ECF No. 42 ¶ 99 *with* ECF No. 2 ¶ 68.

6         B.      Arguments For Dismissal

7                 Citing *Younger v. Harris*, 401 U.S. 37 (1971), the SMAQMD defendants argue

8  that the claims should be dismissed in light of pending state proceedings.  They also rely on the

9  abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S.

10  813 (1976), as an alternative basis for dismissal.  Finally, they contend that the complaint fails to

11  state a claim against them.

12         1.      Request For Judicial Notice; Evidentiary Exhibits

13                 The SMAQMD defendants ask the court to take judicial notice of a number of

14  documents, including the letter denying permits, SMAQMD rules, the petition for an order of

15  abatement, the Order of Abatement, plaintiffs' petition for a writ of mandate and related briefing

16  filed in Sacramento County Superior Court, the Superior Court's ruling, and the notice of appeal.

17   ECF Nos. 28 & 66.  The state defendants have asked the court to take judicial notice of the

18  decision of the Court of Appeal, Third Appellate District.  ECF No. 66.

19                 Plaintiffs oppose these requests on the ground that consideration of evidence

20  outside the scope of the complaint or FAC and its attachments is not proper on a Rule 12(b)(6)

21  motion to dismiss.  ECF No. 49 at 6-7.  Nevertheless, they attach several exhibits to their

22  opposition, to which the SMAQMD defendants object.  ECF No. 58-1.

23                 Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice

24  of an adjudicative fact which "must be one not subject to reasonable dispute in that it is either (1)

25  generally known . . . (2) or capable of accurate and ready determination by resort to sources

26  whose accuracy cannot reasonably be questioned."  When appropriate, a court may take judicial

1   notice of documents without converting a motion to dismiss into a motion for summary

2   judgment. *MGIC Indemnity Corporation v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  It is the

3   proponent's burden to show that the facts contained in the documents are proper subjects of

4   judicial notice.  *Hurd v. Garcia*, 454 F.Supp.2d 1032, 1054-55 (S.D. Cal. 2006).

5            In addition, "a district court ruling on a motion to dismiss may consider a

6   document the authenticity of which is not contested, and upon which the plaintiff's complaint

7   necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by*

8   *statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676,

9   681 (9th Cir. 2006).  The Ninth Circuit has explained that such reliance is permissible when

10  "plaintiff's claim depends on the contents of a document" that is not attached to the complaint.

11  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Swartz v. KPMG LLP*, 476 F.3d

12  756, 763 (9th Cir. 2007) (in order to prevent a plaintiff from prevailing on a Rule 12(b)(6)

13  motion by omitting documents underlying a claim, court may consider the document if its

14  authenticity is not questioned).  In this case, one of the documents covered by defendants'

15  request is a letter from David Grose, dated August 19, 2010, which is quoted in the complaint

16  ECF No. 28-3 at 2-3 (Ex. A); the court may consider this as incorporated by the complaint.

17           A court also may take judicial notice "'of proceedings in other courts, both within

18  and without the federal judicial system, if those proceedings have a direct relation to the matters

19  at issue.'"  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (quoting *United States*

20  *ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992).

21  Because the state court records have a "direct relation" to the issue of abstention, it is proper for

22  this court to take judicial notice of them.  Nevertheless, the court will not take judicial notice of

23  any disputed facts in these records.  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.

24  2001).

25           In addition, it is proper to take judicial notice of administrative rules and records

26  of administrative agencies.  *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) (handbook of Wage

1    and Hour Division);  *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986),

2    *disapproved on other grounds by Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S.

3    104 (1991) (administrative board decision); *DCIPA, LLC v. Lucile Slater Packard Children's*

4    *Hosp.*, ___ F. Supp. 2d ___, 2011 WL 5141505, at *3 (D. Or. Oct. 20, 2011) (administrative

5    rules); *Jensen v. County of Sonoma*, 2008 WL 5048203, at *3 (N.D. Cal. Nov. 25, 2008)

6    (administrative decision and order).  Accordingly, the court overrules plaintiffs' objections and

7    takes judicial notice of Exhibits B through K comprising the SMAQMD rules and documents

8    relating to the proceedings on the petition for abatement, as well as the decision of the California

9    Court of Appeal (ECF No. 66-1), and a letter dated November 5, 2009, denying plaintiffs' permit

10   applications, which is the remainder of Ex. A.

11          Defendants object to plaintiffs' submission of some excerpts from the SMAQMD

12   hearing, the decision of the California Air Resources Board (CARB) regarding some of their

13   engines, and information from the CARB website addressing the definition of a site.  ECF

14   No. 49, Exs. 3-6.  The court agrees that the discussion during the hearing and an administrative

15   decision and information from another agency are not relevant to plaintiffs' claims here.

16   Moreover, to the extent these materials are judicially noticeable, plaintiffs appear to be asking

17   the court to rely on disputed facts in these materials, which the court cannot do.

18          2.    *Younger* Abstention

19          Defendants argue that this case should be dismissed because of the pendency of

20   the state action.  Plaintiffs counter that they have dismissed the claim for equitable relief.  They

21   note they are proceeding only on claims for damages arising out of defendants' classifying their

22   mine as a single site, which has prevented plaintiffs from operating their portable engines, and

23   Grose's issuance of a cease and desist letter that essentially prevents them from conducting any

24   operations at the mine.  Plaintiffs agree these claims should be stayed pending resolution of the

25   state proceedings.

26   /////

1    In *Younger v. Harris*, 401 U.S. 37, 54 (1971), the Supreme Court recognized the

2 "longstanding public policy against federal court interference with state court proceedings . . ."

3 and reversed the District Court's enjoining of a prosecution against Harris for violations of

4 California's criminal syndicalism statutes.  Subsequent cases applying *Younger* have formulated

5 a three-part test:  a federal court should abstain from adjudicating a lawsuit if (1) there are

6 pending state judicial proceedings, (2) the state proceedings implicate important state interests,

7 and (3) the state proceedings provide an adequate opportunity to raise federal questions.

8 *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  The

9 Ninth Circuit has identified "a vital and indispensable fourth element: the policies behind the

10 *Younger* doctrine must be implicated by the actions requested of the district court."

11 *Amerisourcebergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).  Accordingly, "once

12 the three *Middlesex* elements are satisfied, the court does not automatically abstain, but abstains

13 only if there is a *Younger*-based reason to abstain–i.e., if the court's action would enjoin, or have

14 the practical effect of enjoining, ongoing state court proceedings."  *Id*.  After determining

15 whether *Younger* abstention is appropriate, the court must consider whether to dismiss or stay

16 the federal action; generally a case seeking damages only should be stayed.  *Gilberston v.

17 Albright*, 350 F.3d 1030 (9th Cir. 2003); *see Deakins v. Monaghan*, 484 U.S. 193 (1988)

18 (declining to decide whether dismissal is appropriate "when (but only when) a necessary

19 predicate of the claim for damages undermines a necessary element in the pending state

20 proceeding").

21    Defendants argue that any resolution of plaintiffs' claims will have a direct,

22 disruptive impact on the state proceedings because this court's determination of the

23 constitutional issue underlying the damage claim would essentially enjoin the state action and so

24 dismissal of the damages action is appropriate.  As the Ninth Circuit has observed, "mere

25 potential for conflicting results is not 'interference'" within the meaning of *Younger*.  *Id*. at

26 /////

1  1129.  The court accepts plaintiffs' concession that a stay of the second claim in the amended

2  complaint against SMAQMD and Grose is appropriate.[5]

3  IV.  State Defendants' Motion To Dismiss

4        A.     Allegations In Amended Complaint

5             As part of the FAC, plaintiffs have dropped claims against the state, the named

6  agencies and claims against defendant Goldstene.

