1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH HARDESTY, et al.,

12              Plaintiffs,              Civ. No. S-10-2414 KJM JFM
             vs.
13                                        ORDER
     SACRAMENTO METROPOLITAN AIR
14   QUALITY MANAGEMENT DISTRICT,
     et al.,
15              Defendants.
16   _____/

17              Plaintiffs Joseph and Yvette Hardesty operate Hardesty Sand and Gravel (HSG) at

18   the Schneider Family Mine in Sacramento County.  They allege that federal, state and county

19   agencies, , prompted by a politically influential competitor, have undertaken a number of actions

20   designed to drive HSG out of business.  The following defendants have moved to dismiss the

21   Second Amended Complaint (SAC):  Sacramento County and Robert Sherry (County

22   defendants); Dennis O'Bryant, Gay Norris, Steve Testa, Bret Koehler, and Curt Taras of the

23   Central Valley Flood Protection Board (State defendants); Liz Gregory (Gregory); and Cindy

24   Storelli and Leighann Moffitt (Storelli and Moffitt).  The court heard argument on the motions

25   on  October 26, 2012.  George Robertson and Laura Sutton, Robertson, Johnson, Miller &

26   Williamson, appeared for plaintiffs; Joseph Rusconi, Deputy Attorney General, appeared for

1    defendants O'Bryant, Norris, Testa, Koehler, and Taras; Jeffrey Reusch, Deputy Attorney

2    General, appeared for defendant Gregory, and Mark O'Dea, Longyear, O'Dea & Lavra, LLP,

3    appeared for defendants Sacramento County, Sherry, Storelli and Moffitt.  The court heard

4    argument on these motions on October 26, 2012.  After considering the parties' arguments, the

5    court GRANTS defendant Koehler's motion to dismiss but DENIES the other motions.

6            Defendants Sacramento Metropolitan Air Quality Management District and David

7    Grose (SMAQMD defendants) also filed a motion to dismiss, which was heard on January 18,

8    2013.  Kimon Manolius, Hanson Bridgett LLP, and Katherine Pittard, District Counsel, appeared

9    for defendants; Jonathan Tew, Robertson, Johnson, Miller & Williamson, appeared for plaintiffs.

10   After considering the parties' arguments, the court GRANTS the SMAQMD defendants' motion

11   to dismiss.

12   I.  Procedural Background

13           On September 8, 2010, plaintiffs filed their original complaint, containing seven

14   claims: (1) a violation of the Clean Air Act (CAA) against the SMAQMD defendants,

15   Sacramento County, and James Goldstene; (2) a civil rights claim, alleging violations of the

16   Fourteenth Amendment and Supremacy Clause against the SMAQMD defendants, Sacramento

17   County and James Goldstene; (3) a civil rights claim alleging violations of the Fifth and

18   Fourteenth Amendments against the Office of Mine Reclamation (OMR), Norris and O'Bryant;

19   (4) a civil rights claim alleging due process violations against the California State Mining and

20   Geology Board (SMGB) and Testa; (5) a *Bivens* claim alleging violations of the Fourth and Fifth

21   Amendments against Simmons; (6) a civil rights claim alleging a Fourth Amendment violation

22   against Gregory and the Department of Fish and Game (DFG); and (7) a civil rights claim

23   alleging violations of the Fifth and Fourteenth Amendments against the County defendants.

24   (ECF No. 2.)

25           While the defendants' motions to dismiss the complaint were pending, plaintiffs

26   filed a motion seeking permission to file an amended complaint.  The proposed amended

complaint dropped as defendants the State of California, DFG, SMGB, OMR and Goldstene.  It sought to add as defendants Cindy Storelli, in her official and individual capacity as a senior planner for Sacramento County; Leighann Moffitt in her official and individual capacity as Interim Planning Manager for Sacramento County; Bret Koehler in his official and individual capacity as Senior Engineering Geologist of the OMR; Michael Jewell; and Curt Taras in his individual and official capacity as Chief of the Encroachment Control and Land Use Section of the Central Valley Flood Protection Board.  This complaint also contained seven claims: (1) a civil rights claim, alleging violations of the Due Process, Equal Protection and Supremacy Clauses against the SMAQMD defendants; (2) a civil rights claim, alleging a due process violation against defendants Koehler, Norris, Testa and O'Bryant; (3) a *Bivens* claim based on a due process violation against defendants Jewell and Simmons and on the Fourth Amendment against Simmons; (4) a civil rights claim, based on the Fourth Amendment, against defendant Gregory; (5) a civil rights claim, alleging a due process violation against defendant Taras; (6) a civil rights claim, based on due process and equal protection violations against Sacramento County and defendant Sherry; and (7) a civil rights claim, alleging a due process and equal protection violation against the County and defendants Storelli and Moffitt.  (ECF No. 42-1 (FAC).)  The court considered this complaint in ruling on the earlier motions to dismiss to the extent that it contained claims substantially similar to the original complaint, as the First Amended Complaint provided some guidance on whether amendment was appropriate.  (Order, ECF No. 69 at 5.)  Because the First Amended Complaint omitted plaintiffs' claims under the CAA, the court deemed them waived and granted the motion to dismiss as to those claims.  In addition, it granted the SMAQD defendants' motion to stay and granted the other defendants' motions in part and denied them in part.  (*Id*. at 37-38.)

Plaintiffs have now filed their Second Amended Complaint, which contains nine claims: (1) a civil rights claim alleging Fourteenth Amendment due process and "class of one" equal protection violations, as well as Supremacy Clause violations against the SMAQMD

defendants; (2) a civil rights claim alleging a Fourteenth Amendment "class of one" equal

protection claim against the State defendants (3) a *Bivens* action alleging a Fourth Amendment

violation against Zachary Simmons[1]; (4) a civil rights claim alleging a violation of the Fourth

Amendment against Liz Gregory; (5) a civil rights claim alleging violations of the Fourteenth

Amendment rights to substantive and procedural due process against Curt Taras; (6) a civil rights

claim alleging Fourteenth Amendment "class of one" equal protection and due process violations

against the County defendants; (7) a civil rights action alleging an equal protection violation

against Storelli and Moffitt; (8) a claim under the Administrative Procedures Act (APA) against

the Army Corps of Engineers (ACE), and (9) a civil rights claim alleging a Fourteenth

Amendment substantive due process claim against all defendants except ACE.  (ECF No. 74

(SAC).)

Several of the state defendants argue that any claims for damages brought against

them in their official capacities are barred by the Eleventh Amendment.  *(See* ECF No. 89 at 18.)

Plaintiffs respond that they are proceeding on damages claims against these defendants in their

individual capacities only and confirmed this at argument.  *(See, e.g.,* ECF 107 at 11.)  These

portions of the motions to dismiss are denied as moot.

Defendants Taras and Koehler also argued in their brief that California's anti-

SLAPP procedure, CAL. CODE CIV. PROC. § 425.16, applied to the claims against them, but at

hearing withdrew this argument.

Finally, at argument counsel for defendants O'Bryant, Norris, Testa, Sherry,

Storelli and Moffitt argued that their clients are entitled to qualified immunity.  The court

declines to consider this argument, raised for the first time at hearing.  *Amini v. Bank of America*

*Corp.*, No. C11–0974 RSL, 2012 WL 398636, at *7 (W.D. Wash. Feb. 7, 2012) ("Arguments

/////

---

[1]  This defendant has not filed a motion to dismiss.

1  raised for the first time at oral argument are generally not considered because the opposing party

2  is deprived of its opportunity to evaluate the merits of the new argument before responding.").

3  II.  <u>Standards For A Motion To Dismiss</u>

4          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

5  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

6  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

7  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

8  1990).

9          Although a complaint need contain only "a short and plain statement of the claim

10  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

11  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

12  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

13  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include

14  something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or

15  "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.*

16  (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to

17  dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to

18  draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses

19  on the interplay between the factual allegations of the complaint and the dispositive issues of law

20  in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

21          In making this context-specific evaluation, this court must construe the complaint

22  in the light most favorable to the plaintiff and accept as true the factual allegations of the

23  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

24  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

25  (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

26  to judicial notice" or to material attached to or incorporated by reference into the complaint.

