# EXHIBIT "94"

# EXHIBIT "94"

# EXHIBIT "94"

`' ' ILED/ENDORSED`
`2009 MAY 15 PM 1: 14`
`CRIM DIV`

*SUPERIOR COURT OF CALIFORNIA*
*COUNTY OF SACRAMENTO*

# SEARCH WARRANT AND AFFIDAVIT
# (AFFIDAVIT)

Criminal Investigator BRIAN MALONEY, Badge #1492, swears under oath that the facts expressed by him / her in the attached and incorporated statement of probable cause are true and that based thereon he / she has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code section 1524, as indicated below, and is now located at the location(s) set forth below. Wherefore, affiant requests that this Search Warrant be issued.

(Signature of Affiant)

NIGHT SEARCH REQUESTED: ☐ YES ☒ NO

Reviewed by: _____ 5/12/09
(Signature of Deputy District Attorney)

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SACRAMENTO:**

Proof by affidavit having been made before me by BRIAN MALONEY #1492 that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code section 1524 as indicated below by "X"(s) in that it:

☐ it was stolen or embezzled
☒ it was used as the means of committing a felony
☒ it is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
☐ it tends to show that a felony has been committed or that a particular person has committed a felony
☐ it tends to show that sexual exploitation of a child in violation of Penal Code section 311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of Penal Code section 311.11, has occurred or is occurring
☐ there is a warrant for the person's arrest;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**1. Cosumnes River, Cosumnes River banks, tributaries, wetlands, creeks, streams, ponds, mining pits, permanent and temporary buildings, computers, filing cabinets, registers, desks, vehicles, generators, truck trailers, trailers, motorized equipment fuel tanks, above-ground storage tanks, under-ground storage tanks, storage facilities, drums, compressed gas cylinders and other associated mining operation equipment located on Sacramento County Tax Assessor Parcels 128-0070-012-0000, 128-0070-056-0000, 128-0070-058-0000, 128-0070-060-0000, 128-0070-061-0000, 128-0090-034-0000, 128-0090-039-0000, 128-0090-041-0000, associated with a mining operation business with an entrance sign indicating the address of the operation to be "Hardesty Sand and Gravel"-15000 Meiss Road, Sloughhouse in Sacramento County, California approximately 3 miles east of Dillard Road and on the north side of Meiss Road with a center point being Latitude of 38.475720 and Longitude of -121.122559.**

**2. Hardesty Sand & Gravel business office and storage out-buildings, located at 10176 W. Stockton Blvd., Elk Grove, CA also described as Sacramento County Tax Assessor Parcel 132-0290-041-0000. The entrance driveway to this address is about one block south of Whitelock**

DA – 1506-A1—78S346W3—REV.02/2001

- 1 -



Pkwy., Elk Grove, CA on W. Stockton Blvd. and has a white painted "10176" and a westerly directional arrow pointing down a dirt road toward the west of W. Stockton Blvd., Elk Grove, CA and affixed to a wooden sign on W. Stockton Blvd., Elk Grove, CA. The main building is about 1/4 mile west of W. Stockton Blvd. on a dirt road with another wooden sign in front of the building with "10176" and "Hardesty" painted on it. The main building is described as a single story building that is medium brown with white trim with a few storage out-buildings and trailers that are light-tan, white and metal gray in color. The location is at a Latitude of 38.38005897 and Longitude -121.36616412.

FOR THE FOLLOWING PROPERTY:

1. Samples of any or all water, liquids, solids, gases, compressed gases, soils, organic or in-organic substances or contents from within any river water areas, ponds, streams, culverts, pipes, above-ground storage tanks, under-ground storage tanks, containers, drums, cylinders, or other equipment present on any of the parcels of the property.

2. Photography, videography, observations, audio and video recordings of any observations made or statements obtained while on the parcels to be searched.

3. Any indicia showing mining plant ownership and management , identifying who the daily plant manager or operator of the plant is through business letters, correspondence, already opened or deleted E-mails, utility bills/correspondence, delivery or shipping invoices, plant maintenance contracts or any other documents showing control and operatorship of the plant.

4. Any business records for Hardesty's Sand and Gravel and Schneider's Historic Mine pertaining to the mining operation. Business records, both in hard copy or computerized that include, but are not limited to, purchase agreements, orders, manifests, rental / lease agreements, contracts, checks, receipts, training records, personnel ledgers, payroll records, business banking documents, correspondence, opened and deleted e-mails, delivery and shipping invoices, plant maintenance contracts, enforcement correspondence, pertaining to business operations as well as heavy equipment, mining equipment and hazardous materials training documentation for employees or equipment used in the mining operation.