7             In September 2008, defendant Gregory, an employee of the DFG, accompanied

8  by defendant Simmons, an employee of the Army Corps of Engineers (Corps), entered plaintiffs'

9  mine without a warrant and inspected a dam on the southernmost creek, the processing facility,

10  and the creek on the north east side of the processing facility.  ECF No. 42-1 ¶ 36.

11             Plaintiffs also allege that as part of Teichert's campaign to drive plaintiffs out of

12  business, State Senator Dave Cox sent a letter to the Secretary of California's Resources Agency

13  in October 2008, asking for a review of plaintiffs' mining operations and consideration whether

14  plaintiffs should be removed from a list[6] of approved aggregate operators, eligible to sell to the

15  state.  ECF No. 42-1 ¶ 40.

16             Even though inspectors from the DFG determined there were no violations at

17  plaintiffs' mine, defendants Koehler, O'Bryant and Norris, all employees of the OMR, continued

18  to investigate.  *Id.* ¶ 45.  In October or November 2008, Morris told several contractors not to

19  buy from plaintiffs and threatened suit if they did.  *Id.* ¶¶ 46, 55.

20             In February 2009, Koehler completed an inspection report identifying several

21  purported violations by plaintiffs of the Surface Mining and Reclamation Act (SMARA),

22  _____

23        [5]  The court thus declines to reach the SMAQD defendants' suggestion that suit against
    defendant Grose is barred because of his failure to seek administrative review after the issuance
24  of the letter concerning permits.  Defendants rely on *Moore v. City of Asheville*, 396 F.3d 385
    (4th Cir. 2005), which held that *Younger* abstention principles applied when a street preacher
25  could have, but did not, pursue administrative and judicial remedies.  The court need not decide
    the limits of the holding in *Moore* as plaintiffs have conceded that a stay is proper.

26        [6]  Plaintiffs identify this as the AB 3098 list.

                                    12

1   including an inadequate financial assurance undertaking, and other statutes. *Id.* ¶ 48.  In March

2   2009, O'Bryant sent a memo to the Natural Resources Agency, identifying these violations along

3   with several others. *Id.* ¶ 49.  As a result, O'Bryant wrote to plaintiffs summarizing these

4   findings and informing plaintiffs they were being removed from the AB 3098 list. *Id.* ¶ 51.

5   O'Bryant did not provide prior notice or inform plaintiffs of any avenue to challenge the

6   removal. *Id.*  Plaintiffs' counsel wrote to Testa, requesting an appeal of the removal, but Testa

7   replied there was no appeal procedure. *Id.* ¶ 53.

8            Plaintiffs allege that defendants Koehler, Norris, Testa and O'Bryant have

9   violated plaintiffs' right to due process and equal protection by enforcing a policy that denies

10  plaintiffs notice and a right to appeal their removal from the AB 3098 list.  They also allege

11  defendants Koehler, Testa and O'Bryant have violated plaintiffs' right to procedural due process

12  by removing plaintiffs' business from the AB 3098 list. *Id.* ¶¶ 105-106.  In addition, defendant

13  Norris has violated plaintiffs' right to substantive due process by instructing truckers not to buy

14  minerals from the plaintiffs. *Id.*  Finally, these defendants have violated plaintiffs' right to equal

15  protection by singling them out for removal from the AB 3098 list. *Id.* ¶ 108.

16       B.    Arguments For Dismissal

17            1.    Removal From The AB 3098 List And Due Process

18            Plaintiffs allege they were denied due process by their removal from what they

19  call the AB 3098 list, without prior notice and opportunity for a hearing and without any post-

20  deprivation remedies.  Defendants argue that plaintiffs do not have any property interest in

21  remaining on the list and so are not entitled to any procedural protections and that if there is a

22  property interest, it is adequately protected by post-termination administrative and statutory

23  procedures.

24            Under SMARA, every surface mining operation must have a permit or have a

25  vested right to conduct surface mining, a reclamation plan, and financial assurances to

26  implement the reclamation.  CAL. PUB. RES. CODE §§ 2710 *et seq.*; *Calvert v. County of Yuba*,

13

1   145 Cal. App. 4th 613, 617 (2006).  Satisfaction of these requirements is required before a

2   mining operation may sell to state or local agencies.  Cal. Pub. Res. Code §§ 10295.5, 20676.

3   Accordingly,

> For purposes of ensuring compliance with Sections 10295.5 and 20676 of the Public Contract Code, the department shall, at a minimum, quarterly publish in the California Regulatory Notice Register, or otherwise make available upon request . . .,  a list identifying all of the following:
>
> (1) Surface mining operations for which a report is required and has been submitted pursuant to Section 2207 that indicates all of the following:
>
> > (A) The reclamation plan and financial assurances have been approved pursuant to this chapter.
> >
> > (B) Compliance with state reclamation standards developed pursuant to Section 2773.
> >
> > (C) Compliance with the financial assurance guidelines developed pursuant to Section 2773.1.
> >
> > (D) The annual reporting fee has been submitted to the Department of Conservation.

15  Cal. Pub. Res. Code § 2717(b).[7]  Plaintiffs contend that because placement on the list is

16  mandatory upon compliance with SMARA, this amounts to the conferral of a benefit that cannot

17  be rescinded without due process.

18          The Due Process Clause of the Fourteenth Amendment forbids the state to

19  deprive a person of property without due process of law.  *Carver v. Lehman*, 558 F.3d 869, 872

20  (9th Cir.), *cert. denied*, 130 S. Ct. 466 (2009).  There are two steps in the analysis of a due

21  process claim: do plaintiffs have a protected property interest and, if so, did they receive all the

22  process that was due them.  *Walls v. Central Contra Costa Transit Authority*, 653 F.3d 963,

23  967-68 (9th Cir. 2011).  Property interests are created by state law, but not every state statutory

---

25          [7]  The provisions prohibiting state purchase of minerals from a mine without a
26  reclamation plan and financial assurances were added by Assembly Bill 3098 in the 1991-1992
    California Legislative Session.  1992 Cal. Legis. Serv. Ch. 1077 (A.B. 3098).

1  right thereby becomes a constitutional entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 577

2  (1972); *Paul v. Davis*, 424 U.S. 693, 700 (1976); *Vruno v. Schwarzwalder*, 600 F.2d 124,

3  131(8th Cir. 1979) ("the due process clause does not convert every state statutory right into a

4  constitutional entitlement").  Instead, "federal constitutional law determines whether that interest

5  rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."

6  *San Bernardino Physicians' Services Medical Group v. County of San Bernardino*, 825 F.2d

7  1404, 1408-09 (9th Cir. 1987) (quoting *Memphis Light, Gas & Water Division v. Craft*, 436 U.S.

8  1, 9 (1978) (quoting *Roth*, 408 U.S. at 577)).

9          To determine whether state law creates a property interest protected by due

10  process, this court must examine "'the language of the statute and the extent to which the

11  entitlement is couched in mandatory terms.'" *Johnson v. Rancho Santiago Community College*

12  *Dist.*, 623 F.3d 1011, 1030 (9th Cir. 2010), *cert. denied sub nom. Bertalan v. Rancho Santiago*

13  *Community College Dist.*, ___ U.S. ___, 131 S.Ct. 2096 (2011) (quoting *Wedges/Ledges of Cal.,*

14  *Inc. v. Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994), quoting *Ass'n of Orange Co. Deputy Sheriffs v.*

15  *Gates*, 716 F.2d 733, 734 (9th Cir. 1983)).