1   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

2   consideration of documents attached to a complaint or incorporated by reference or matter of

3   judicial notice will not convert a motion to dismiss into a motion for summary judgment.

4   *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*,

5   51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

6   977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

7   dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

8   III.   The Second Amended Complaint

9           Plaintiffs own HSG, a sand and gravel operation, which has leased the Schneider

10  Family Mine since the early 1980s and is authorized by contract to mine and process aggregate

11  material.  (ECF No. 74 ¶¶ 28, 31.)  In 1994, Sacramento County confirmed Schneider's vested

12  right to mine without the future need for surface mining and/or conditional use permits under

13  California's Surface Mining and Reclamation Act (SMARA).  (ECF No. 74 ¶¶ 29-30.)  In 2002,

14  Sacramento County approved HSG's reclamation plan and in 2008 county representatives

15  inspected the mine, concluding that HSG was operating in accordance with SMARA

16  requirements and the reclamation plan.  (ECF No. 74 ¶ 31.(

17          Plaintiffs allege that in March 2007, employees of Teichert Company (Teichert),

18  one of HSG's competitors, began to contact state and federal agencies, complaining that HSG

19  was undercutting Teichert's sales by offering "very cheaply priced product" and asking the

20  agencies to coordinate efforts to regulate HSG, which would drive up its prices.  (ECF No. 74

21  ¶ 33 & Ex. F.)  Teichert also sought the assistance of state Senator Dave Cox and Congressman

22  Dan Lungren.  (ECF No. 74 ¶ 34.)

23  /////

24  /////

25  /////

26  /////

6

1    In early 2008, defendant Simmons of ACE began to organize a coordinated

2 investigation of HSG.  (ECF No. 74 ¶ 35.[2])  Michael Jewell of ACE sent plaintiffs a cease and

3 desist order on June 2, 2008, and provided copies of the order to a number of other agencies.

4 (ECF No. 74 ¶ 39.)

5    In September 2008, Simmons contacted Liz Gregory at DFG to discuss an

6 inspection of the mine.  Thereafter Simmons and Gregory entered the mine, without a warrant,

7 and inspected a dam on the southernmost creek, the processing facility, and the creek along the

8 northeast side of the processing facility.  (ECF No. 74 ¶ 41.)

9    In October 2008, Senator Cox sent a letter to the Secretary of the California

10 Resources Agency (CRA), asking CRA to coordinate a review of HSG's operation by the

11 Department of Conservation (DOC), the SMGB and the DFG; he asked specifically whether

12 HSG could be excluded from the list of aggregate vendors approved to sell to state agencies, the

13 so-called AB 3098[2] list.  (ECF No. 74 ¶¶ 45, 48.)

14    In November 2008, CRA's secretary reported to Senator Cox that the CRA had

15 initiated a coordinated review of HSG.  (ECF No. 74 ¶ 46.)

16    Kris Vyverberg, a Senior Geologist from DFG, began to work with Koehler,

17 Norris and O'Bryant, all employees of OMR, to investigate how to close HSG.  (ECF No. 74

18 ¶ 50.)  As part of this plan, Vyverberg explained to Norris and O'Bryant that if they found

19 substantial deviations from the reclamation plan, those deviations could be used to shut HSG

20 down.  (ECF No. 74 ¶ 52.)  In November 2008, Norris warned contractors that OMR would sue

21 them if they purchased aggregate from HSG but did not stop truckers who were purchasing

22 /////

23

24    [2]  As the federal defendants have not filed a motion to dismiss, the court omits those portions of the complaint relating solely to them.

25    [2]  Assembly Bill 3098, passed in 1992, prohibited state purchase of minerals from a mine

26 without a reclamation plan and financial assurances.  1992 Cal. Legis. Serv. Ch. 1077 (A.B. 3098).

1   aggregate from other mines also not on the AB 3098 list, including Horseshoe Mine.  (ECF No.

2   74 ¶¶ 64-65.)

3          Although officials from DFG had found no violations at HSG, Koehler, O'Bryant

4   and Norris continued to investigate HSG.  (ECF No. 74 ¶ 50.)  These three defendants visited

5   HSG on December 23, 2008 and in February 2009 Koehler completed an inspection report that

6   identified alleged violations of SMARA and other statutory requirements.  (ECF No. 74 ¶ 55.)

7          In February 2009, OMR put HSG on the AB 3098 list, but O'Bryant removed it

8   six weeks later on the basis of Koehler's report.  (ECF No. 74 ¶¶ 45, 56.)  Defendants did not

9   remove other similarly situated mining operators from the AB 3098 list despite those operators'

10  violations, similar to those attributed to HSG.  (ECF No. 74 ¶ 59.)  In response to an inquiry

11  from HSG's counsel, Testa and O'Bryant told plaintiffs there was no mechanism for appealing

12  their removal from the list.  (ECF No. 74 ¶¶ 62-63.)

13         Nevertheless, in February, Simmons reported to Congressman Lungren's office

14  that HSG's operations did not impact as many navigable waters as did operations by the

15  companies that had complained about HSG.  (ECF No. 74 ¶ 47 & Ex. I.[3])

16         In April 2009, SMAQMD, acting as part of the competitors' campaign, issued a

17  petition alleging that HSG was operating equipment in violation of SMAQMD Rule 201, even

18  though SMAQMD does not have the authority to regulate the equipment it targeted in light of

19  state and federal regulations.  In addition, SMAQMD relied on an improper underground

20  regulation.  (ECF No. 74 ¶¶ 67-75.)  At the abatement hearing held on this notice, Grose

21  presented SMAQMD's positions despite their conflict with state and federal law and with the

22  testimony of the CARB representative.  (ECF No. 74 ¶ 73.)  The CARB representative also

23  explained that nonroad engines travelling only 25 to 30 feet are not considered to be at a single

24  site if there is a legitimate purpose for the movement.  (ECF No. 74 ¶ 74.)  After the hearing,

25  _____

26       [3] The Second Amended Complaint does not identify any companies that complained
    about HSG other than Teichert.

SMAQMD ordered plaintiffs to cease and desist operations pending compliance with Rule 201. (ECF No. 74 ¶¶ 76-77.

In May 2009, defendant Taras inspected a portion of the mine along the Cosumnes River on behalf of the Central Valley Flood Protection Board (CVFPB) and later issued an order directing HSG to cease and desist all work regulated by the California Water Code. (ECF No. 74 ¶¶ 85-86.)

While plaintiffs were challenging the SMAQMD decision by pursuing a writ of mandate in the Superior Court, SMAQMD asked the California Air Resources Board (CARB) to declare HSG's registered portable equipment to be considered stationary when used at the mine. (ECF No. 74 ¶ 78.) In February 2010, Goldstene determined that some of plaintiffs' equipment was not eligible for PERP registration. (ECF No. 74 ¶ 78.) On appeal, a hearing officer upheld most of Goldstene's determinations, as did the Superior Court. (ECF No. 74 ¶¶ 79-80.) Plaintiffs thereafter applied for permits, but defendant Grose denied them in an overbroad application of the SMAQMD Board's ruling and directed HSG to cease and desist operations. (ECF No. 74 ¶¶ 82-84.)

In 2010, Congressman Lungren's office contacted Teichert, ACE, DFG and the U.S. Fish and Wildlife Service (FWS) about resuming the investigation of HSG. (ECF No. 74 ¶ 87 & Ex. K.) As a result, defendant Jewell of the ACE sent another cease and desist letter to HSG. (ECF No. 74 ¶¶ 88-89.)

Around the same time, defendant Sherry sent a notice to Schneider, the owner of the mine, informing him that the mining operation had expanded in violation of zoning requirements. (ECF No. 74 ¶ 91.) Schneider appealed, citing his vested right to mine. (ECF No. 74 ¶ 92.) The Board of Supervisors rejected Schneider's appeal. (ECF No. 74 ¶ 95.) Thereafter, OMR notified Sacramento County that it must take action to correct violations at the mine; Schneider's appeal of this notice was denied in May 2011. (ECF No. 74 ¶¶ 96-97.) Plaintiffs were not given notice of any of these proceedings. (ECF No. 74 ¶¶ 92, 96.)