Computers and computer systems, including computer records, whether on paper or stored on magnetic media including information contained within a computer or computer system; including computer hardware, software, and data, including central processing units, hard disks, hard disk drives, tape drives, CD-ROM drives, display screens, keyboards, printers, modems, magnetic tapes, zip drives, zip drive disks, files and documents in the form of optical media, electronic media, computer manuals and resource books, computer cables and connections, pieces of paper with computer passwords, computer network addresses and codes, cassette tapes, and floppy disks, found together or separately from one another.

The terms "records," "information", "and "property" includes all of the foregoing items of evidence in whatever form and by whatever means that may have been created or stored , including records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic address books," calculators, or any other storage media, or any other form of "writing" as defined by Evidence Code section 250, together with indicia of use, ownership, possession, or control of such "records," "information," and "property".

Investigating officers are authorized, at their discretion, to seize all "computer systems," "computer program or software," and "supporting documentation" as defined by Penal Code section 502, subdivision (b), including any supporting hardware, software, or documentation that



is necessary to the use the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an off site search of the seized items for the evidence described. Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all computer data to determine if the data contains "property," "records," and "information" as described above. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve computer data. Any digital evidence found during the execution of this search warrant will be seized, transported from the scene, and analyzed in a reasonably prudent time. If no evidence of criminal activity is discovered relating to the seized computer systems and associated peripherals, the system will be returned promptly.

Investigating personnel are also authorized to bring local and state government personnel, law enforcement personnel, scientists, biologists, engineers, geologists, hydrologists, environmental specialists and computer experts to assist with the service of this search warrant due to its technical nature.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me this ____ day of _____, 20___, at ____. A.M. / ____ Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____
(Signature of Magistrate)
Judge of the Superior Court

SEARCH APPROVED: YES ( ) NO ____

DA – 1506-A1—76S346W3—REV.02/2001                    - 3 -

**PAGE 3**

FILED/ENDORSED

2009 MAY 15 PM

CRIM DIV

07SW00520

# AFFIDAVIT
## and
## STATEMENT OF PROBABALE CAUSE

I am employed as a law enforcement officer with the Sacramento County District Attorney's Office as a Criminal Investigator. I have been so employed since 1994 and previous to that was employed with the Sacramento County District Attorney's Office – Bureau of Investigation as well as employed by the Sacramento County Sheriff's Department.

In 1992, I completed the Sacramento County Sheriff's Academy and completed patrol training in 1993. I worked patrol, crime scene investigations, custody and in the detective bureau.

In 1994, I was hired by the Sacramento County District Attorney's Office as a Criminal Investigator, while remaining as a Reserve Deputy Sheriff with the Sacramento County Sheriff's Department. My first assignment with the District Attorney's Office was in the Major Crimes-Homicide Division for 5 years, where I performed investigation. I, subsequently, was assigned to the Child Abduction Unit, the Supervisor of the Investigative Support Unit and then to my current assignment as the Environmental Crimes Investigator.

I have been an Environmental Crimes Investigator with the Sacramento County District Attorney's Office since 2003. I started in the Environmental Crimes assignment by completing six weeks of hazardous materials training with the Governor's Office of Emergency Services (OES) – California Specialized Training Institute (CSTI) and was certified as a Hazardous Materials Technician. I, subsequently, completed an advanced two week hazardous materials training course with OES-CSTI and was certified as a Hazardous Materials Specialist.

In addition, I have attended a number of hazardous waste, energetic material (explosives), radiological, biological, weapons of mass destruction and terrorism training courses through the annual California Hazardous Materials Investigators' Association (CHMIA) Conference, the annual OES-CSTI sponsored Continuing Challenge Conference, in-service training with the Sacramento City Fire Department, the Sacramento Metropolitan Fire District, Sacramento Office of Homeland Security and through several U.S. Department of Homeland Security training programs.

I have investigated or performed follow-up investigations on not less than 50 environmental crime complaints, which resulted in civil and criminal cases being successfully prosecuted by the Sacramento County District Attorney's Office or administratively processed by the Sacramento County Environmental Management Division. I am often notified by Sacramento Regional Fire Communications of hazardous materials calls occurring throughout the county requiring my response to hazardous waste incidents, which include suspected hazardous waste dumps, clandestine labs, "white" powder biologic incidents, radiation and chemical incidents.

I am a certified California Peace Officer Standards and Training (POST) Instructor in air pollution and have instructed law enforcement and environmental response professionals in the investigation and evidence collection process of air pollution cases. I have provided instruction to Sacramento County Sheriff's Office deputies relating to hazardous materials response.