16          Despite plaintiffs' claim that placement on the list is mandatory once a miner

17  complies with SMARA's requirements, the statute does not support their claim.  The statute uses

18  the word "shall" to connote a mandatory duty only when referring to the Department of

19  Conservation's obligation to publish a list of compliant miners, who are thereby eligible for state

20  contracts.  *See Puerta v. Torres*, 195 Cal. App. 4th 1267, 1272 (2011) (quoting *Common*

21  *Cause v. Board of Supervisors*, 49 Cal. 3d 432, 443 (1989) (well settled principle of statutory

22  construction that "shall" is ordinarily construed as mandatory); *Firebaugh Canal Co. v. United*

23  *States*, 203 F.3d 568, 573-74 (9th Cir. 2000) (same).  In addition, the fact that plaintiffs' business

24  was placed on the list does not elevate their standing to an entitlement to remain on the list.

25  *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1021 (9th Cir 2011), *cert. denied*, 132 S.Ct.

26  249 (2011) (past practice of granting a benefit insufficient to establish entitlement to the benefit).

1    Nothing in the statute itself creates an entitlement to a place on the list that would trigger the

2    protections of due process.  The parties have not cited and the court has not found any California

3    case law or other authority addressing any requirements for inclusion on the list.  This court does

4    not find any state-created property interest in inclusion on the list of surface miners eligible to

5    secure public contracts.

6            Even if the statute can be read as creating an entitlement recognized by state law,

7    this court declines to find it rises to the level of a legitimate entitlement within the meaning of

8    the Due Process clause.  Federal courts have generally found that placement on a list does not

9    arise to the level of a legitimate entitlement in the absence of any guarantee that remaining on

10   the list translates to employment or a contract.  *See Moore v. Muncie Police & Fire Merit*

11   *Comm'n*., 312 F.3d 322, 327 (7th Cir. 2002); *Bryant v. Greeson*, 2010 WL 3522953, at *5 (S.D.

12   Ind. Aug. 31, 2010); *but see Stana v. School District of the City of Pittsburgh*, 775 F.2d 122 (3d

13   Cir. 1985) (teacher had property interest in place on eligibility list when it was *sine qua non* for

14   teaching position).  Even if plaintiffs had remained on the list, they would have had no property

15   interest in receiving a government contract.  *Mednik v. State Dep't of Health Care Services*,

16   175 Cal. App. 4th 631, 641 (2009); *Golden Day Schools, Inc. v. State Dep't of Ed.*,

17   83 Cal. App. 4th 695, 704 (2000) (the right to bid on a contract is not a property right).[8]

18           Accordingly, the claims against Testa, Koehler, O'Bryant and Norris based on a

19   right to due process stemming from plaintiffs' removal from the eligibility list and its aftermath

20   are dismissed with prejudice.

21   /////

22

23      [8]  Because plaintiffs do not have a legitimate entitlement to remain on the eligibility list,
     the court need not consider whether state law remedies provide sufficient due process protection.

24   Finally, plaintiffs concede they were removed from the eligibility list because of a finding that
     they were in violation of SMARA, though they argue the finding was improper.  *See* CAL. PUB.

25   RES. CODE §§ 2716(a) & 2770(e); *see Lujan v. G. & G. Fire Sprinklers, Inc*., 532 U.S. 189
     (2001).

26

16

1

2.      Substantive Due Process Claim Against Defendant Norris

2           Plaintiffs allege their substantive due process right to enter into contract was

3    violated when defendant Norris stopped truckers and threatened them with suit if they purchased

4    from plaintiffs.

5           The Supreme Court has said that "the Fourteenth Amendment is not a font of tort

6    law to be superimposed upon whatever systems may already be administered by the States. . . ."

7    *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  Courts have been reluctant to find a

8    substantive due process claim based on anything but a violation of fundamental rights.

9    *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2009).

10          Although the right to pursue a chosen profession is protected by substantive due

11   process, actions short of those that "foreclose access to a particular profession" do not violate the

12   Fourteenth Amendment.  *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 998 (9th Cir.

13   2007), *aff'd*, 553 U.S. 591 (2008).  The doctrine of substantive due process does not

14   constitutionalize a claim for tortious interference with contract.  *Habab v. Hon*, 536 F.3d 963,

15   968 (8th Cir. 2008).  Plaintiffs' claim shows at most only interference with potential contracts,

16   not a wholesale prevention of their right to conduct business.  This does not state a constitutional

17   claim.  *Bartlett v. Crook Co., Oregon*, 2009 WL 1176465, at *5-6 (D. Or. Apr. 28, 2009); *but see*

18   *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).  This claim also will be

19   dismissed without leave to amend.

20          3.      Equal Protection And A Class Of One

21          Plaintiffs allege that defendants Koehler, Norris, Testa and O'Bryant have

22   violated their right to equal protection by singling them out, intentionally and irrationally, for

23   removal from the AB 3098 list.  ECF No. 42-1 ¶ 108.  Although defendants acknowledge that

24   plaintiffs have pled an equal protection claim, they do not specifically challenge it in the motion;

25   instead, they appear to rely on their opposition to plaintiffs' due process claim to oppose this

26   claim as well and so have presented no independent grounds for dismissal of this portion of the

17

1   complaint.  Because plaintiffs raise the claim again in their proposed amended complaint,

2   however, the court will consider the sufficiency of the allegations in determining whether these

3   allegations state a claim.  *See Ahlmeyer v. Nevada System of Higher Ed.*, 555 F.3d 1051, 1055

4   (9th Cir. 2009) (although a court considers five factors in assessing a request to amend, "futility

5   of amendment alone can justify the denial of a motion").

6          In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Supreme Court

7   recognized as viable "equal protection claims brought by a 'class of one,' where the plaintiff

8   alleges that she had intentionally been treated differently from others similarly situated and that

9   there is no rational basis for the difference in treatment."  In the Ninth Circuit, a "class of one"

10   equal protection claim has three elements: the defendants "(1) intentionally (2) treated

11   [plaintiffs] differently than other similarly situated [mine operators], (3) without a rational

12   basis."  *Gearhart*, 637 F. 3d at 1022.  The "class of one" portion of the amended complaint here

13   is conclusory, alleging only that the defendants "have violated Plaintiffs' rights to equal

14   protection by intentionally and irrationally singling out Plaintiffs for unwarranted removal from

15   the AB 3098 List."  ECF No. 42-1 ¶ 108.  There is no allegation, not even a conclusory one, that

16   plaintiffs were treated differently than similarly situated operators of surface mines nor is there

17   any attempt to describe the differences in treatment.  In addition, despite plaintiffs' claim that

18   defendants acted "irrationally," they have not explained how this action, based on purported

19   SMARA violations, was taken without a rational basis.  Although these deficiencies are not

20   necessarily fatal to a class of one claim, the court cannot say plaintiffs here will be unable to

21   correct the deficiencies in an amended pleading.  *See, e.g., Hamer v. El Dorado County*, 2011

22   WL 794895 (E.D. Cal. Mar. 1, 2011) ("as to the different treatment element, a plaintiff must

23   demonstrate that the 'level of similarity between plaintiff and the persons with whom they

24   compare themselves must be extremely high") (internal citation omitted).

25   /////

26   /////

4.   <u>Fourth Amendment Claim Against Defendant Gregory</u>

Plaintiffs allege that, in September 2008, defendant Gregory conducted a warrantless inspection of a portion of their mine, including a dam on the southernmost creek, the processing facility, and the creek along the north and east sides of the processing facility, in violation of plaintiffs' Fourth Amendment rights.  ECF No. 42-1 ¶¶ 36, 126.