1    After the Superior Court upheld SMAQMD's abatement order, plaintiffs applied

2  for a permit.  Defendant Grose initially denied the permit, but then rescinded the denial.  He did

3  not rescind the cease and desist order, which informed plaintiffs that any type of operation at

4  their facility would violate regulations and the abatement order.  (ECF No. 74 ¶¶ 82-83.)

5    On November 17, 2010, Sacramento County approved plaintiffs' Financial

6  Assurance Cost Estimate (FACE) in the amount of $164,223, but in December 2010, Storelli told

7  plaintiffs their FACE should be increased to $830,490.  (ECF No. 74 ¶ 101.)  In addition, in

8  January 2011, Moffitt sent plaintiffs a letter demanding a valid Financial Assurance Mechanism

9  (FAM) in the amount of $830,490 and directed them to cease operations until the FAM was in

10  place.  (ECF No. 74 ¶¶ 99, 102.)  Plaintiffs' competitors have been allowed to continue

11  operations even though their FAMs were below required amounts.  (ECF No. 74 ¶ 106.)

12  IV. State Defendants' Motion To Dismiss (ECF No. 88)

13    Defendants O'Bryant, Norris, Testa, Koehler and Taras move to dismiss under

14  Rule 12(b)(6) and to strike under California's Anti-SLAPP provisions, arguing that the statute of

15  limitations bars the civil rights actions against Taras and Koehler; that the court's prior order

16  rejected plaintiffs' allegations against Norris based on her telling contractors not to purchase

17  plaintiffs' aggregate; that the "class of one" equal protection and substantive due process claims

18  are not adequately pleaded; and that the allegations against Taras and Koehler should be stricken

19  because this is a strategic lawsuit against public participation in violation of California Code of

20  Civil Procedure § 425.16.  They ask the court to take judicial notice of a number of documents

21  and also have submitted declarations from Taras and Koehler.  (ECF Nos. 90-92.)  Plaintiffs

22  object to the court's consideration of this evidence and oppose the request for judicial notice.

23    A. Judicial Notice

24    The state defendants ask the court to take judicial notice of the following: the

25  court's prior order ruling on the first round of motions to dismiss; Taras's May 28, 2009 letter to

26  plaintiffs; a mine inspection report dated February 23, 2009; portions of the California Code of

1  Regulations; the absence of records regarding a Horseshoe Mine; and the absence of any records

2  showing that plaintiffs appealed the county's determination about plaintiffs' financial assurance,

3  reclamation plan or substantial deviation from the vested rights.  In addition, defendants have

4  presented declarations from Taras and Koehler, describing their interactions with plaintiffs.

5  (ECF Nos. 91 (Taras Declaration) & 92 (Koehler Declaration).)  Koehler also avers that he

6  searched OMR's records and could not find any permit applications or other records relating to

7  any mine with the name "Horseshoe Mine."  (ECF No. 92 ¶¶ 7-8.)  Plaintiffs object to that

8  portion of Koehler's declaration concerning his fruitless attempts to identify the Horseshoe

9  Mine.  (ECF No. 111 at 13.)

10           The court need not take judicial notice of its prior order in this case.  It does take

11  judicial notice of the administrative regulations offered by the state defendants.  *DCIPA, LLC v.*

12  *Lucile Slater Packard Children's Hosp*., 868 F. Supp. 2d 1042, 1048 (D. Or. 2011) (taking

13  judicial notice of administrative rules).  It also takes notice of the existence of Koehler's mine

14  inspection report and Taras's letter, mentioned in the Second Amended Complaint, but not the

15  truth of the findings in those documents.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)

16  (stating that on a motion to dismiss district court may consider documents the contents of which

17  are mentioned in the complaint when the authenticity is not questioned); *Coalition for a*

18  *Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal.

19  2011).  It does not take judicial notice of the absence of records regarding the Horseshoe Mine or

20  any of the other facts contained in the two declarations.  *See Stamas v. County of Madera*, 795 F.

21  Supp. 2d 1047, 1060 (E.D. Cal. 2011) (taking judicial notice that declarations were filed in other

22  litigation but declining to take judicial notice of the factual averments in the declarations).

23           B.  The Statute of Limitations

24           A party may raise a statute of limitations argument in a motion to dismiss if it is

25  apparent from the face of the complaint that the complaint was not timely filed and that plaintiff

26  will be unable to prove facts that will establish the timeliness of the claim.  *Von Saher v. Norton*

1  *Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 3055 (2011);

2  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).  Civil rights actions

3  brought under section 1983 are governed by the statute of limitations for personal injury actions

4  of the forum state.  *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985); *Jones v. Blanas*, 393 F.3d

5  918, 927 (9th Cir. 2004). California law provides for a two year statute of limitations for

6  personal injury, applicable to civil rights claims brought under section 1983.  CAL. CIV. PROC.

7  CODE § 335.1.

8          According to the Second Amended Complaint, Koehler inspected the mine in

9  December 2008 and dated his report of that inspection on February 27, 2009, while Taras

10 inspected the mine on May 14, 2009 and sent plaintiffs a cease and desist letter on May 28,

11 2009.  (ECF No. 74 ¶¶ 53, 55, 85-86; ECF No. 91 ¶¶ 4, 6; ECF No. 92 4-5.)  The Second

12 Amended Complaint was filed on May 10, 2012, long after the statute of limitations had expired,

13 whether the court considers the date of the inspection or the report as the beginning of the

14 limitations period.

15          Plaintiffs argue that the claims against Taras were included in the proposed First

16 Amended Complaint, which was filed on May 11, 2011, and that therefore they are timely.  In

17 *Mayes v. AT&T Information Systems*, 867 F.2d 1172, 1173 (8th Cir.1989), the court held that a

18 claim is timely if it is included in a motion for leave to file an amended complaint filed before

19 the expiration of the statute of limitations.  *See also Wells Fargo Bank, N.A. v. Renz*,

20 No. C 08-02561-SBA, 2011 WL 97649, at *8 (N.D. Cal. Jan. 12, 2011).  In the absence of Ninth

21 Circuit guidance on the question, this court finds *Mayes* persuasive; the claims against Taras

22 included in the proposed First Amended Complaint are timely.

23 /////

24 /////

25 /////

26 /////

1          Plaintiffs' claims against Koehler are pleaded only in the Second Amended

2   Complaint and so are not timely unless they relate back to the original complaint.  The Federal

3   Rules of Civil Procedure provide:

4          (1) **When an Amendment Relates Back.**  An amendment to a
          pleading relates back to the date of the original pleading when:

5

6               (A) the law that provides the applicable statute of
               limitations allows relation back;

7               (B) the amendment asserts a claim or defense that
               arose out of the conduct, transaction, or occurrence

8               set out--or attempted to be set out--in the original
               pleading; or

9

10              (C) the amendment changes the party or the naming
              of the party against whom a claim is asserted, if
              Rule 15(c)(1)(B) is satisfied and if, within the

11             period provided by Rule 4(m) for serving the
              summons and complaint, the party to be brought in

12             by amendment:

13                   (i) received such notice of the action
                   that it will not be prejudiced in

14                   defending on the merits; and

15                   (ii) knew or should have known that
                   the action would have been brought

16                   against it, but for a mistake
                   concerning the proper party's

17                   identity.

18   FED. R. C IV. P. 15(c).

19          Defendants argue that California's relation-back rules govern and under those

20   rules, the claim against Koehler does not relate back to the original complaint.  Plaintiff relies on

21   the federal rules regarding relation back as recently explained by the U.S. Supreme Court in

22   *Krupski v. Costa Crociere S.p.A.*, ___ U.S. ___, 130 S.Ct. 2485 (2010), to argue that the claim is

23   timely.  Neither the California nor the federal rules regarding relation back render the claim

24   against Koehler timely.