I am also employed by U.S. Health and Human Services-National Disaster Medical System (NDMS) as a Security Specialist and Liaison Officer to FEMA, where I receive extensive training in the response to natural disasters as well as terrorism incidents involving chemical, biological and radiological disasters. Through this employment, I have successfully performed in numerous exercises and disasters including the "Top Officials 2" radiological improvised explosive device (IED) incident in Seattle, Washington and have served in both Mississippi and Louisiana following the aftermath of Hurricanes Katrina and Rita as well as in Texas following Hurricane Ike.

## STATEMENT OF PROBABALE CAUSE

On March 18th, 2009, Sacramento Metropolitan Air Quality Management District (SMAQMD), Stationary Source Division Manager-David Grose asked if I could assist them and the California Air Resources Board (Cal ARB) in the service of an inspection warrant at Hardesty Sand and Gravel mine located on Meiss Road, east of Dillard Road, for the purposes of keeping-the-peace as the California Highway Patrol was uncertain if they could provide personnel for an extended period of time for that purpose. This was requested because Grose had information from previous inspection visits that the U.S. Army Corps of Engineers and the California Department of Fish and Game had been angrily told to leave the Schneider property and Hardesty mining operation. I learned that Hardesty Sand and Gravel also have business names associated with the same business as Hardesty Top Soil, Sand & Gravel, and Hardesty Sand & Gravel. After obtaining approval from my attorney and law enforcement supervisors, I advised Grose that I could assist them with the service of the inspection warrant on March 24th, 2009.
I then received a phone call from California Air Resources Board – Senior Counsel George Poppic confirming my presence for the March 24th, 2009 inspection warrant service.

On March 24th, 2009, I arrived near the Hardesty Sand and Gravel operation site at Dillard Road and Meiss Road and met members of the Sacramento Metropolitan Air Quality Control District and the California Air Resources Board to review the inspection warrant. At this time, a California Highway Patrol officer arrived and advised that he was assigned to assist with the service of the inspection warrant to also keep-the-peace. As the property to be searched is so large, both of us assisted as requested. I was assigned to stay with the majority of the inspection team, while the California Highway Patrol Officer was assigned to maintain a presence near the processing and scale areas of the operation.

Upon our arrival at the Hardesty Sand and Gravel operation, which had "15000" painted on a pole next to a sign indicating the location to be Hardesty Sand and Gravel and Schneider Historical Mine on Meiss Road, Sloughhouse, CA, a copy of the inspection warrant was provided to Joseph Hardesty.

**PAGE 5**

During the inspection, I noticed numerous sand and gravel trucks entering the property being weighed on the truck scale, picking up gravel, rock and sand product from the various piles, being re-weighed on the scale and then driving off of the property. These trucks were from all different companies and appeared to be trucks purchasing sand and gravel products as they used the on-site truck scale and then drove away with sand and gravel from the site after their trailers were loaded with sand and gravel products.

While I followed the inspection team around the mining operation, whom was often accompanied by Joseph Hardesty and his attorney-Scott Morris, I noticed two large multi-thousand gallon above-ground storage tanks that were described by Joseph Hardesty to contain Number 2 Red Diesel. I noticed that there was no signage identifying the contents of the tanks as well as no signage identifying the chemical properties of flammability or toxicity of the chemical. These tanks are located near the processing plant of the operation and I understood one to power a very large generator that operates the gravel separator per Joseph Hardesty's statement. The other tank is not far away and is near another very large generator, but has been inserted into a truck trailer and equipped with a hose and pump nozzle. As Joseph Hardesty was answering the inspectors' questions, I understood the second tank to contain Number 2 Red Diesel and that it was used for supplying fuel to the heavy equipment and other mining equipment throughout the operation as the operation did not get its power from a public utility source, but they generated their own. I, furthermore, observed drums, compressed gas cylinders and numerous tires in the area of the processing plant.

Throughout the inspection, I overheard conversations from the California Air Resources Board and the Sacramento Metropolitan Air Quality Management Division that other governmental agencies had been to the location for inspections for concerns about the pits being excavated and at one point Joseph Hardesty's attorney-Scott Morris, who was at the site during this inspection, stated that they are working on the pit slope angles that many of the government officials have discussed as a concern of weakness to the Cosumnes River bank. I was told by Sacramento Metropolitan Air Quality Management District (SMAQMD), Stationary Source Division Manager-David Grose that he observed a substance sheen in the water, which he believed to be leaking fuel from the smaller generators that are stationed at the east and west excavation pits. (See exhibit "A"-04-21-2009 my aerial photos of the pits' slopes in reference to the Cosumnes River and the affected bank as well as Office of Mining and Reclamation photos 03-27-2009 of the generators) I additionally observed a number of wastewater ponds throughout the property with unknown liquid flowing from the mining processing plant to nearby ponds at the west side of the property near Meiss Road as well as near and just east of the processing plant. The liquid that was coming from the processing plant area was seen on the surface of the land as it traveled west past the scale area as well as coming from underground pipes that were angled as if coming from the processing plant. (See exhibit "B"-04-21-2009 photos of ponds in reference to the Hardesty Sand and Gravel processing plant)