To the extent defendants claim that plaintiffs have not shown their reasonable expectation of privacy was violated by Gregory's actions, the proposed amended complaint has addressed these concerns; in the amendment, plaintiffs describe Gregory's entry onto the mine premises and inspection of several portions of the property.  They also allege that they lease the mine from the Schneider family and have exclusive control over the mine areas and processing plants.  ECF No. 42-1 ¶ 23.  These latter allegations suffice to plead the substantive Fourth Amendment requirement of a reasonable expectation of privacy in the premises searched.  *See v. City of Seattle*, 387 U.S. 541, 543 (1967) ("The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his Nov. 18, 2009) (tenant had reasonable expectation of privacy in leased premises; § 1983 action could proceed).

In their reply, however, defendants argue that because plaintiffs are involved in a highly regulated activity, plaintiffs "cannot help but be aware that their property will be subject to periodic inspections undertaken for specific regulatory purposes."  ECF No. 57 at 6-7.  They rely on *Donovan v. Dewey*, 452 U.S. 594 (1981), which held that periodic warrantless inspections of underground mines and stone quarries by federal mine safety inspectors to ensure compliance with the health and safety standards of the Federal Mine Safety and Health Act of 1977 did not violate the Fourth Amendment.  *Donovan* does not hold that a mine operator thereby loses all Fourth Amendment protection against warrantless entries by officials from a different agency, employed by a different sovereign, for purposes unrelated to mine safety or
/////

1  defendants have cited no authority construing *Donovan* in this way, suggesting there is a state

2  regulatory scheme that permits warrantless inspections.

3          Defendants argue further that the amended complaint is deficient because it does

4  not include the exact date of the search.  Defendants suggest that the search occurred outside the

5  two-year statute of limitations and suggest that plaintiffs have some obligation to plead the exact

6  date to facilitate defendants' motion to dismiss.  *See Von Saher v. Norton Simon Museum*,

7  592 F.3d 954, 969 (9th Cir. 2010) (a complaint may be dismissed only when the running of the

8  statute of limitations is apparent on the face of the complaint).   They have provided no

9  authority, however, suggesting that the complaint must include the exact date in order to

10  facilitate their motion to dismiss.  The court declines to impose such a requirement.

11          The court concludes that this portion of the complaint states a Fourth Amendment

12  claim as to defendant Gregory.

13  V.  Federal Defendants' Motion To Dismiss

14          A.      Allegations In Amended Complaint

15          In the proposed amended complaint, plaintiffs allege that on June 2, 2008,

16  Michael Jewell of the Corps sent plaintiffs a letter directing them to cease and desist all

17  operations subject to obtaining the appropriate permits for the discharge of dredged material.

18  Simmons did not give plaintiffs prior notice that the letter would issue, has not retracted the

19  letter, and has not given plaintiffs the opportunity to appeal the cease and desist order.  ECF No.

20  42-1 ¶¶ 33, 37.  Jewell sent another cease and desist order on April 16, 2010, again without any

21  notice or hearing.  *Id.* ¶ 79.  Plaintiffs allege that these actions deprived them of their right to

22  substantive and procedural due process; specifically, they have been deprived of their ability to

23  conduct their mining operation without disruption and have lost customers and sales.  *Id.* ¶¶ 115-

24  116, 120.

25          In September 2008, Zachary Simmons, another employee of the Corps

26  accompanied defendant Gregory during the warrantless search of the mine site.  ECF No. 42-1

1   ¶ 36.  Information obtained during this search formed the basis of the second cease and desist

2   letter.  *Id*. ¶ 120.  Plaintiffs allege that Simmons has violated their Fourth Amendment right to be

3   free of warrantless searches.  *Id*.

4          B.      Arguments For Dismissal

5                  Defendants argue that this court lacks subject matter jurisdiction over the claims

6   because plaintiffs do not have standing to raise either their Fourth or Fifth Amendment claims

7   and the Fifth Amendment claims are not ripe for review.  They also argue that the complaint fails

8   to state a claim.

9                  1.      Subject Matter Jurisdiction

10                 The jurisdiction of the federal courts is limited to resolving "cases and

11  controversies."  U.S. CONST., art. III.;  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Because of

12  this limited jurisdiction, cases lie outside the jurisdiction of the court unless proven otherwise.

13  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994).  There are a

14  number of "doctrines that cluster about Article III," including standing and ripeness, that may

15  support a challenge to subject matter jurisdiction raised by either party or sua sponte by the

16  court. *Allen v. Wright*, 468 U.S. 737 (1984);  Fed. R. Civ. P. 12(b)(1).[9]  A Rule 12(b)(1)

17  jurisdictional attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

18  2000) (citation omitted).  In a facial attack, the complaint is challenged on its face as failing to

19  support federal jurisdiction, whereas, in a factual attack, the challenger provides evidence,

20  through affidavits or otherwise, that an alleged fact is false resulting in a lack of subject matter

21  jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial

22  /////

23

24          [9]  Some courts have considered facial jurisdictional challenges in motions to dismiss
      under Rule 12(b)(6).  *See, e.g., Newdow v. Lefevre,* 598 F.3d 638, 642 (9th Cir. 2010),
25  *cert. denied*, 131 S.Ct. 1612 (2011); *but see Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir.
      2011) (recognizing that *Twombly* and *Iqbal* "are ill-suited to the application in the constitutional
26  standing context").

                                                    21

1   attack, allegations in the complaint are taken as true and construed in the light most favorable to

2   a plaintiff.

3            Defendants argue that plaintiffs lack standing to pursue their Fourth Amendment

4   claim because they have not alleged that Simmons' alleged unlawful search caused any injury.

5   They also argue there is no allegation that Simmons was involved in issuing the cease and desist

6   letter and, in any event, plaintiffs have not alleged they were damaged in any way by the

7   issuance the letter.

8            In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court

9   defined "the irreducible constitutional minimum of standing."  First, there must be an invasion of

10   plaintiff's legally protected interest, an injury-in-fact, which is both concrete and particularized

11   and actual and imminent; second, there must be a causal connection between the injury and the

12   challenged conduct; and third, it must be likely that the injury will be redressed by a decision in

13   plaintiff's favor.  *Id.* at 560-61; *see also Cigarettes Cheaper! v. State Bd. of Equalization*,

14   2011 WL 2560214, at *1 ( E.D. Cal. June 28, 2011).  It is plaintiffs' burden to establish their

15   standing to sue.  *Lujan*, 504 U.S. at 560.

16            Defendants argue that plaintiffs have not adequately pled an injury-in-fact

17   because they allege only that the warrantless search occurred without further describing any

18   resulting harm.  Whether an allegation of such additional harm is necessary to establish standing,

19   *but see Easyriders Freedom F.I.G.H.T v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (wrong

20   "is completed" when action taken in violation of the Fourth Amendment); *Cerro Metal*

21   *Products v. Marshall*, 620 F.2d 964 (3d Cir. 1980) (for purposes of injunction, OSHA inspection

22   is deemed to be an injury); *compare Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th

23   Cir. 1981) (no standing to raise Fourth Amendment claim based solely on statute that permits

24   inspection without claim statute has been applied to plaintiff), plaintiffs have alleged in the

25   amended complaint that information gathered in the search was used as a basis for the second

26   cease and desist order.  This allegation is sufficient to plead harm.

1    Defendants next argue that plaintiffs lack standing to challenge any denial of due

2    process in connection with the issuance of the cease and desist letters and that the claim is not

3    ripe because there has been no final agency action in the wake of the cease and desist letters.

4    Defendants rely on what they characterize as the *Lujan* Court's flat rejection of the argument that

5    the concrete-injury requirement is satisfied by the violation of a procedural duty and argue that

6    plaintiffs have not suffered a concrete injury.  ECF No. 37- 4 at 17.