25          Defendant is correct that in *Anderson v. Allstate Ins. Co.*, 630 F.2d 677 (9th Cir.

26   1980), the Ninth Circuit looked to California's process for substituting fictitious (Doe)

defendants under state Code of Procedure § 474 in determining whether the addition of a

defendant was timely.  *See also Kubal v. Discount Tire.Com*, No. 12-CV-1398 IEG (BGS), 2012

WL 3648607, at *1 (S.D. Cal. 2012).  Under that provision, the substitution of a named party for

a Doe defendant is deemed to relate back to the original complaint so long as the plaintiff was

"genuinely ignorant" of the newly added defendant's identity.  *Woo v. Superior Court*,

75 Cal. App. 4th 169, 177 (1999).  Plaintiffs' allegations in the Second Amended Complaint, that

Koehler inspected the mine in 2008 and wrote a report of that inspection in 2009, show they

were aware of him at the time they filed the original complaint, which refers to both the

inspection and the report.  (ECF No. 2 ¶¶ 36-37.)

        *Anderson* was decided under a prior version of Federal Rule of Civil Procedure

15, a version that did not include the current provision permitting reliance on state law.  One

district judge has written that the Ninth Circuit's decisions adopting California's procedure

"effectively anticipat[ed] certain provisions of the 1991 (to the Federal Rules of Civil Procedure)

Amendment, namely, that in some circumstances a Plaintiff may be entitled to the benefit of

state law relation back rules if those are more generous than Rule 15(c)."  *Philips v. Multnomah

Cnty.*, Civ. No. 05-105-CL, 2007 WL 915173, at *5 (D. Or. Mar. 23, 2007).  As the court in

*Philips* recognized, *Anderson* does not impose a rigid rule requiring this court to look only to

state law in deciding the relation back question, but rather allows it to rely on state law if it is

more favorable.  Because in this case the state procedure is not "more generous," the court looks

to Rule 15.

        In *Costa Crociere*, the Supreme Court considered the relation back provisions of

Federal Rule 15(c): "The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or

should have known that it would have been named as a defendant but for an error.  Rule

15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule

4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original

complaint." *Krupski v. Costa Crociere*, 130 S. Ct. at 2493.  The Court continued that "[r]epose

1   would be a windfall for a prospective defendant who understood, or who should have

2   understood, that he escaped suit during the limitations period only because the plaintiff

3   misunderstood a crucial fact about his identity." *Id.* at 2494.

4      The Seventh Circuit has distilled *Costa Crociere's* requirements as follows:

5       The two inquiries that the district court is permitted to make in
    deciding whether an amended complaint relates back to the date

6       of the original one are, first, whether the defendant who is sought to
    be added knew or should have known that plaintiff, had it not been

7       for a mistake, would have sued him instead of or in addition to
    suing the named defendant; and second, whether, even if so, the

8       delay in plaintiff's discovering his mistake impaired the new
    defendants' ability to defend himself.

9

10  *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011).  Other

11  post-*Costa Crociere* cases recognize that a plaintiff's deliberate choice not to sue a party

12  involved in the events at issue in the complaint is not a mistake.  *Briese v. State of Montana*, No.

13  CV-09-146 BLG-RFC-CSO, 2010 WL 5677921, at *10 (D. Mont. July 16, 2010),

14  *recommendation adopted by* 2011 WL 338399 (D. Mont. Jan. 31, 2011); *Asten v. City of*

15  *Boulder*, Civil Action No. 08-cv-00845 PAB MEH, 2010 WL 5464298, at *6 (D. Colo. Sep. 28,

16  2010), *recommendation adopted by* 2010 WL 5464297 (D. Colo. Dec. 29, 2010).  In this case,

17  the first amended complaint identifies the December 2008 inspection and the February 2009

18  report, listing the report's many errors.  (ECF No. 2 ¶¶ 36-38.)  Had Koehler been aware of the

19  complaint within the time for service, he would have believed that plaintiffs made a conscious

20  choice not to sue him, not that their mistake caused his omission from the complaint.  The

21  Second Amended Complaint as to Koehler is not timely.

22     C.  <u>Substantive Due Process Claim</u>

23     In the order resolving the earlier motions to dismiss, this court found that Norris's

24  alleged acts in threatening truck drivers with adverse action if they bought aggregate from HSG

25  did not state a substantive due process claim and dismissed without leave to amend.  Norris

26  /////

15

1   argues that plaintiffs have improperly included these allegations in the Second Amended

2   Complaint.

3          Plaintiffs argue they have included these allegations only to illustrate Norris's

4   part in the "coordinated . . . attacks" in the attempt to drive plaintiffs out of business.  (ECF No.

5   74 ¶ 199.)  The allegations concerning the AB 3098 list are not pleaded as a free-standing due

6   process claim, but as part of the overall substantive due process claim, based on the allegations

7   that defendants worked together to drive plaintiffs out of business.  (ECF No. 74 ¶¶ 192-203.)

8          Defendants reply more broadly that plaintiffs have not pleaded a substantive due

9   process violation because they do not have a protected property interest in unregulated surface

10  mining or in practicing the mining profession.

11         The Due Process Clause of the Fourteenth Amendment forbids the state from

12  depriving a person of property without due process of law.  *Carver v. Lehman*, 558 F.3d 869,

13  872 (9th Cir. 2009).  There are two steps in the analysis of a due process claim: the court must

14  determine whether plaintiffs have a protected property interest and, if so, whether they received

15  all the process due to them.  *Walls v. Central Contra Costa Transit Authority*, 653 F.3d 963,

16  967-68 (9th Cir. 2011).  Property interests are created by state law, but not every state statutory

17  right thereby becomes a constitutional entitlement.  *Paul v. Davis*, 424 U.S. 693, 700 (1976);

18  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Vruno v. Schwarzwalder*, 600 F.2d 124, 131

19  (8th Cir. 1979) ("The due process clause does not convert every state statutory right into a

20  constitutional entitlement . . . .").  Instead, "federal constitutional law determines whether that

21  interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process

22  Clause."  *San Bernardino Physicians' Services Med. Grp. v. County of San Bernardino*, 825 F.2d

23  1404, 1408-09 (9th Cir. 1987) (quoting *Memphis Light, Gas & Water Div. Craft*, 436 U.S. 1, 9

24  (1978) (quoting *Roth*, 408 U.S. at 577)).

25         Plaintiffs allege they are operating under a vested right to mine and also assert

26  their liberty interest in pursuing their profession.  Defendants do not seriously dispute the

16

1   argument that a vested right to mine would be an adequate property interest, but they argue that

2   plaintiffs' failure to comply with SMARA undercuts any claim because plaintiffs "have no

3   recognized constitutional right to mine free from regulation." (ECF No. 89 at 26.[4])

4          Under SMARA, every surface mining operation must have a permit or have a

5   vested right to conduct surface mining, a reclamation plan, and financial assurances to

6   implement the reclamation.  CAL. PUB. RES. CODE § 2710 *et seq.*; *Calvert v. County of Yuba*,

7   145 Cal. App. 4th 613, 617 (2006).  Defendants argue that plaintiffs do not have any rights under

8   SMARA because they have neither approved financial assurances nor a reclamation plan.  This

9   argument presupposes the truth of defendants' claims that plaintiffs' reclamation plan and

10  financial assurances were properly found to be inadequate and that, as a result, plaintiffs could

11  not operate the mine despite any vested interests.  On a motion to dismiss, however, the court

12  must accept plaintiffs' allegations as true.  Plaintiffs' version of events is that they "fulfilled all

13  their obligations under SMARA by operating under a vested right to mine the Property,

14  submitting Reclamation Plans as required, by submitting Financial Assurance Cost Estimates

15  and by posting Financial Assurances," but defendants improperly rejected plaintiffs' attempts to

16  comply with the SMARA.  (ECF No. 74 ¶ 165.)  Plaintiffs' theory is that they have complied

17  with all the statutory prerequisites to continue mining but that defendants have arbitrarily and

18  capriciously rejected their legitimate statutory compliance and thereby have denied them the

19  right to mine and to pursue their profession.  At this point in the proceedings, the court must

20  accept these claims as true and so determines that they state a claim of a substantive due process

21

22          [4] In reply, defendants argue the vested right to mine belongs to Schneider, the property
    owner, not to plaintiffs.  (ECF No. 115 at 7.)  They argue that plaintiffs "have supplied no
23  authority for the proposition that they can assert a protected property interest that belongs to
    another."  *(Id.)*  However, plaintiffs allege that they operate the mine "under a . . . vested right to
24  mine."  (ECF No. 74 ¶ 4.)  Defendants have presented nothing suggesting that the vested right to
    mine cannot be asserted by a leaseholder or through other arrangements.  *See Termo Co. v.*
25  *Luther*, 169 Cal. App. 4th 394, 408 n.6 (2008) (declining to consider whether entity that did not
    own oil wells that were ordered closed could assert the fundamental vested right to operate the
26  wells).