Following the inspection on March 24, 2009, I called Sacramento County Environmental Management Division – Hazardous Materials Program to see if they had the Hardesty Sand and Gravel operation had submitted a hazardous materials business plan in their business plan program and they said they did not find any variant of that business name and stated they would be interested in doing an initial inspection of the business for hazardous materials and hazardous waste if there were large quantities of diesel fuel and

other suspected hazardous materials present at the mining operation as the business falls under their regulatory and enforcement jurisdiction for hazardous materials and hazardous waste.

After discussing my observations with Sacramento County District Attorney's Office – Environmental Protection Unit attorneys, I followed-up and obtained more information from local, state and federal agencies as to past and present efforts regarding the Hardesty Sand and Gravel business. Reports that exemplify this effort and explain the environmental impact of recent mining activities at the Cosumnes River site include reports and letters from the California State Department of Conservation-Office of Mine Reclamation (OMR) dated December 23rd, 2008 and February 23, 2009, that includes a "Cease and Desist" clause (see exhibit "C") and a U.S. Army Corps of Engineers letter, dated June 2, 2008 that includes a "Cease and Desist" clause. (See exhibit "D") I also learned that the current mining operation was being conducted without all necessary permits from various agencies, which made attempts to get the mining operation in compliance.

On April 1st, 2009, I received a call from Environmental Specialist-Jeni VanDusen of the Sacramento County Environmental Management Division (EMD) stating that she was going out to the Hardesty Sand and Gravel operation to see if she could perform an initial inspection of the business to see if the company is storing and using hazardous materials and / or hazardous waste and if it should be included in the Sacramento County EMD Hazardous Materials Business Plan program as they currently are not. VanDusen asked if I could accompany her as she understood that the people at the location were not cooperative. I checked with my administrative staff and after obtaining approval for the peace-keeping assist, a date of April 3rd, 2009 was set for Sacramento County Environmental Management Division's attempt to inspect the business.

On April 3rd, 2009, I met Sacramento County Environmental Specialist Jeni VanDusen, her co-worker-Daniel Abellon at Meiss and Dillard Roads and then we drove to the Hardesty Sand and Gravel operation at 15000 Meiss Road, Sloughhouse, CA. Upon our arrival, we were greeted by Joseph Hardesty, who said that he was not going to allow a voluntary inspection of his business.

Joseph Hardesty, said that he didn't believe the government had the right to inspect his business without due process and a hearing and that he wouldn't allow it and suggested that Jeni VanDusen make arrangements with his attorney-Scott A. Morris of Kronick, Moskovitz, Tiedemann and Girard, if she wanted to inspect the operation. Joseph Hardesty further stated that the law firm that represents him is in the process of putting together a federal law suit against all of the agencies that have come and inspected his operation even with inspection warrants, because the proper due process was not adhered to and that he had rights from exemption of regulation based on that he operates on the Historic Schneider Mine with permission from Jay Schneider.

Jeni VanDusen, Daniel Abellon and I then left the property and Sacramento County Environmental Management Division did not perform an inspection of the Hardesty Sand and Gravel operation, nor the Schneider Historical Mine.

During the subsequent couple of weeks, I gathered information from several different federal, state and local agencies regarding the Hardesty Sand and Gravel operation and Schneider's Historic Mine.

On April 21st, 2009, I was contacted by the California Department of Fish and Game Air Operations Unit to take updated photographs of the Hardesty Sand and Mine operation, which I did. After taking the photos, I forwarded the photos to the California State Department Fish and Game - Fisheries Engineering Team within the Ecosystem Conservation Division. These photos were provided to Senior Engineering Geologist Kris Vyverberg to examine and compare since her last visit to the Hardesty Sand and Gravel operation in December, 2008.

On April 24th, 2009, the California State Department of Fish and Game Senior Engineering Geologist Kris Vyverberg provided me an analytical report along with a photo – map synopsis that described her past and current observations of the area pertaining to the Hardesty Sand and Gravel operation. (See exhibit "E") The synopsis also describes the violations of sections 1602 and 5650 of the California Fish and Game code that need to be further investigated on-site to collect evidence pertaining to these codes and sections.