7    In *Lujan*, the Court said, "we do *not* hold that an individual cannot enforce

8    procedural rights; he assuredly can, so long as the procedures are designed to protect some

9    threatened concrete interest of his that is the ultimate basis of his standing."  *Lujan*, 504 U.S. at

10   573 n.8 (emphasis in original).  As noted above, a claim of inadequate procedures must be

11   grounded in a property interest to be protected by those procedures.  *Thornton v. City of*

12   *St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005); *Berg v. California Horse Racing Bd.*,

13   419 F. Supp. 2d 1219, 1232 (E.D. Cal. 2006).  Plaintiffs allege generally that they have a vested

14   right to mine as recognized by the County of Sacramento and that the issuance of the cease and

15   desist order has impacted this right.  ECF No. 42-1 ¶ 114.  This is sufficient for standing with

16   respect to due process.

17   The federal defendants also rely on several cases finding that the structure of the

18   Clean Water Act precludes review of cease and desist orders.  *See, e.g.*, *Southern Pines*

19   *Associates v. United States*, 912 F.2d 713, 716 (4th Cir. 1990).  The Supreme Court has very

20   recently addressed this issue.  In *Sackett v. Environmental Protection Agency,* __ U.S. __, 2012

21   WL 932018 (Mar. 21, 2012), the Court considered whether landowners could bring an action

22   challenging cease and desist orders issued by the EPA, stemming from alleged violations of the

23   Clean Water Act (CWA).[10]  The Court rejected the argument that the landowners could seek a

24

25   _____

     [10]  The federal defendants relied on  *Sackett v. U.S. Environmental Protection Agency*,
26   622 F.3d 1139, 1145 (9th Cir. 2010), which held that parties could not seek review of cease and
     desist orders.

1    permit from the Corps and then seek review of this order under the Administrative Procedures

2    Act (APA), noting that challenging one agency's action by seeking a permit from another was not

3    an adequate remedy.  *Id*. at *5.  It also rejected the EPA's argument, the same made by the federal

4    defendants in this case, that the structure of the CWA itself precluded review.  The Court said that

5    "there is no reason to think that the Clean Water Act was uniquely designed to enable the strong-

6    arming of parties into 'voluntary compliance' without the opportunity for judicial review . . . ."

7    *Id*. at *7.  It concluded that "the compliance order in this case is final agency action for which

8    there is no adequate remedy other than APA review, and that the Clean Water Act does not

9    preclude that review."  *Id*.

10           It is true that, in this case, it was the Corps that issued the cease and desist order

11   and that also could issue a permit, unlike the situation in *Sackett*.  However, given the Court's

12   determination that the compliance order was sufficiently final to trigger APA review, it is not

13   determinative that the cease and desist order was issued by the Corps, which could issue a permit.

14   But because the Supreme Court found that the cease and desist order was a final agency action

15   subject to APA review, plaintiffs' § 1983 claim challenging the impact of the cease and

16   March 27, 2012desist order on their ability to conduct mining activities is not viable.  This

17   portion of the complaint is dismissed with leave to amend, if possible, in light of *Sackett*.

18           2.    Motion to Dismiss–Fourth Amendment Claim

19           Defendants argue that plaintiffs' *Bivens* claim is precluded by Congress's

20   comprehensive scheme of environmental litigation, a conclusion underscored by the fact that pre-

21   enforcement review is not available.  With little analysis, plaintiffs counter that *Bivens* itself was

22   based on a Fourth Amendment violation so their claim should similarly be considered.

23           In *Bivens v. Six Unknown Named Agents of the F.B.I.*, 403 U.S. 388 (1971), the

24   plaintiff challenged a search conducted by federal narcotics agents.  The Supreme Court rejected

25   the agents' position that plaintiff's only remedy was a state court action and recognized a right of

26   action based in the constitutional violation itself.  Since the *Bivens* decision, the Supreme Court

24

1   has found implied causes of action in only two other circumstances.  In *Davis v. Passman*,

2   442 U.S. 228, 245-46 (1979), the Court allowed a political appointee to bring a sex discrimination

3   claim, based on the Fifth Amendment, against a congressman.  In *Carlson v. Green*, 446 U.S. 14

4   (1980), the Court held that the administrator of the estate of a deceased federal prisoner could

5   bring a *Bivens* action alleging that the prisoner had suffered personal injuries, which violated his

6   Eighth Amendment right to be free of cruel and unusual punishment.

7        Since *Carlson*, the Court has not extended *Bivens* to "any new context or new

8   category of defendants," *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001), because

9   "implied causes of actions are disfavored." *Iqbal*, 129 S.Ct. at 1948.

10        In *Wilkie v. Robbins*, 551 U.S. 537 (2007), the Court said

11       the decision to recognize a *Bivens* remedy may require two steps.
    In the first place, there is the question whether any alternative,

12       existing process for protecting the interest amounts to a convincing
    reason for the Judicial Branch to refrain from providing a new and

13       freestanding remedy in damages.  But even in the absence of an
    alternative, a *Bivens* remedy is the subject of a judgment: 'the

14       federal courts must make the kind of remedial determination that is
    appropriate for a common-law tribunal, paying particular heed,

15

16       however, to any special factors counseling hesitation before
    authorizing a new kind of federal litigation.

17   *Id*. at 550 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)); *Western Radio Services Co. v. U.S.*

18   *Forest Service*, 578 F.3d 1116, 1120 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 2402 (2010).

19        The federal defendants rely on *Western Radio Services,* which, they argue, has

20   many parallels to this case.[11]  In *Western Radio Services*, the plaintiff leased land from the Forest

21   Service and constructed and maintained radio towers.  At some point its relations with the Forest

22   Service soured and it began pursuing administrative appeals and then lawsuits challenging a

23   

24       [11]  Defendants characterize *Western Radio Services* as raising Fourth and Fifth
Amendment claims, ECF No. at 15, but the *Bivens* action in that case raised only First and Fifth

25   Amendment claims.  *Western Radio Services*, 578 F.3d at 1118.  *Western Radio Services* itself
mischaracterized *Wilkie* as including a Fourth Amendment claim as part of its *Bivens* action, but

26   the *Wilkie* plaintiff dismissed his Fourth Amendment claim before the case reached the Supreme
Court.  *Wilkie*, 551 U.S. at 548.

1   number of Forest Service decisions.  Plaintiff perceived that the Forest Service's response was to

2   delay action on an application to construct additional radio towers.  It also believed that the Forest

3   Service was not enforcing its electronic site management plan against other lessees.  Plaintiff

4   brought suit under the APA and *Bivens*, alleging that the delays in considering its applications

5   were retaliatory within the meaning of the First Amendment and that it was being treated

6   differently in violation of the Fifth Amendment.

7           Relying on *Wilkie's* distillation of *Bivens* jurisprudence, the Ninth Circuit in

8   *Western Radio Services* rejected plaintiffs' claim.  It noted that when Congress has created

9   "'adequate procedural mechanisms for constitutional violations that may occur" in the course of

10  administering government programs, even when statutory remedies "do not provide complete

11  relief," a court should not create *Bivens* remedies.  *Id*. at 1120 (quoting *Chilicky*, 487 U.S. at 423,

12  and *Correctional Services Corp*., 534 U.S. at 69); *see also Collins v. Bender*, 195 F.3d 1076, 1079

13  (9th Cir. 1999) (Civil Service Reform Act can preclude *Bivens* action even whether the CSRA

14  does not provide an alternative remedy).  Also relying on *Wilkie*, the Circuit determined that the

15  APA, which provides judicial review for any "person suffering legal wrong because of agency

16  action, or adversely affected or aggrieved by agency action . . . , " provides an avenue for relief.