1   violation. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.

2   1990); *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir. 1989); *Nicholson v. County of*

3   *Stanislaus*, No. CV F 09–01941 AWI SMS, 2010 WL 923729, at *5 (E.D. Cal. Mar. 12, 2010)

4   *Eaton v. Siemens*, No. Civ. S-07-315 FCD KJM, 2008 WL 4347735, at *5 (E.D. Cal. 2008).

5        D.   Equal Protection–Class Of One

6        Defendants challenge the adequacy of plaintiffs' class of one challenge.

7   In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Supreme Court recognized as

8   viable "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she

9   had intentionally been treated differently from others similarly situated and that there is no

10  rational basis for the difference in treatment."  To make a "class of one" equal protection

11  claim plaintiff must meet three elements: the defendants "(1) intentionally (2) treated [plaintiffs]

12  differently than other similarly situated [mine operators], (3) without a rational basis." *Gearhart*

13  *v. Lake County, Mont.*, 637 F. 3d 1013, 1022 (9th Cir.), *cert denied,* ___ U.S. ___, 132 S. Ct. 249

14  (2011).  "[A]s to the different treatment element, a plaintiff must demonstrate that the 'level of

15  similarity between plaintiff and the persons with whom they compare themselves [is] extremely

16  high.'"  *Hamer v. El Dorado County*, No. CIV S-08-2669 KJM EFB PS, 2011 WL 794895, at

17  *12 (E.D. Cal. Mar. 1, 2011) (quoting *Wilson v. City of Fresno*, No. CV F 09-0887 LJO SMS,

18  2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009)).  As to the basis of the treatment, the pleading

19  requirement may be satisfied by "the pattern and nature of defendants' alleged conduct," which

20  can "do the work of demonstrating the [defendants'] improper discriminatory purpose."

21  *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012).

22       The court rejects defendants argument that plaintiffs' claim is too conclusorily

23  pleaded to survive a motion to dismiss.  Plaintiffs allege that the defendants "have allowed other

24  similarly-situated mining operators, including Lehigh Southwest Cement Company, to remain on

25  the AB 3098 list despite mining violations virtually identical to those alleged against plaintiffs,"

26  and did not warn contractors not to purchase aggregate from other mines not on the AB 3098 list,

18

1   including the Horseshoe Mine.  (ECF No. 74 ¶¶ 121-123.)  *See Ziss Bros. Constr. Co. v. City of*

2   *Independence*, Case No. 1: 07 CV 3767, 2008 U.S. Dist. Lexis 104606, at17 (N.D. Ohio Sep. 30,

3   2008).  At this stage of the litigation, plaintiffs have pleaded adequately that a comparator who

4   was alleged to have committed the same mining violations as plaintiffs was allowed to stay on

5   the AB 3098 list and that defendants did not warn contractors away from purchasing aggregate

6   from other mines not on the AB 3098 list.  Instead of asserting generally that they were treated

7   differently, plaintiffs have described two other operators who were treated differently as to the

8   salient characteristics.  This is sufficient.  *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007)

9   ("the proponent of the equal protection violation must show that the parties with whom he seeks

10   to be compared have engaged in the same activity vis-à-vis the government entity without such

11   distinguishing or mitigating circumstances as would render the comparison inutile").

12          E.   Failure To Challenge Taras's Cease And Desist Letter

13                 Relying on *Parratt v. Taylor*, 451 U.S. 527 (1981), defendants argue that

14   plaintiffs cannot maintain a due process claim against Taras for issuing a cease and desist order

15   because plaintiffs do not have a property interest in polluting and because plaintiffs failed to

16   challenge the order in administrative proceedings.  Plaintiffs counter that section 1983 does not

17   require administrative exhaustion under these circumstances.

18                 In *Parratt*, an inmate alleged he was deprived of materials he had ordered when

19   prison officials failed to follow the normal mail procedure; the inmate brought suit to recover the

20   value of the materials.  The Court agreed that a person is entitled to an opportunity to be heard at

21   a meaningful time, but noted that when the deprivation is the "result of a random and

22   unauthorized act," the state is unable to predict when the loss will occur and so cannot provide a

23   meaningful hearing before the deprivation.  *Id.* at 541.  The Court concluded that when a plaintiff

24   claims a deprivation of a liberty or property interest caused by an unauthorized negligent or

25   intentional act by a state actor, the plaintiff cannot state a claim when the state provides an

26   adequate post-deprivation remedy.  *Parratt*, 451 U.S. at 543-44, *overruled on other grounds by*

1   *Daniels v. Williams*, 474 U.S. 327 (1986).  When the plaintiff challenges conduct taken in

2   compliance with an established procedure, rule or regulation, the existence of a post-deprivation

3   remedy is irrelevant.  *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987) ("We

4   apply *Parratt* . . . only when the state administrative machinery did not and could not have

5   learned of the deprivation until after it occurred, not when state officials acted pursuant to state

6   policy and followed state procedures they believed were proper.") (internal citation, quotation

7   omitted).  Here, plaintiffs allege that the cease and desist order is improper but not that it was a

8   negligent or random act.  Defendants have provided nothing suggesting that predeprivation

9   process was impractical.

10          Taras's argument that plaintiffs do not have a right to pollute suffers from the

11   more general nature of the attack on plaintiffs' substantive due process claim: it assumes that

12   Taras's claims of plaintiffs' violations are true.  As the court must accept plaintiffs' complaint as

13   true, this argument is unavailing.

14   V.  <u>Storelli and Moffitt's Motion to Dismiss </u>(ECF No. 93)

15          As with the state defendants, Storelli and Moffitt argue that plaintiffs have not

16   adequately pleaded their "class of one" equal protection claim.  They argue that plaintiffs have

17   not connected Moffit and Storelli to the alleged Teichert-instigated scheme to drive plaintiffs out

18   of business and that they are not responsible the complaint does not disclose any reason why they

19   would have acted with malice against the Hardestys.

20          In *Bell Atlantic Corp. v. Twombly*, the Court considered the pleading requirements

21   for a claim of conspiracy or combination under the Sherman Act and held that "stating such a

22   claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement

23   was made." 550 U.S. at 556.  The complaint provides information on the agreement among

24   SMAQMD, the Central Valley Regional Water Control Board (CVRWCB), FWS, DFG and

25   OMR.  It also includes allegations that Kris Vyverberg, a geologist with DFG, decided to use a

26   theory that plaintiffs had substantially deviated from their existing reclamation plan so as to force

HSG to file a new reclamation plan and that Vyverberg and OMR would "approach the County with the 'substantial deviations' theory to induce the County, as lead agency to act." (ECF No. 74 ¶¶ 52-54 & Exs. B & J (referring to the approach to the County).) Under California Public Resources Code section 2770(a), financial assurances are tied to the reclamation plan. Accordingly, the allegations that Storelli and Moffit acted to raise the financial requirements precipitously, close in time to other events in the alleged scheme and shortly after they had approved significantly lower FACEs for HSG, coupled with the allegations about the county-as-lead-agency's participation, is sufficient to survive the motion to dismiss.

Nor does it matter that these defendants relied on environmental inspector Dan Bieber's report to increase the required financial assurances. Plaintiffs' claim is that the defendants hired Bieber even though they had never hired an environmental inspector for other mines, and allowed plaintiffs' competitors to pay Bieber's fees for the inspection. Thus, their action in retaining Bieber was part and parcel with the other alleged arbitrary actions against plaintiffs. (ECF No. 74 ¶ 168.)