On May 1st, 2009, Guy Childs with the State of California Regional Water Quality Control Board had reviewed the April 21st, 2009 aerial photos of the Hardesty Sand and Gravel operation on Meiss Road. Childs stated their department is concerned about any unlawful reportable discharges into the Cosumnes River or any waterways or tributaries that may lead to the Cosumnes River as Hardesty Sand and Gravel at that location is not permitted to discharge any waste into the water or ground that would make its way to ground water or any rivers or tributaries. Potential discharges as seen in previous photos and documentation and also indicative in the April 21st, 2009 aerial photos' waste ponds need to be checked and if substantiated would be in violation of several Water Code sections.

On May 7th, 2009, Zachary Simmons with the U.S. Army Corps of Engineers confirmed the Corps' concern with the Hardesty Sand and Gravel operation on Meiss Road, next to the Cosumnes River pertaining to Clean Water Act violations and possible waste discharges into the waterways of that area and had issued a "Cease and Desist" letter to the mining operation.

On May 7th, 2009, I learned from the City of Elk Grove Business License Office that the Hardesty Sand & Gravel business was issued a business license (See exhibit "F"), which commenced on February 1st, 2009 for Hardesty Sand & Gravel at 10176 W. Stockton Blvd., Elk Grove, CA 95757 with attention to Yvette Hardesty. I also learned that many of the letters sent from various agencies were sent to 10176 W. Stockton Blvd., Elk Grove, CA in the name of Joseph Hardesty and Hardesty Sand & Gravel. Receipt of these letters and notices by these government agencies would show knowledge of the on-going attempts by various governmental agencies to get Hardesty Sand and Gravel into compliance and that the business received the "Cease and Desist" notices issued to them regarding the Meiss Road mining operation. I performed a Sacramento County Property Tax Assessor's database check and learned the property to be in the family name of

Hardesty as a family trust and that another database check provided that a 2007 lien judgment for Hardesty Sand and Gravel from the Sacramento County Courthouse was associated with Joseph L. Hardesty and 10176 W. Stockton Blvd., Elk Grove, CA.

From my observations on March 24th, 2009 of the small scale office at the Meiss Road Hardesty Pit operation and now having confirmed that a business office exists at 10176 W. Stockton Blvd., Elk Grove, CA, which is also advertised on World Wide Web Internet pages, that based on my education, training and experience that business offices are usually the location where most business documentation is kept for long term business operations and that Hardesty Sand & Gravel business documents are probably to be found at 10176 W. Stockton Blvd., Elk Grove, CA in addition to the small scale office at 15000 Meiss Road, Sloughhouse, CA.  Hardesty Sand and Gravel business documentation would be evidence of the ownership and the management of Hardesty Sand and Gravel operation at the Meiss Road mining site as to when the site began to be mined at its current location next to the Cosumnes river and to locate plans for excavation and reclamation that should have been generated, to locate any needed funding plans for reclamation of the Meiss Road mining pits, to identify contracts with businesses that are buying sand and gravel products, to identify contracts, receipts, bills and employment records for mining equipment and operators, land agreements with the owners of the property being mined, all of which establishes the continuing business practices of Hardesty Sand and Gravel at the Meiss Road mining site.

To summarize, based on my education, training, experience and the recent information gathered.  Based on recent aerial photos, other government agency reports as attached exhibits and observations pertaining to the Hardesty Sand & Gravel operation of the deep excavation in the mining pits next to the Cosumnes River causing river water to enter into the pits, decreasing the structural integrity of the river banks and the wastewater from the washing of the gravel, I believe there is probable cause that there would be evidence of violations to include:

California Water Code section 13387 a (1-7), which prohibits knowing discharges of pollutants into navigable waters in violation of the Clean Water Act as well as the associated state law, a felony.

California Fish and Game Code 1602, which requires written notification to the Department of Fish and Game and approval from the Department of Fish and Game before any substantial diversion or obstruction of natural flow; or for use of any material from bed, channel or bank of river; or for disposal of debris or waste where it may pass into a river, a misdemeanor.

California Fish and Game Code 5650, which prohibits depositing or permitting any substance to pass into the waters of the state that maybe deleterious to fish, plants, mammals or birds, a misdemeanor.

California Water Code 8710, which requires a plan for any work in the bed of, or along, or near any tributary of the Sacramento or San Joaquin rivers to be approved by the Central Valley Flood Control Board, a misdemeanor.