17  *Id*. at 1122; 5 U.S.C.§ 702.  The court said that "the design of the APA raises the inference that

18  Congress 'expected the Judiciary to stay its *Bivens* hand . . . .'" *Id*. at 1123 (quoting *Wilkie*, 551

19  U.S. at 550), and concluded that APA procedures for challenging agency action and inaction were

20  adequate even though they did not provide for money damages against individual officers.  *Id*.

21          The federal defendants point to the provisions of the CWA, which allows plaintiffs

22  to apply for a permit and to challenge any denial by filing suit in federal district court under the

23  APA.  33 U.S.C. § 1344(a); 5 U.S.C. § 704.  They also rely on provisions for notice and hearing

24  after the issuance of a cease and desist order.  *See* 33 U.S.C. § 1319(g)(4)(A)-(C), (g)(8).

25  Defendants concede that plaintiffs have not been subject to final agency action, but argue that

26  even so the CWA provides "an adequate and meaningful mechanism of review" and "provides a

1  host of safeguards to address potentially erroneous orders, penalties, assessments, or agency

2  actions. . . ." ECF No. 37-3 at 17.  They do not address, however, whether the CWA provides any

3  remedy for a party who has not been subjected to final agency action, but rather who challenges

4  an individual officer's warrantless entry onto its property.

5          In *Grant v. United States*, 2011 WL 5514037 (D. Or. Nov. 9, 2011), the plaintiff

6  operated a mining operation on Forest Service land.  When the Forest Service increased the bond

7  for his operation, plaintiff unsuccessfully appealed and then sought an extension of the time in

8  which to post the bond.  When he failed to do so, Forest Service officials removed structures

9  plaintiff had erected on his mining claim and eventually destroyed them.  Plaintiff brought a

10 *Bivens* action, alleging he had been deprived of property without due process.  The Forest Service

11 alleged plaintiff had adequate remedies through the APA in the form of an appeal of the bond

12 requirement.  The court disagreed.  It acknowledged that plaintiff could and did seek review of

13 the increased bond, but that the "crux of plaintiff's claim. . . is not the increase of his bond, but

14 the destruction and removal of his mining structures."  It continued:

15         [I]f Schmidt had issued a final, reviewable decision regarding the
           impoundment and demolition of plaintiff's structures, the APA
16         likely would provide plaintiff with an adequate and effective
           remedy.
17
           However, Schmidt issued no final agency decision declaring
18         plaintiff's structures in trespass and subject to impoundment and
           removal . . . .  Thus, unlike *Wilkie* or *Western Radio*, plaintiff was
19         left with no final agency action that he could appeal or otherwise
           challenge under the APA.
20

21 *Id*. at *7 (internal citations omitted).

22         In *Diaz-Bernal v. Myers*, 758 F.Supp.2d 106 (D. Conn. 2010), illegal aliens who

23 were subjects of an early morning raid by immigration officials brought a *Bivens* action alleging,

24 among other things, that the raid had violated their Fourth Amendment rights.  Defendants argued

25 /////

26 /////

27

that the action was barred by the Immigration and Nationality Act (INA).  The court rejected the

argument:

> [A]lthough the INA contains a comprehensive scheme governing the
> appeal of removal proceedings and the Attorney General's discretionary
> decisions, it does *not* provide a remedial scheme for violations committed
> by immigration officials outside of removal proceedings. . . .  If a *Bivens*
> remedy were precluded, the present plaintiffs would have no forum in
> which to seek a remedy for the defendants' alleged constitutional
> violations.

*Id*. at 128-29 (internal citations omitted; emphasis in original).

The court finds the reasoning of *Grant* and *Diaz-Bernal* persuasive.  The federal

defendants have pointed to no provisions in either the CWA or the APA that would allow

plaintiffs to challenge an official's entry upon the land.  Nor have they explained how such an

entry constitutes a final agency action that could then be pursued in district court.  *See Stewart v.

Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002) (warrantless search is not a personnel action within

CSRA and so does not fall within statutory scheme, so *Bivens* action is available).  In this case,

the warrantless search of plaintiffs' mine is not a final agency action nor part of a cease and desist

letter and so the CWA and APA do not provide an adequate means of redress.[12]

Even though plaintiffs may not have an adequate alternate remedy, this court must

nevertheless consider whether there are "factors counseling hesitation before devising such an

implied right of action."  *Wilkie*, 551 U.S. at 550; *Western Radio Services*, 578 F.3d at 1120.  In

*Wilkie*, the Court ultimately concluded that a *Bivens* remedy was unavailable because of a number

of factors.  One was "a difficulty in defining a workable cause of action," noting that Wilkie's

claimed retaliation did not stem from his protest of government policies, but rather in response to

his refusal to grant an easement to BLM employees.  It continued that the landowner's challenge

was "not that the means the Government used were necessarily illegitimate; rather he says that

defendants simply demanded too much and went too far."  *Id*. at 557.  As such, "the

---

[12]  The federal defendants do not argue that any other federal statutory scheme renders a
*Bivens* action unavailable in these circumstances.

1   impossibility" of fitting his claims into the usual retaliation framework counseled against

2   implying a right of action.  *Id.*  The Court acknowledged that the landowner described a few

3   allegedly illegal actions taken by officials of the Bureau of Land Management and said "[i]f those

4   were the only coercive acts charged" fashioning a remedy might be easier, but said that course of

5   conduct he described went beyond these allegations.  The Court concluded that creating a *Bivens*

6   remedy to redress a number of injuries "collectively on the theory of retaliation for exercising

7   [plaintiff's] property right to exclude, or on a general theory of unjustifiably burdening his rights

8   as a property owner, raises a serious difficulty of devising a workable cause of action. . . ."  *Id.* at

9   562.

10           Unlike *Wilkie*, recognizing plaintiffs' *Bivens* action here does not create an

11  unworkable analytical framework: plaintiffs assert a straightforward Fourth Amendment claim,

12  already recognized by *Bivens* to be redressable in some, if not all, cases raising an implied right of

13  action.  In addition plaintiffs allege that the federal defendants undertook the search as part of a

14  conspiracy with one of plaintiffs' competitors.  This allegedly improper motive also supports a

15  conclusion that a *Bivens* remedy should be available to plaintiffs.  *See Western Radio Services*,

16  578 F.3d at 1125 (legitimacy of motive considered at step two of *Wilkie* analysis).  Plaintiffs'

17  *Bivens* action, based on the Fourth Amendment, may proceed.

18                  3.     Qualified Immunity

19          The federal defendants allege they are entitled to qualified immunity for the Fourth

20  Amendment claim.

21          Government officials performing discretionary functions generally are shielded

22  from liability for civil damages insofar as their conduct does not violate clearly established

23  statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.*

24  *Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune

25  from suit based on the doctrine of qualified immunity, the court generally considers two

26  questions.  The first is, taken in the light most favorable to the party asserting the injury, do the

1   facts alleged show the officer's conduct violated a constitutional right?  *Saucier v. Katz*, 533 U.S.

2   194, 201 (2001).  A negative answer ends the analysis, with qualified immunity protecting

3   defendant from liability.  *Id.*  If a constitutional violation occurred, a court must further inquire

4   "whether the right was clearly established."   "If the law did not put the [defendant] on notice that

5   [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is

6   appropriate."  *Id.* at 202.   The district court may decide the order of addressing these questions

7   and answer only the second, in accordance with fairness and efficiency and in light of the

8   circumstances of a particular case.  *Pearson v Callahan*, 555 U.S. 223, 236 (2009).

9          In *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), the Supreme Court emphasized

10  that "the qualified immunity inquiry must be undertaken in light of the specific context of the

11  case."  *Id.*  Nevertheless, rights may be "clearly established" sufficient to overcome a defendant's

12  claim of qualified immunity if a "general constitutional rule already identified in the decisional

13  law ··· appl[ies] with obvious clarity to the specific conduct in question, even though the very

14  action in question has [not] previously been held unlawful."  *United States v. Lanier*, 520 U.S.