As with the State defendants' attack on the equal protection claim, these defendants' arguments are unavailing. Plaintiffs allege that their competitors were not subjected to inspections or increased FACEs and were permitted to continue operations without such inspections, and that the increased FACE for plaintiffs was irrational in that operations at HSG had not changed and so did not require an increased financial guarantee for reclamation. (ECF No. 74 ¶¶ 171-172.) This allegation adequately states an equal protection "class of one" claim.

VI. <u>Sherry's and County of Sacramento's Motion to Dismiss</u> (ECF No. 94)

Defendants Sherry and the County of Sacramento argue that as plaintiffs have no vested right to mine, they were not entitled to notice of the County's actions concerning the mine and that only the owner of the property, not the tenant, was entitled to notice of the zoning hearing. They also contend that under California law, the only notice necessary when someone seeks a declaration of the vested right to mine is that given to the neighbors of the proposed mine

1   property.  Finally, they argue that plaintiffs have not sufficiently tied Sherry and the County to the

2   alleged conspiracy, and the substantive due process claim cannot stand because plaintiffs have not

3   alleged the County defendants' motive for their actions.

4       A.  Vested Rights And Notice

5       As noted, plaintiffs allege they are operating under Schneider's vested interest and

6   that because they are doing so, they were entitled to notice of the County defendants' actions that

7   potentially interfere with that interest.  *See* note 3 *supra*.  Also, as noted above, defendants have

8   presented no authority or argument that someone other than the property owner who is exercising

9   the owner's rights does not have a protectable property interest.  *See Oxford Bank & Trust and*

10  *Fifth Ave. Prop. Mgmt v. Village of LaGrange*, 879 F. Supp. 2d 954 (N.D. Ill. 2012) (stating that

11  village ordinance preventing tenant from obtaining license for pawnshop implicated landlord's

12  protectable property interest in continued use of property, but finding no procedural due process

13  violation).

14      Defendants argue that under Sacramento County Zoning Code § 115-08,[5] the

15  Director of Building and Enforcement is authorized to commence a proceeding for abatement and

16  removal of unlawful uses and that under those regulations, notice of a proceeding is sent to the

17  property owner.  Once again, however, defendants appear to misunderstand the nature of

18  plaintiffs' claim:  they do not argue that their claim arises from the defendants' failure to comply

19  with state or local procedures, but that the notice procedures utilized were inadequate in light of

20  their protected interests.  *See, e.g., Nicholson v. County of Stanislaus*, 2010 WL 923729, at *6.

21  Plaintiffs' claim withstands the motion to dismiss.

22      B.  Equal Protection

23      Plaintiffs allege that the County defendants refused to allow them to continue

24  mining during the pendency of their application for a conditional use permit, yet allowed others to

25  _____

26  [5] Defendants have not provided copies of the code sections they cite, as is required by
    Local Rule 133(i)(3).

22

1  do so.  They also allege that the County defendants claimed that when plaintiffs moved their

2  plant, it constituted a substantial deviation from plaintiffs' reclamation plan, but these defendants

3  allowed others, including Western Aggregates, to move their plants without finding a substantial

4  deviation.  Plaintiffs further allege that these actions were undertaken as part of a plan to drive

5  them out of business.  As noted above, these allegations are sufficient to support plaintiffs' class

6  of one equal protection claim.

7         C.  Substantive Due Process

8         These County defendants also argue that there are no allegations that Sherry

9  participated in any conspiratorial communications.  However, as with defendants Storelli and

10  Moffitt, the allegations of the County's involvement coupled with Sherry's actions is sufficient at

11  this stage.

12  VI.  Gregory's Motion to Dismiss (ECF No. 95)

13         The Second Amended Complaint alleges that Gregory, a Game Warden with DFG,

14  "entered the property and . . . inspected at least a dam on the southernmost creek, the processing

15  facility, and the wetland creek along the north east side of the processing facility."  (ECF No. 74

16  ¶ 142.)  Gregory argues that plaintiffs cannot maintain a Fourth Amendment claim because the

17  areas she inspected were all "open fields" and that plaintiffs lack a reasonable expectation of

18  privacy because mining is a pervasively regulated industry.[6]  She also asks the court to take

19  judicial notice of a number of documents, including the inspection report attached to Koehler's

20  declaration as well as some documents from one of plaintiffs' state cases.

21  /////

22  /////

23

24         [6] Plaintiffs claim that Gregory raised a Fourth Amendment challenge to the original
    complaint and cannot repeat it here.  But the factual allegations about the search in the Second
25  Amended Complaint are different and supersede the original complaint. An amended pleading is
    subject to the same challenges as the original pleading.  *Stamas v. County of Madera*, No. CV
26  F 09-0753 LJO SMS,  2010 WL 289310, at *4 (E.D. Cal. Jan. 15, 2010).

1     A. <u>Judicial Notice</u>

2       As noted above, the court takes notice of the existence of Koehler's report and

3 Taras's letter, mentioned in the Second Amended Complaint, but not the truth of the findings in

4 those documents. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *Coalition for a Sustainable*

5 *Delta*, 812 F. Supp. 2d at 1093.

6     B. <u>Fourth Amendment</u>

7       The Fourth Amendment protection against warrantless searches does not extend to

8 open fields, as "no expectation of privacy legitimately attaches to open fields." *Oliver v. United*

9 *States*, 466 U.S. 170, 180 (1984). Thus, in *Dow Chemical v. United States*, 476 U.S. 227 (1986),

10 the Court determined that an EPA "fly over" of Dow Chemical's industrial complex was not a

11 warrantless search because despite Dow's efforts to keep its plant private, it was akin to "open

12 fields" and also was commercial property, which the government has greater latitude to subject to

13 warrantless inspections. *Id.* at 237-38. Relying on *Oliver* and *Dow Chemical*, courts have often

14 approved enforcement-related searches under the open fields doctrine. *See, e.g.*, *Widgren v.*

15 *Maple Grove Township*, 429 F.3d 575 (6th Cir. 2006); *Dunham v. Kootenai County*,

16 690 F. Supp. 2d 1162 (W.D. Wash. 2010); *Betchart v. California State Dept. of Fish and Game*,

17 158 Cal. App. 3d 1104 (1984). However, as the *Dow Chemical* Court recognized, "Dow plainly

18 has a reasonable, legitimate, and objective expectation of privacy within the interior of its covered

19 buildings." *Dow Chemical*, 476 U.S. at 236. The Second Amended Complaint alleges that

20 Gregory searched the processing facility, but does not describe whether the facility consists of a

21 building, a covered area, or a completely open area. At hearing, defendant argued that Koehler's

22 report describes the facility as completely open and also that the facility cannot be deemed to be

23 part of any curtilage so as to defeat a finding of open fields because there is no such thing as

24 business curtilage. *See United States v. Dunn*, 480 U.S. 294 (1987) (finding no Fourth

25 Amendment violation when agents looked into barn which was not within the farm house's

26 curtilage). The court here need not reach the question whether it can read *Dunn* as broadly as

1   defendant argues; as it has declined to take judicial notice of defendant's description of plaintiffs'

2   processing plant, it cannot determine from the face of the complaint that the open fields doctrine

3   validates the search. *See United States v. Elkins*, 300 F. 3d 638, 654 (6th Cir. 2002) (noting that it

4   had not decided "whether there are circumstances in which the area adjoining a business structure

5   is protected against physical entry like the curtilage of a home and also discussing *Dunn*").

6         Gregory also asks this court to revisit its earlier rejection of the argument that

7   warrantless commercial searches are standard in highly regulated industries and so plaintiffs have

8   no reasonable expectation of privacy.  She again relies on *Donovan v. Dewey*, 452 U.S. 594

9   (1981), which held that periodic warrantless inspections of underground mines and stone quarries

10   by federal mine safety inspectors to ensure compliance with the health and safety standards of the

11   Federal Mine Safety and Health Act of 1977 did not violate the Fourth Amendment.  In its prior

12   order, the court did not read *Donovan* as saying that a mine operator loses all Fourth Amendment

13   protection against warrantless entries by officials from a different agency, employed by a

14   different sovereign, for purposes unrelated to mine safety.  In this motion, Gregory cites to a

15   number of different regulatory schemes that cover surface mining, but she does not demonstrate

16   how the pervasive regulation, the DFG's mission to protect California's wildlife and game

17   wardens' status as peace officers translates to a total abrogation of plaintiffs' Fourth Amendment

18   rights, particularly when plaintiffs allege that the search was undertaken for improper purposes.