I, therefore, pray based on my education, training, experience and the recent information gathered as described in the affidavit that a search warrant be issued for:

Locations:

1. Cosumnes River, Cosumnes River banks, tributaries, wetlands, creeks, streams, ponds, mining pits, permanent and temporary buildings, computers, filing cabinets, registers, desks, vehicles, generators, truck trailers, trailers, motorized equipment fuel tanks, above-ground storage tanks, under-ground storage tanks, storage facilities, drums, compressed gas cylinders and other associated mining operation equipment located on Sacramento County Tax Assessor Parcels 128-0070-012-0000, 128-0070-056-0000, 128-0070-058-0000, 128-0070-060-0000, 128-0070-061-0000, 128-0090-034-0000, 128-0090-039-0000, 128-0090-041-0000, associated with a mining operation business with an entrance sign indicating the address of the operation to be "Hardesty Sand and Gravel"-15000 Meiss Road, Sloughhouse in Sacramento County, California approximately 3 miles east of Dillard Road and on the north side of Meiss Road with a center point being Latitude of 38.475720 and Longitude of -121.122559.

2. Hardesty Sand & Gravel business office and storage out-buildings, located at 10176 W. Stockton Blvd., Elk Grove, CA also described as Sacramento County Tax Assessor Parcel 132-0290-041-0000. The entrance driveway to this address is about one block south of Whitelock Pkwy., Elk Grove, CA on W. Stockton Blvd. and has a white painted "10176" and a westerly directional arrow pointing down a dirt road toward the west of W. Stockton Blvd., Elk Grove, CA and affixed to a wooden sign on W. Stockton Blvd., Elk Grove, CA. The main building is about 1/4 mile west of W. Stockton Blvd. on a dirt road with another wooden sign in front of the building with "10176" and "Hardesty" painted on it. The main building is described as a single story building that is medium brown with white trim with a few storage out-buildings and trailers that are light-tan, white and metal gray in color. The location is at a Latitude of 38.38005897 and Longitude -121.36616412.


For The Following Property:

1. Samples of any or all water, liquids, solids, gases, compressed gases, soils, organic or in-organic substances or contents from within any river water areas, ponds, streams, culverts, pipes, above-ground storage tanks, under-ground storage tanks, containers, drums, cylinders, or other equipment present on any of the parcels of the property.

2. Photography, videography, observations, audio and video recordings of any observations made or statements obtained while on the parcels to be searched.

3. Any indicia showing mining plant ownership and management , identifying who the daily plant manager or operator of the plant is through business letters, correspondence, already opened or deleted E-mails, utility bills/correspondence, delivery or shipping invoices, plant maintenance contracts or any other documents showing control and operatorship of the plant.

4. Any business records for Hardesty's Sand and Gravel and Schneider's Historic Mine pertaining to the mining operation.  Business records, both in hard copy or computerized that include, but are not limited to, purchase agreements, orders, manifests, rental / lease agreements, contracts, checks, receipts, training records, personnel ledgers, payroll records, business banking documents, correspondence, opened and deleted e-mails, delivery and shipping invoices, plant maintenance contracts, enforcement correspondence, pertaining to business operations as well as heavy equipment, mining equipment and hazardous materials training documentation for employees or equipment used in the mining operation.

Computers and computer systems, including computer records, whether on paper or stored on magnetic media including information contained within a computer or computer system; including computer hardware, software, and data, including central processing units, hard disks, hard disk drives, tape drives, CD-ROM drives, display screens, keyboards, printers, modems, magnetic tapes, zip drives, zip drive disks, files and documents in the form of optical media, electronic media, computer manuals and resource books, computer cables and connections, pieces of paper with computer passwords, computer network addresses and codes, cassette tapes, and floppy disks, found together or separately from one another.

The terms "records," "information", "and "property" includes all of the foregoing items of evidence in whatever form and by whatever means that may have been created or stored , including records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic address books," calculators, or any other storage media, or any other form of "writing" as defined by Evidence Code section 250, together with indicia of use, ownership, possession, or control of such "records," "information," and "property".

Investigating officers are authorized, at their discretion,  to seize all "computer systems," "computer program or software," and "supporting documentation" as defined by Penal Code section 502, subdivision (b), including any supporting hardware, software, or documentation that is necessary to the use the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an off site search of the seized items for the evidence described.  Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all computer data to determine if the data contains "property," "records," and "information" as described above. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve computer data.  Any digital evidence found during the execution of this search warrant will be seized, transported from the scene, and analyzed in a reasonably prudent time.  If no evidence of criminal activity is discovered relating to the seized computer systems and associated peripherals, the system will be returned promptly.

Investigating personnel are also authorized to bring local and state government personnel, law enforcement personnel, scientists, biologists, engineers, geologists, hydrologists, environmental specialists and computer experts to assist with the service of this search warrant due to its technical nature.