15  259, 271 (1997).  "Precedent directly on point is not necessary to demonstrate that a right is

16  clearly established."  *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001).

17         The federal defendants argue that plaintiffs have not established a Fourth

18  Amendment violation because they have not shown their reasonable expectation of privacy in the

19  mine.  However, as noted in connection with the state defendants' motion to dismiss, the amended

20  complaint sufficiently alleges that plaintiffs leased and had exclusive control over the property

21  and adequately alleges that defendants' actions constituted a search.  Also, as noted above, the

22  federal defendants' reliance on *Donovan v. Dewey*, *supra*, is unavailing.  *See also Marshall v.*

23  *Nolichuckey Sand Co.*, 606 F.2d 693 (9th Cir. 1979) (finding *Donovan* inapplicable to sand and

24  gravel mining).

25         Defendants also argue they could not have known their conduct was unlawful or

26  unreasonable in light of the statutes and regulations permitting warrantless entry upon land in aid

30

1   of enforcement.  For example, they point to 33 C.F.R. § 326.3(a)-(b), but that regulation merely

2   exhorts district engineers to make the best use of resources and encourages them to develop joint

3   surveillance procedures with other federal, state and local agencies; it does not equate

4   surveillance with warrantless entry.  Inspections are permitted by 33 U.S.C. § 1318(a)(B), but are

5   subject to certain conditions: a federal official "shall have a right of entry to, upon, or through any

6   premises in which an effluent source is located . . ." once he presents his credentials and "may at

7   reasonable times . . . inspect any monitoring equipment or method . . . ."

8           With administrative searches, "'actual motivations' do matter," *Ashcroft v.*

9   *Al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074 (2011) (quoting *United States v. Knights*, 534 U.S. 112,

10  122 (2001)), and an otherwise proper search may be invalidated if there is an impermissible

11  secondary motive.  *United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1245 (9th Cir. 1998)

12  (improper secondary purpose of administrative inspection invalidated seizure).  When "the

13  officer's purpose is not to attend to the special needs or to the investigation for which the

14  administrative inspection is justified," it may not be reasonable under the Fourth Amendment.

15  *Al-Kidd*, 131 S.Ct. at 2081.  In this case, plaintiffs allege that the warrantless entry was

16  undertaken as part of their competitors' scheme to drive them out of business.  In *Alexander v.*

17  *City and County of San Francisco*, 29 F.3d 1355, 1361 (9th Cir. 1994), the court said it was clear

18  that "an administrative search may not be converted into an instrument which serves the very

19  different needs of law enforcement officials."  In light of these cases, and the current record, the

20  court cannot find the federal defendants are entitled to qualified immunity.

21  VI.  County Defendants' Motion To Dismiss

22          A.      Allegations In Amended Complaint

23          In the amended complaint, plaintiffs allege that in April 2010, defendant Sherry,

24  the Director of the Sacramento Department of Planning and Community Development, notified

25  Jay Schneider, the property owner, that plaintiffs' mining operation had expanded in violation of

26  zoning requirements.  No notice was given to plaintiffs.  ECF No. 41-1 ¶¶ 21, 81.  Sherry told

31

Schneider he could seek a conditional use permit or cease mining.  *Id*. ¶ 81.  Schneider appealed; neither plaintiffs nor plaintiffs' lawyers were given notice of the date the appeal was set to be heard.  *Id*. ¶ 82.

In September 2010, the Board of Supervisors denied Schneider's appeal and determined that the vested right to mine had been extinguished by improper intensification of the mining activities, although the record did not support the conclusion.  *Id*. ¶ 85.  Plaintiffs did not receive notice of the denial.  *Id*.

Defendant Sacramento County issued a violation notice to Schneider in January 2011, notifying him that he must obtain a permit; plaintiffs were not notified of this action.  *Id*. ¶ 86.  The Board of Supervisors denied a second appeal.  *Id*. ¶ 87.

Defendant Sacramento County then told plaintiffs they could not continue mining during the pendency of an application for a conditional use permit, which process could take six to eight years and may cost millions of dollars.  *Id*. ¶ 88.  The County and Sherry allowed other operations to continue during the permitting process.  *Id*. ¶ 144.

In November 2011, the County approved plaintiffs' revised financial assurance cost estimate in the amount of $165,223.  *Id*. ¶ 89.  In December 2010, however, Sacramento County employee Cindy Storelli gave plaintiffs a Lead Agency Annual Inspection Report that included an increased financial assurance cost estimate of $840,490; this report relied on violations previously found to be baseless.  *Id*. ¶ 91.  In January 2011, defendant Sacramento County employee Leighann Moffitt notified plaintiffs they must provide a financial assurance mechanism in the amount of $830,490 and must stop mining operations until the mechanism was secured.  *Id*. ¶ 89.  Sacramento County has not provided a means by which plaintiffs could appeal the increased financial assurance cost estimate or the cease and desist letter.  *Id*. ¶ 92.  All of the County's actions were undertaken in pursuit of Teichert's scheme.  Plaintiffs assert § 1983 claims against the County defendants, alleging they have violated plaintiffs' rights to due process and equal protection by failing to give plaintiffs notice of the proceedings concerning the mine and by

32

1   refusing to allow them to continue mining while they seek a permit, although other miners have

2   been allowed to do so under equivalent circumstances.  Plaintiffs also argue they have been

3   singled out to pay increased financial assurances although other similarly situated individuals are

4   not required to pay such exorbitant rates, and they have been denied due process by the arbitrary

5   and capricious change in the financial assurance requirements.  *Id*. ¶¶ 153-154.

6           B.      Arguments For Dismissal

7                   The County defendants argue that the County may exercise its police powers to

8   determine whether intensification of the mining operations had extinguished the vested right

9   without violating due process.  They also argue that the action against the County and Sherry is

10  not ripe because there has been no final determination about the intensification of the vested

11  interest and because plaintiffs have not secured a state court ruling on compensation for a taking.

12  Defendants contend that the FAC's allegations, that others have been allowed to continue mining

13  while waiting for the approval of an application for a use permit, do not state a claim because they

14  have not identified any such parties.  Finally, defendants urge there is no due process claim based

15  on the failure to provide any appeal of the increased financial assurance cost estimate because

16  even though the County made the decision, any appeal must be taken to the SMGB.

17                  1.      Ripeness

18                  Under SMARA, "[n]o person who has obtained a vested right to conduct surface

19  mining operations . . . shall be required to secure a permit . . . as long as the vested right continues

20  and as long as no substantial changes are made in the operation . . . ."  CAL. PUB. RES. CODE

21  § 2776; *Calvert*, 145 Cal.App.4th at 617.  Plaintiffs allege they operated the mine without a

22  permit because Sacramento County recognized a vested right to mine and that the County's action

23  deprived them of that right.

24                  As noted above, ripeness "can be characterized as standing on a timeline" and

25  often "coincides squarely with standing's injury in fact prong."  *Thomas*, 220 F.3d at 1138.  In

26  this case, the County defendants determined that the impermissible expansion of the mining

1  operations had extinguished the previously-recognized vested right to mine and suggested that

2  plaintiffs could continue to mine by securing a conditional use permit.  As plaintiffs argue, the

3  injury is not dependent on the County's decision whether to issue a conditional use permit; their

4  previously recognized right to operate without the need for such a permit was extinguished.

5  Because there has been an "actual concrete injury" which has "'already occurred and do[es] not

6  depend on the finality of the County's determination of the permissible uses,'" the claim is ripe.