19   *See also Jacob v. Township of West Bloomfield*, 531 F.3d 385, 391-92 (6th Cir. 2008) (finding an

20   inspector was not entitled to qualified immunity for administrative search undertaken at behest of

21   law enforcement).  The court declines to reconsider its prior conclusion.

22       C. <u>Substantive Due Process</u>

23         Gregory argues that because any claims against her flow only from the alleged

24   Fourth Amendment violation, the substantive due process claim should be dismissed.  *See, e.g.,*

25   *Larson v. Neimi*, 9 F.3d 1397, 1400-01 (9th Cir. 1993) (stating that Fourth Amendment standards,

26   not substantive due process standards, must be applied to claim that public official has illegally

25

1   seized someone).  Plaintiffs do not plead that the search by itself violates substantive due process

2   but rather that the search is part of a larger concerted action to drive plaintiffs out of business.

3   Plaintiffs have properly alleged a substantive due process claim; Gregory is not entitled to

4   dismissal.

5   VII.  SMAQMD Defendants' Motion To Dismiss  (ECF No. 97)

6          The SMAQMD defendants argue that the state proceedings are barred by res

7   judicata in that the state Court of Appeal rejected the claims plaintiffs bring here.  They also

8   argue that a federal court remand order establishes that the permit requirement is not a federally

9   preempted omission standard.  They finally argue that the complaint fails to state a claim for a

10   variety of reasons.

11          Plaintiffs counter that the action should be stayed because of on-going proceedings

12   concerning the permit and that the two prior decisions do not preclude the due process and equal

13   protection claims raised in the instant action.

14          A.  Whether A Continued Stay Is Appropriate

15          In its order filed March 29, 2012, the court agreed with the SMAQMD defendants

16   that the action as to them should be stayed after the Second Amended Complaint was filed, in

17   light of *Younger v. Harris*, 401 U.S. 37 (1971), because of the pendency of state court

18   proceedings.  (ECF No. 69 at 10-11.)

19          Plaintiffs filed the Second Amended Complaint against all the defendants,

20   including the SMAQMD defendants.  Without seeking to lift the stay, the SMAQMD defendants

21   filed a motion to dismiss.  Plaintiffs opposed, noting that the stay was still in place.  In reply,

22   defendants claimed the court had implicitly lifted the stay in approving a joint stipulation

23   regarding responses to the Second Amended Complaint and arguing that plaintiffs were merely

24   seeking more time in which to oppose the motion.  (ECF Nos. 84, 116.)[7]

25   _____

26   [7]  The better practice would have been for the SMAQMD defendants to make a formal
     motion to lift the stay.

1    The court lifted the stay, rescheduled the hearing on the motion to dismiss, and

2  gave plaintiffs time to respond to the merits of the motion.  (ECF No. 125.)  In their opposition,

3  plaintiffs argue that a stay is still appropriate because SMAQMD filed a complaint for civil

4  penalties in Sacramento County Superior Court, alleging that plaintiffs are operating equipment

5  without the appropriate permits, have violated the abatement order and have failed to file annual

6  reports.  (Opp'n to SMAQMD Mot. to Dismiss, ECF No. 130, at 7.)  Plaintiffs do not identify any

7  basis for the stay but rather argue only that the potential for overlapping litigation exists.

8    In its prior order, the court entered the stay only because of the parties' agreement

9  that it was appropriate, noting that *Younger* abstention was not appropriate when the state

10  proceedings are parallel to, and not interfering with, the state proceedings.  (ECF No. 69 at

11  11-12.)  *See Marks v. Stinson*, 19 F.3d 873, 882 (9th Cir. 1994).  Plaintiffs have presented only a

12  copy of the Superior Court's tentative ruling on SMAQMD's motion to strike portions of the

13  Hardestys' answer, yet make no attempt to show why the pending state court action justifies a

14  continued stay of these proceedings.  The court declines to undertake the analysis that was

15  plaintiffs' to make.

16    B.  Res Judicata And The Abatement Proceedings

17    SMAQMD defendants argue that the proceedings in state court following the

18  hearing on the abatement order preclude those portions of plaintiffs' complaint that challenge

19  SMAQMD's decisions and actions regarding plaintiffs' engines and other machinery and

20  classification of the mine as a single site.  They also argue that a remand order from the Eastern

21  District precludes plaintiffs from arguing that the permit requirement is preempted by the Clean

22  Air Act.

23    They ask the court to take judicial notice of a number of documents, including the

24  decision of the state Court of Appeal as well as plaintiffs' briefing in that court, the administrative

25  mandate challenging the abatement order, and their briefing during the abatement proceedings, as

26  well as documents from another case in this court, *Sacramento Metropolitan Air Quality*

27

*Management Board v. Hardesty*, Civ. No. 11-2278 JAM JFM (E.D. Cal.).  (2/28/11 & 7/9/12

Requests for Judicial Notice (RJN), ECF 67.)  A court may take judicial notice "'of proceedings

in other courts, both within and without the federal judicial system, if those proceedings have a

direct relation to the matters at issue.'"  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.

2007) (quoting *United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971

F.2d 244, 248 (9th Cir. 1992)).  The court takes judicial notice of the proffered state records, as

they have a "direct relation" to the resolution of the SMAQMD defendants' preclusion arguments.

As the court finds the state proceedings to have res judicata effect, it need not consider whether

an order remanding a case to the Superior Court has any preclusive effect and so need not take

judicial notice of the proceedings in the Eastern District.

      "Under 28 U.S.C. § 1738, a state court judgment is entitled to the same preclusive

effect in federal court as it would be accorded by a state court in the state of rendition."  *Water*

*West, Inc. v. Entek Corp.*, 788 F.2d 627, 629 (9th Cir. 1986).  "'The doctrine of res judicata rests

upon the ground that the party to be affected, or some other with whom he is in privity, has

litigated, or had an opportunity to litigate the same matter in a former action in a court of

competent jurisdiction, and should not be permitted to litigate it again to the harassment and

vexation of his opponent. Public policy and the interest of litigants alike require that there be an

end to litigation.'"  *Roos v. Red*, 130 Cal. App. 4th 870, 879 (2005) (quoting *Citizens for Open*

*Access Etc. Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998)).

      "In California, res judicata precludes a plaintiff from litigating a claim if: the claim

relates to the same 'primary right' as a claim in a prior action, the prior judgment was final and on

the merits, and the plaintiff was a party or in privity with a party in the prior action."  *Trujillo v.*

*County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985); *see also San Diego Police Officers'*

*Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  These

factors are analyzed below.

/////

1          i.  Identity of Parties

2          Plaintiffs do not dispute the identity of the parties in the two actions.

3          ii.  Finality of the Action/Merits Determination

4          "A final judgment is on the merits for the purposes of res judicata 'if the substance

5   of the claim is tried and determined . . . .'" *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77

6   (2000) (quoting 7 Witkin, CALIFORNIA PROCEDURE, *Judgment* § 313 (4th ed. 1997)).  Plaintiffs

7   do not dispute that the action is final and that the time for challenging the state Court of Appeal's

8   decision has expired.

9          iii.  Injury to Plaintiffs

10          Under California's primary rights theory:

11          [A] cause of action is (1) a primary right possessed by the plaintiff,
            (2) a corresponding primary duty devolving upon the defendant,
12          and (3) a harm done by the defendant which consists of a breach of
            such primary right and duty. . . .[I]f two actions involve the same
13          injury to plaintiff and the same wrong by the defendant, then the
            same primary right is at stake even if in the second suit the plaintiff
14          pleads different theories of recovery, seeks different forms of relief
            and/or adds new facts supporting recovery.

15

16   *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal citations, quotations omitted).

17   The critical focus is on the harm suffered.  *Id.*  "If the 'primary right' sought to be vindicated in a

18   subsequent suit is the same as that in an earlier suit, the second action will be precluded under

19   California law."  *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004) (quoting *Mycogen*

20   *Corp. v. Monsanto Co.*, 28 Cal.4th 888 (2002)).  A single cause of action arises from the harm

21   suffered rather than on the legal theory advanced and does not depend upon the remedy sought.