_____   Dated: May 12th, 2009

Affiant  -   Brian Maloney #1492 – Criminal Investigator

# Exhibit "A"



Exhibit "A"-1
Taken
4/21/09







Taken on
4/21/2009

Exhibit "A" - 3



Exhibit "J"-4

Taken on
2/1/2009



Taken C
4/21/2c
Exhibit "A" - 6



Taken On 4/21/2009

Exhibit "A" ~ 7



Taken On
4/21/2009

EXHIBIT "A" - 8



Taken On
4/21/2009

Exhibit "A" - 9



Taken on
4/21/2009

Exhibit "A"-10











**CENTRAL VALLEY FLOOD PROTECTION BOARD**
**ENCROACHMENT CONTROL & LAND USE SECTION**

### FIELD MEETING LOG

**Project Name:** Schneider/Hardesty Mining Site     **Board Staff:** CT & JCW
**Location:** 15000 Meiss Road, Sloughhouse, CA (2 miles SE of Dillard Road and Jackson Road)
**Date:** May 14, 2009   **Day:** Thursday   **Time:** 0800 - 1430   **Weather:** Hot & Sunny
          **Reviewed by:** CT   **Date:** 1 JUN 2009

**Attendee(s):** See Exhibit 1.

**Log Details**

08:00 am:   Briefing was conducted at the Sacramento Sheriff's Central Station at 65th Street, Sacramento, CA.

09:30 am:   The team assigned for the mining site (as listed in Exhibit 1) gathered at the intersection of Dillard Road and Meiss Road.

09:45 am:   The team entered the mining site and visited the eastern and western pits and their surroundings. Issues have been identified and they are listed as follows:
- Close proximity of the excavations to Cosumnes River,
- Excavations are deeper than water surface of the river,
- Under seepage is occurring from the river to the pits, discharging approximately 5 gallons per minute,
- Very steep slopes and they are not vegetated,
- Slope failures have been observed,
- Levee raise approximately 6 feet high,
- Levee along the western pit is used as an illegal dam to impound illegal water diversions for sand and gravel washing operation,
- Western pit impounding reservoir lacks a spillway and outlet,
- Pipes connected to the river at the western pit were observed indicating an illegal diversion of water,
- Mobile pumps were located in the reservoir,
- Illegal dams with vertical height of greater than 25 ft are constructed along the northern and eastern edges of the operational plant area,
- Material stockpiles are placed in the floodway,
- Stream diversion into the western pit, and
- Increased flood risk to Cosumnes River Elementary School.

Evidence collected are (a) soil samples from the levee raise, (b) a conglomerate from the eastern pit, (c) a tile pipe near the NE corner of the eastern pit, and (d) a conglomerate approximately 500 feet NW of the operational plant.

02:00 pm:   Departed the site.

**Attachments**
Attachment A   - Site Map
Attachment B   - Designated Floodway
Attachment C1 - Site plan that shows cross-section A-A'
Attachment C2 - Cross-section A-A'
Attachment D1 - Site plan that shows cross-section B-B'
Attachment D2 - Cross-section B-B'

**Figures**      - Figures 1 through 18

## OPERATIONAL OUTLINE (CONTINUED)    Exhibit 1

### OPERATION NARRATIVE (CONTINUED)

LIST TEAM ASSIGNMENTS AND PERTINENT POINTS OF PLAN    (DO NOT TYPE BELOW BOX)

***15000 Meiss Road - Hardesty Sand & Gravel Mining Pit Operation*** SSD Channel 3
DA-Lt. Lance McHenry (DA-6) 591-6484 - Command coordination at mining operation.
DA-C.I. Brian Maloney (DA-38) 591-6481- Finder at mining operation.
DA-C.I. Dave Poroli (DA-50) 591-7041 - Interview cooperative customers at front gate at mining operation.
DA-C.I. Rich Cardella (DA-32) 826-5514 - Interview employees at processing plant area of mining operation.
DA-C.I. Don Parvin (DA-48) 591-7039 - Interview employees at excavation pit area of mining operation.
DA-I.A. Bruce Parr 862-0035-Collect, photograph, identify and store evidence pertaining to mining operation.
EMD-HazMat Program Manager Elise Rothschild 591-2937-Interview mining pit operation manager.
EMD-Environmental Specialist Robert Duncan 591-2393- Document hazmat/hazwaste issues.
EMD-Environmental Specialist Jeni VanDusen 591-2633- Document hazmat/hazwaste issues.
EMD- Environmental Specialist Daniel Abellon  531-7817- Document hazmat/hazwaste issues.
DA Crime Lab Criminalists Brian Escamilla 803-7493 and Jermey Zerbe-Assist DA and EMD with chemical sampling.
DFG-Capt. Mark Lucero  825-7126-Command coordination of DFG personnel.
DFG-Lt. Hector Orozco 826-0655-Interview employees at excavation pit area of mining operation.
DFG-Game Warden Bill Ynclan 530-906-1396-Interview employees at processing plant area of mining operation.
DFG-Engineering Geologist Kris Vyverberg 599-0925-Document F&G/Water Code violations. Collect evidence.
CVFPB-Physical Engineer Curt Taras 747-6694 - Document Water Code Violations. Collect evidence.
CVFPB-P.E. GeoTechnical Engineer Joo Chai Wong 747-6694-Document Water Code violations. Collect evidence.
RWQCB-Guy Childs Engineer 464-4648- Document Water Code violations.
SSD-Sgt. Luis Aguilar S60 869-5203-Sheriff's POP Supervisor.
SSD-Dep. Mike Cravens POP-80 606-8263- Initial contact with Joe Hardesty and processing plant area protective measures.
SSD-Central POP Deputies perform protective measures around mining operation plant and excavation areas.