7  *Carpenteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 830-31 (9th Cir. 2003)

8  (quoting *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990)); *Herrington v. County*

9  *of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988) (equal protection and due process challenges to

10  county actions regarding land use ripe when the plaintiff has received a final decision which

11  inflicts concrete harm).  In addition, because plaintiffs are not raising a takings claim, they do not

12  need to seek compensation through state procedures before bringing suit.  *See Suitum v. Tahoe*

13  *Regional Planning Agency*, 520 U.S. 725, 734 (1997)*; Spoklie v. Montana*, 411 U.S. 1051, 1057

14  (9th Cir. 2005).

15                         2.    Due Process–The Vested Right To Mine

16                         Citing *Hansen Bros. Enterprise v. Board of Supervisors*, 12 Cal. 4th 533 (1996),

17  the County defendants argue the reconsideration of the vested right to mine does not violate due

18  process.  Plaintiffs counter they have properly alleged that their mining operation had not

19  improperly intensified, that they did not receive notice of or a hearing on the revocation, and that

20  their claim is based in part on Teichert's improper involvement.

21                         Plaintiffs do not seriously dispute the proposition that a county may act to

22  extinguish a vested right to mine, but allege the county acted arbitrarily in this case by

23  extinguishing the right when the claimed impermissible expansion was not supported by the

24  record and by undertaking its action as part of Teichert's scheme to drive them out of business.

25                         The Ninth Circuit has recognized that such claims are sufficient to withstand a

26  motion to dismiss.  In *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496,

34

1508 (9th Cir. 1990), the court found a substantive due process claim sufficient to withstand

summary judgment when the landowner presented evidence that the city council denied approval

for a condominium project because of pressure from other landowners to preserve the property as

open space.  Similarly, in *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988), the court found

that the landowner stated a substantive due process claim by alleging he had satisfied all the

requirements for the issuance of a building permit but the city council nevertheless refused to

issue it.  These allegations are sufficient.

   In addition, plaintiffs also allege they did not receive notice of or an opportunity to

participate in the proceedings that led to extinguishment of the right to mine, though they

acknowledge that the property owner was afforded these rights.  Defendants do not argue that

proceedings to extinguish a vested right can be undertaken without due process.  *See., e.g.,*

*Calvert*, 145 Cal. App. 4th at 625-26 (a determination of vested rights is "adjudicatory in nature

and therefore subject to notice and hearing requirements") (internal citation, quotation omitted);

*Bauer v. City of San Diego*, 75 Cal. App. 4th 1281, 1296 (1999) (city violated due process by

terminating grandfathered liquor license without opportunity for hearing).  Instead, defendants

appear to argue that because this notice was properly provided to Schneider, due process has been

satisfied; as they have cited nothing in support of this argument, they have not borne their burden

of showing that plaintiffs will be unable to succeed on their claims.  *See* CAL. PUB. RES. CODE

§§ 2774.1 (a)-(b) (if lead agency determines that a surface mine is not in compliance, it may

"notify the operator" of the violation and may not enforce any order until the operator has been

provided a hearing), 2731 (operator is person engaged in surface mining operations).

### 3.  Due Process–Increased Financial Assurance Cost Estimate

   Plaintiffs allege that defendants Storelli and Moffitt, as well as the County,

arbitrarily and capriciously increased their financial assurance requirement and then told plaintiffs

they could not operate without posting the increased financial assurance mechanism.  They also

allege the County has not provided any appeal procedures for the increased financial assurances.

1    As discussed above, the protections of the due process clause, both substantive and

2  procedural, do not attach to all deprivations or allegedly arbitrary state actions.  Although

3  plaintiffs have alleged that their amendment adding these claims is not futile, they have not

4  addressed why their proposed due process claims have merit except to argue that the deprivations

5  were arbitrary and undertaken without sufficient process.

6    As noted, before plaintiffs may pursue their procedural due process claim, they

7  must answer the following questions:  do they have a protected property interest and, if so, did

8  they receive all the process that was due them?  *Walls*, 653 F.3d at 967-68.  Currently, the

9  protected property interest is only hazily described.  It is unclear if plaintiffs are alleging they

10  have a property right in the determination of the financial assurance cost estimate.  Such a claim

11  does not appear to have merit: California law recognizes that "the amount of financial assurances

12  required of a surface mining operation for any one year shall be adjusted annually to account for

13  new lands disturbed by surface mining operations, inflation, and reclamation of lands in

14  accomplished in accordance with the approved reclamation plan."  CAL. PUB. RES. CODE

15  § 2773.1(a)(3).  As there is no property interest in a fixed financial assurance amount, there is no

16  due process claim.

17    In addition, the court has already recognized that a substantive due process claim

18  cannot be based on anything but a violation of fundamental rights.  *Brittain*, 451 F.3d at 996.

19  Financial assurance amounts do not qualify as fundamental rights.

20                    4.      Equal Protection–Increased Financial Assurance

21    As already discussed, to establish a "class of one" equal protection claim, plaintiffs

22  must show the defendants "(1) intentionally (2) treated [plaintiffs] differently than other similarly

23  situated [mine operators], (3) without a rational basis."  *Gearhart*, 637 F. 3d at 1022.  And as with

24  the previous discussion of equal protection claims, the "class of one" discussion in this portion of

25  the amended complaint is conclusory, alleging only that the defendants "have violated Plaintiffs'

26  rights to equal protection by intentionally and irrationally singling out Plaintiffs to pay increased

36

1  financial assurances, while other similarly situated individuals are not required to pay such

2  exorbitant rates." ECF No. 42-1 ¶ 154. Here, there is a conclusory claim that plaintiffs were

3  treated differently than similarly situated operators of surface mines but no attempt to describe

4  how the recalculated financial assurance cost estimate was determined "irrationally" in light of

5  the statutory command that there be an annual adjustment based on circumstances. Because these

6  deficiencies are not necessarily fatal to the class of one claim, the court cannot say plaintiffs will

7  be unable to amend this portion of the complaint against Moffitt and Storelli.

8  VII.  New Allegations Against Taras

9        In the FAC, plaintiffs allege that defendant Taras, an employee of the Central

10 Valley Flood Protection Board, inspected a portion of the mine alongside the Cosumnes River in

11 May 2009 and then sent plaintiffs a cease and desist letter. *Id.* ¶¶ 75-76. Plaintiffs allege this

12 action has deprived them of substantive and procedural due process, as they were not afforded an

13 opportunity to challenge the order. *Id*. ¶¶ 135-136. Nothing before the court suggests this portion

14 of the FAC cannot be included in a further amended pleading.

15 VIII.  Motion for Sanctions (ECF No. 38)

16        SMAQD has moved for sanctions, alleging that the claims against it were brought

17 in bad faith. Although the court has found plaintiffs' case should be stayed, the court does not

18 find therefore that plaintiffs' complaint was brought in bad faith.

19        IT IS THEREFORE ORDERED that:

20        1. Plaintiffs' motion to file an amended complaint is granted, but the first

21 amended complaint is dismissed as discussed in the body of the order; plaintiffs' second amended

22 complaint, prepared in light of the discussion set forth above in this order, is due within twenty-

23 one days of the date of this order;

24        2. The SMAQD defendants' motion to dismiss or stay is granted and the case is

25 stayed upon the filing of the second amended complaint;

26 /////

3.  The state defendants' motion to dismiss is granted in part and denied in part as stated in the body of this order;

4.  The federal defendants' motion to dismiss is granted in part and denied in part as stated in the body of this order;

5.  The county defendants' motion to dismiss is granted in part and denied in part, as stated in the body of this order; and

6.  The SMAQD defendants' motion for sanctions is denied.

DATED:  March 29, 2012.

_____
UNITED STATES DISTRICT JUDGE