22   *Slater v. Blackwood*, 15 Cal.3d 791, 797 (1975); *McDowell v. Watson*, 59 Cal. App. 4th 1155,

23   1158 (1997).  Moreover, "even though two suits involve the same nucleus of facts, they do not

24   necessarily raise the same cause of action under California law."  *Maldonado*, 370 F.3d at 953.

25   To resolve this dispute, the court "must compare the two actions, looking at the rights which are

26   /////

1    sought to be vindicated and the harm for which redress is claimed." *Citizens for Open Access to*

2    *Sand and Tide, Inc. v. Seadrift Association*, 60 Cal. App. 4th at 1067.

3              In their appeal from the Superior Court's rejection of their administrative

4    mandamus, plaintiffs argued that SMAQMD's permit program, with its exemption for equipment

5    that emits less than two pounds of pollutants, is preempted by the Clean Air Act; that SMAQMD

6    could not require a permit for the generator that runs the central plant because the generator is

7    validly registered under the Portable Equipment Registration Program (PERP) as a portable

8    combustion engine; that the central plant equipment does not emit two pounds of pollutants a day;

9    and that SMAQMD's attempt to regulate HSG interferes with vested mining rights.  (1/12/16

10   RFJN, Ex. A, ECF 67-1 at 4.)  The Court of Appeal rejected all of the Hardestys' claims,

11   ultimately concluding that SMAQMD's permit requirement did not interfere with their vested

12   right to mine.  *(Id.* at 4-5.)

13             Plaintiffs here argue, however, that the primary right they have asserted in the

14   instant complaint "involves their constitutional rights to due process and equal protection.  The

15   primary wrong of the Defendants was to selectively, arbitrarily and irrationally define and apply

16   certain regulations, as part of a greater conspiracy with Plaintiffs' Competitors in order to drive

17   Plaintiffs out of business . . . . " (Pls.' Opp'n, ECF 130 at 9.)  They argue that the primary right in

18   the abatement proceedings was the right to be free of regulation that was preempted by federal

19   law, matched by defendants' duty not to exceed the scope of their authority when precluded by

20   other law.  *(Id.)*  This argument is unavailing.

21             During the abatement proceedings and in this court plaintiffs complain about the

22   impact of SMAQMD's actions on their ability to conduct their mining operations: the primary

23   right is their interest in operating the mine while the injury is the impact of SMAQMD's

24   enforcement on their business operations.  Whether SMAQMD undertook enforcement in

25   violation of state or federal law or because of Teichert's bidding, the impact on plaintiffs' mining

26   operations is the same.  Plaintiffs' instant claims raise a different theory, but not a different cause

                                                    30

1   of action.  *See Weikel v. TCW Realty Fund II Holding Co.*, 55 Cal. App. 4th 1234, 1249 (1997)

2   (defining the primary right as the plaintiff's interest in constructing a building at a particular

3   location and the defendant's primary duty as the duty not to unreasonably interfere with that

4   right).  At argument on the motion, plaintiffs conceded they had the opportunity to raise their

5   constitutional theories based on the federal Supremacy Clause or the Fourteenth Amendment in

6   the state proceedings; as a result their claims based on the abatement proceedings are barred by

7   res judicata.  This bar covers their substantive due process claims to the extent that they are based

8   on SMAQMD's application of rules plaintiffs claim are preempted by state and federal law, as

9   well as any claim that their actions were contrary to state law.

10          C.  The Permit Denial

11                  Defendants contend that this court cannot consider any claims stemming from the

12  denial of the permit because plaintiffs did not exhaust their administrative remedies and because

13  the allegations fail to state a claim.

14                  i.  Administrative Exhaustion

15                  Defendants argue that plaintiffs' failure to challenge the permit denial constitutes a

16  failure to exhaust administrative remedies and bars suit.  They rely on a number of inapposite

17  cases.  In *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994), for example, the

18  court discussed the preclusive effect of the administrative decision itself when the challenging

19  party fails to seek a judicial review of the agency decision.  In *Abelleria v. District Court of*

20  *Appeal of the State of California*, 17 Cal. 2d 280, 293 (1941), the court examined whether a party

21  could challenge agency action through a petition for a writ of mandate when he had not sought

22  administrative review of the challenged decision.

23                  Defendants also cite to *Moore v. City of Asheville*, 396 F.3d 385, 388 (4th Cir.

24  2005), which, relying on *Younger,* held that "a defendant to a coercive state administrative

25  proceeding must exhaust his state administrative and judicial remedies and may not bypass them

26  in favor of a federal court proceeding in which he seeks effectively to 'annul the results' of a state

administrative body." *See also Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613 (9th Cir. 2003)

(applying *Younger* abstention to a § 1983 challenge to the decision of horse racing board

suspending plaintiff's racing license).  Despite their reliance on these cases, defendants provide

no analysis of any factors that might support *Younger* abstention, do not explain why the denial of

an application of a permit is coercive – except to assert that it is – even though "[d]etermining

whether a proceeding is coercive or remedial does not always lend itself to a clear-cut answer."

*Hudson v. Campbell*, 663 F.3d 985, 987 (8th Cir. 2011).  They do not even describe the nature of

the permit application process, a factor important to the analysis.  *Baffert*, 332 F.3d at 618

("Whether the state proceedings are 'judicial in nature' or 'quasi-criminal' also plays a role in

assessing the significance of the state interest"); *Ohio Civil Rights Comm'n v. Dayton Christian*

*Sch.*, 477 U.S. 619, 627 n.2 (2011) (recognizing that "if state law expressly indicates that the

administrative proceedings are not 'judicial in nature,' abstention may not be appropriate").[8]

Finally, defendants simply do not address the exception to *Younger* abstention for proceedings

undertaken in bad faith or for harassment, which is at the heart of plaintiffs' claim in this case.

*Younger*, 401 U.S at 54.  Defendants have not borne their burden on this argument.

                ii.  Failure To State A Claim

          What remains of plaintiffs' substantive due process claim against the SMAQMD

defendants is based on these defendants' alleged desire to punish plaintiffs unfairly as part of the

Teichert campaign to drive plaintiffs out of business and the overbreadth of the permit denial,

which advised plaintiffs that "any type of operation at the facility" would violate air pollution

regulations.  *See Del Monte Dunes*, 920 F.2d at 1508 (stating that parties had pleaded substantive

due process violation when the landowner presented evidence that the city council reversed its

approval of condominium project because of political pressure from other landowners to preserve

the property as open space when the project otherwise complied with county requirements).  In

---

[8] From the documents defendants have presented, it does not appear that the permit proceedings are judicial in nature.  (ECF 99-4 at 2-3.)

1   this case, plaintiffs have not alleged that they satisfied the requirements for the issuance of a

2   permit or that SMAQMD would otherwise rescind the cease and desist order in the absence of a

3   valid permit.  Plaintiffs have failed to state a claim that these actions were arbitrary or irrational

4   and thus violated their substantive due process rights.  They will be given leave to amend the

5   complaint on the permit denial claim, if they are able to do so consonant with Rule 11 of the

6   Federal Rules of Civil Procedure.

7              IT IS THEREFORE ORDERED that:

8              1.  The State defendants' motion to dismiss (ECF No. 88) is granted as to Koehler,

9   but denied in all other respects;

10             2.  The motion to dismiss by Storelli and Moffitt (ECF No. 93) is denied;

11             3.  The County defendants' motion to dismiss (ECF No. 94) is denied;

12             4.  Gregory's motion to dismiss (ECF No. 95) is denied;

13             5.  The SMAQMD defendants' motion to dismiss (ECF No. 97) is granted;

14   plaintiffs' amended complaint, if they wish to file one, is due within twenty-one days of the date

15   of this order; and

16             6.  The case is set for pretrial scheduling conference on April 18, 2013, at 2:30

17   p.m.  A joint pretrial scheduling report is due no later than April 11, 2013.

18   DATED:  March 22, 2013.

19

20                                     _____

21                                     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

33