***10176 W. Stockton Blvd. - Hardesty Sand & Gravel Business Office*** EGPD Channel 1
DA-C.I. Diane Hall (DA-57) 591-8951 - Finder at business office.
DA-C.I. John Trefethen (DA-59) 997-9438 - Collect business, financial, operational documentation pertaining to the mining operation on Meiss Rd.
DA-I.A. Toni Ruiz 591-7045 - Collect, photograph, identify and store evidence.
EMD-Environmental Specialist Heather Tanner 591-2322 - Collect business/training hazmat-hazwaste records.
EGPD-Officer Dan Emerson Y12  717-6660 - Initial entry and protective measures.
EGPD-Officer Chris Reese  P14  753-3418 - Initial entry and protective measures.
EGPD-Officer Jason Kearsing - Initial entry and protective measures.
DFG-Lt. Mary Mason 530-624-8159-Collect business, financial, operational documentation pertaining to mining operation on Meiss Rd.
DFG- Game Warden Brandon Owen 707-980-3732-Collect business, financial, operational documentation pertaining to mining operation on Meiss Rd.
DFG-I.T. Technician Chris Andrus 919-5826-Assist business office team with computerized data retrieval.

DIAGRAM:
15000 Meiss
Road
Sloughhouse





0176
  Stockton
  ve

N
W ——— E
S



Attachment A — Site Map

Rancho Murieta Airport

Eastern Pit

Sediment Detention Ponds

Stream diversion into pit

Operational Plant

Western Pit

Cosumnes River Elementary School



Attachment B — Designated Floodway

Attachment C2 – Cross-Section A-A'





Approximate horizontal and vertical scale

0'   20'   40'   60'



Attachment C1 – Site plan that shows cross-section A-A'



Attachment D1 – Site plan the shows cross-section B-B'

Attachment D2 – Ch... ..-Section B-B'



Existing ground (grass)

Sediment Detention Pond

36'

16'

25'

2'

1

1

2

1



Approximate horizontal and vertical scale

0'    10'    20'    30'    40'



Figure 1 Overall view of the eastern and western pits; looking north



Figure 2 Operational Plant; looking southeast



Figure 3 Issues of under seepage and slope failure were observed at the northern wall of the eastern pit; looking north



Figure 4 Gravel and sand were exposed with deeper excavation at the eastern pit; looking north



Figure 5 Under seepage water from Cosumnes River to the eastern pit; looking east



Figure 6 Levee raise of about 6 feet at the northern wall of the eastern pit; looking east



Figure 7 Levee raise of about 6 feet at the northern wall of the eastern pit; looking east



Figure 8 To illustrate the scale of under seepage problem; looking down and south



Figure 11 The prismatic geometry of the existing ground indicates the presence of a levee near NE corner of the eastern pit; looking south



Figure 12 Pipe connected to Cosumnes River near NW corner of the western pit; looking NW

PAGE 39



Figure 13 Northern wall of the western pit impounding reservoir; looking east



Figure 14 Two pumps were observed at the SW corner of the western pit; looking north



Figure 15 Stream diversion into the western pit and a big pipe was underneath; looking north



Figure 16 Sediment detention pond near the NE corner of operational plant; looking north



Figure 9 Large excavator and haul/dump truck located SE corner of the eastern pit; looking east



Figure 10 Cosumnes River north of the eastern pit; looking north

PAGE 42



Figure 17 Dam crown of detention pond is about 25 feet higher than the adjacent ground; looking north



Figure 18 Cosumnes River Elementary School at 13580 Jackson Road and 2 miles NW of the mining site