G. DAVID ROBERTSON, ESQ.
California State Bar No. 111984
MARILEE BRETERNITZ, ESQ.
California State Bar No. 12563
Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone No. (775) 329-5600
Facsimile No. (775) 348-8300


R. PAUL YETTER (*pro hac vice*)
Yetter Coleman LLP
909 Fannin, Suite 3600
Houston, Texas 77010
Telephone No. (713)-632-8000
Facsimile No. (713) 632-8002

Attorneys for JOSEPH HARDESTY
and YVETTE HARDESTY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| JOSEPH HARDESTY, et al., | Case No. 2:10-cv-02414-KJM-KJN |
| Plaintiffs, | |
| vs. | |
| SACRAMENTO METROPOLITAN AIR QUALITY MANAGEMENT DISTRICT, et al., | |
| Defendants. | |
| | [Partially consolidated with] Case No. 2:12-cv-2457-KJM-KJN |
| JAY SCHNEIDER, | |
| Plaintiff, | **PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL** |
| vs. | |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 1

COME NOW Plaintiffs Joseph and Yvette Hardesty (collectively, the "Hardestys"), by and through their counsel, Robertson, Johnson, Miller & Williamson and Yetter Coleman, and the Schneider Plaintiffs ("the Schneiders"), by and through their counsel, Law Office of Richard M. Ross and Millstone Peterson & Watts, LLP, and hereby move this Honorable Court - pursuant to the authority discussed below, Local Rule 230, and the Court's operative Scheduling Order (Doc. #196) and Order continuing the trial date (Doc. #279) - for an order precluding Defendants from offering proposed expert testimony at trial from Mr. Steven J. Hazel ("Mr. Hazel" or "Hazel").[1] This Motion is supported by the following Memorandum of Points and Authorities, the pleadings and papers on file herein, the exhibits attached hereto, and any oral argument the Court chooses to consider.

## I.  INTRODUCTION

Plaintiffs request that the Court exclude the remaining Defendants' (collectively, "Defendants") designated rebuttal expert, Mr. Hazel, from offering any expert opinions in this case, as well as in the consolidated case, because his proposed testimony does not meet the generally accepted standards for admissibility.[2] Hazel is not qualified in the areas in which he attempts to opine, and his testimony is based upon insufficient evidence. This point is reinforced by the fact that Hazel's purportedly-expert testimony was partially struck by Judge Denver in the Eastern District of North Carolina for this same reason, i.e., because Hazel "ha[d] not provided an evidentiary basis for the quantitative assumptions that informed his opinion." (Ex. 3, Order.) In addition, his proposed testimony is not reliable and will not assist the trier of fact in any way (i.e. it is not relevant). He also offers opinions outside the scope of appropriate rebuttal. Thus, other than bearing the title of an alleged "expert" to presumably bolster Defendants' witness list, Hazel does not offer anything of value to the Court or the jury. Accordingly, the Court should exclude his proposed expert testimony in its entirety.

---

[1] The Hardestys and the Schneiders will collectively be referred to herein as "Plaintiffs."

[2] Hazel's report regarding the Schneiders primarily discusses Dr. Coleman's analysis of the Schneiders' damages. However, it also references Dr. Coleman's analysis of the Hardestys' damages. (*See e.g.* 2457 Doc. # 99-1 at p. 3.) In addition, the matters are to be tried together and any opinions offered related to the Schneiders may impact the Hardestys' case. Accordingly, out of an abundance of caution, the Hardestys move to exclude Hazel's opinions related to HSG, as well as those related to the Schneiders.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 2

## II. RELEVANT PROCEDURAL BACKGROUND

The Hardestys designated Dr. Gilbert Coleman as a retained expert and served his expert report on April 22, 2014.[3] (*See* Doc. #173.)[4] Defendants did not disclose primary experts. Instead, the County of Sacramento and its related employee Defendants (collectively, "County Defendants") disclosed Hazel as a retained rebuttal witness on May 22, 2014. (*See* Doc. # 169.) On May 23, 2014, Defendant Dennis O'Bryant ("O'Bryant") also designated Hazel as a retained rebuttal witness. (*See* Doc. # 170.)[5]

The Schneider Plaintiffs (collectively, the "Schneiders") designated Dr. Coleman as a retained expert and provided his expert report on May 19, 2015. (*See* Doc. # 207.) The County Defendants then provided a supplemental expert witness disclosure of Hazel to address Dr. Coleman's opinions for the Schneiders. (*See* Case No. 2:12-cv-02457-KJM-JFM Doc. # 99.)[6]

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose the identity of any expert witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[3] While the designation and report was timely provided to the opposing parties, it was not filed until May 23, 2014. (*See* Doc. #173 at p. 1.)
[4] The Docket numbers referenced herein will refer to Case No. 2:10-cv-02414-KJM-JFM unless otherwise noted.
[5] Curt Taras, Gay Noris, and Steven Testa also designated Hazel, but have since been dismissed from the lawsuit. (*See* Doc. # 283 and 285.)
[6] Further Docket references to Case No. 2:12-cv-02457-KJM-JFM will be in the following form: "2457 Doc. # __."

Federal Rule of Evidence 104 addresses preliminary admissibility requirements. "Taken together, Rules 104 and 702 focus attention on whether the expert witness is qualified to testify, whether such testimony is relevant, and whether such testimony is reliable." *Wood v. Southwest Airlines Co.*, Case No. 2:14-cv-01421-KJM-CKD, 2016 US Dist. Lexis 21394 *4 (E.D. Cal. Feb. 20, 2016) (citations omitted).

Generally, "matters within the common knowledge of jurors" are an inappropriate subject for expert testimony. *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990). Moreover, it is inappropriate for an expert to testify to legal conclusions. *See e.g. Gable v. NBC*, 438 Fed. Appx. 587, 589 (9th Cir. 2011).

Anytime expert testimony is offered, the trial court must perform a screening function to ensure that the expert testimony both rests on reliable foundation and is relevant to the case. *See e.g. Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). Courts may properly exclude expert evidence that is purely speculative or based on insufficient data. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005).

"Ultimately, the proponent of the expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence." *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1260 (N.D. Cal. 1997) (citing *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)).

**IV. DISCUSSION**

Hazel's report concerning the Hardestys has two main sections. First, Hazel attempts to review and rebut Dr. Coleman's report. (*See* Doc. # 170-1 at p. 1 ("RGL Forensics was engaged… to review and rebut the valuation analysis of Hardesty Sand and Gravel… provided by Dr. Gilbert Coleman, Ph.D…."); *id.* at pp. 3-5.) Second, he performs an independent calculation of the fair market value of Hardesty Sand and Gravel ("HSG"). (*See id.* at p. 1 ("In addition, you have asked us to perform a calculation valuation as to the Fair Market Value of HSG"); *id.* at pp. 5-9.)

Similarly, Hazel's report concerning the Schneiders has two sections. First, Hazel provides an alleged rebuttal to Dr. Coleman's report. (*See* 2457 Doc. # 99-1 at p. 1 ("[t]he report

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 4

contains my professional opinion with respect to the analysis completed by Coleman…."); *id.* at pp. 3-4.)  Second, he attempts to perform an evaluation of the lost profits to the Schneiders.  (*See id.* at p. 1 ("[t]he report contains…my independent evaluation of the lost profits of the Schneiders…."); *id.* at 4-6.)

Hazel should be precluded from offering his opinions at trial because he does not satisfy any of the expert admissibility requirements.  He is not qualified to opine on the appropriateness of Dr. Coleman's methods of damage calculation because he lacks the requisite education, training, and experience in the area.  In addition, Hazel's proposed opinions are both unreliable and irrelevant.  Moreover, Hazel's damage analysis for the Hardestys and the Schneiders should be excluded because it either falls outside the scope of proper rebuttal or because his opinions do not satisfy the basic admissibility requirements.  Accordingly, the Court should exclude Hazel's testimony in its entirety.

**A. <u>Hazel's Rebuttal Opinions Do Not Satisfy the Admissibility Requirements.</u>**

*1. Hazel is not qualified to rebut Dr. Coleman's Opinions.*

Hazel cannot satisfy the qualification requirement in this case and, therefore, cannot be permitted to offer his opinions at trial.  In assessing the proposed expert's qualifications, the Court must consider whether the expert offers some special knowledge, skills, experience, training, or education on the subject matter of the testimony contemplated.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  Hazel does not have such qualifications.

        **a. Hazel is not qualified to rebut Dr. Coleman's opinions regarding the Hardestys' damages.**

With respect to the Hardestys, Dr. Coleman calculated damages by using the capitalized profits method (which can also be described as a present value lost profit analysis).  Hazel does not have a doctorate degree in economics.  While he is disclosed as an accountant and economist (*see* Doc. #169 at p. 1:24; 2457 Doc. # 99 at p. 2), he is simply not an economist.  During his deposition he could not identify any training in economics beyond the introductory university level business economic classes.  (*See* Ex. 1, Excerpts of Deposition of Steven Hazel, at pp. 180-182.)  His professional experience also has not provided him with any expertise in economics.

(*See generally* Ex. 1 at pp. 19-31.)  Hazel is simply a CPA with some experience valuing businesses using the fair market value approach.  Hazel's opinions with respect to Hardesty are premised on a fair market value approach (*See* Ex. 1 at pp. 155-156, 234), even though that is not the approach used by Dr. Coleman.  (*See* Ex. 2, Excerpts of Deposition of Dr. Gilbert Coleman, at pp. 24-26, 31, 65.)  Hazel admittedly does not handle lost profit type of work.  (*See* Ex 1 at pp. 42-44.) ("That's not my core practice. You'd have to ask one of them.")  Hazel may be qualified to audit books, perform an accounting process, or appraise certain[7] businesses before sales transactions, but none of those processes are involved here.

Hazel was disclosed as a rebuttal expert.  Thus, his testimony must be evaluated in terms of whether he has the requisite qualifications to evaluate the methodology used by Dr. Coleman, because that is the testimony contemplated.  Hazel is not qualified to rebut Dr. Coleman on the most basic level: Hazel is not an economist and admittedly does not have training or experience performing the economic analysis Dr. Coleman employed here.  Accordingly, Hazel's rebuttal testimony concerning the Hardestys should be excluded.

### b. Hazel is not qualified to rebut Dr. Coleman's opinions regarding the Schneiders' damages.

Dr. Coleman calculated the lost income to the Schneiders by evaluating two sources of loss: (1) the loss of royalties from the stockpiles of material that has already been mined but has not been sold due to Defendants' actions; and (2) the future loss of royalties from the un-mined reserves on the property.  (*See* Doc. #207-1 at p. 1.)  Hazel's opinions with respect to the Schneiders present a slightly different qualification issue.   With respect to the Hardestys, Hazel was attempting to rebut Dr. Coleman's opinion using an entirely different methodology than what was used by Dr. Coleman (i.e. Hazel was using a fair market value methodology to critique Dr. Coleman's capitalization of profits method or present value lost profit analysis).  Here, however, Hazel indicates he is using the same methodology as Dr. Coleman (i.e. lost profit analysis), but that he is not qualified regarding the same.

---

[7]    As will be discussed more below, even if such a method was appropriate, Hazel does not have sufficient experience valuing businesses comparable to HSG to provide a valuation in this case.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 6

Hazel admitted during his deposition that performing lost profit analysis was not in his wheelhouse or his core practice, yet he endeavors to critique Dr. Coleman's analysis on that very subject. (*See* Ex. 1 at pp. 44, 51.)  Hazel is an accountant and has had some experience valuing specific types of businesses for sales transactions.  He is not an economist and does not have experience performing lost profit analysis.  Accordingly, Hazel is not qualified to offer rebuttal testimony to Dr. Coleman's opinions regarding the Schneiders' damages.

### *2. Hazel's rebuttal testimony is not reliable.*

Hazel's rebuttal opinions also do not satisfy the reliability prong of the analysis because he has not explained how his CPA experience is reliably applied to the facts of this case, his critiques of Dr. Coleman are based on an incompatible and flawed methodology, as well as insufficient facts and data.  Expert testimony is reliable if it "has a reliable basis in the knowledge and experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014).  The reliability prong focuses on the soundness of the expert's methodology.  *Id.*  "Expert testimony must be properly grounded, well-reasoned, and not speculative." *United States v. Harmanek*, 289 F.3d 1076, 1094 (9th Cir. 2002).  If the expert is basing his opinion on experience, rather than special training or education, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  FRE 702 advisory committee's note (2000 Amendments).

**a. Hazel does not explain how his experience can be reliably applied to the facts here, and he uses a flawed methodology to attack Dr. Coleman's opinions regarding the Hardestys.**

Initially it is important to note that Hazel does not have formal training or education in economics, so his opinions must be based on his experience.  However, Hazel does not even attempt to explain how his experience leads to the conclusions he reached, why his experience is a sufficient basis for his opinions, and how his experience is reliably applied to the facts in this case.  *See id.*  On this basis alone, his opinions should be excluded because they are unreliable.

Moreover, when his opinions are independently evaluated it becomes increasingly evident that his methodology is flawed.  For example, Hazel asserts that Dr. Coleman should

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 7

have accounted for income taxes in his calculation of damages. Any judgment the Hardestys obtain will be taxed, however, so accounting for income taxes by first reducing the Hardesty's damage award would operate to double tax and significantly undercut the Hardestys damages. Similarly, Hazel criticizes Dr. Coleman for failing to reduce his damages calculation to account for necessary capital replacement costs. Yet, Dr. Coleman used the depreciation information from HSG's tax returns in his calculations, which account for replacement costs. The same is true of Hazel's criticism related to repairs and maintenance expenditures. The information is accounted for in HSG's tax returns, which Dr. Coleman used to complete his analysis.

Hazel's methodology errors are based on his faulty premise that the damages in this case must be evaluated using a fair market value approach. Yet, that is not the method used by Dr. Coleman, so his critiques are akin to comparing apples to oranges. The issue with his overall methodology compared to Dr. Coleman's methodology is particularly obvious when considering Hazel's assertion that Dr. Coleman made a discount rate error. Hazel's valuation experience is in performing a fair market value of businesses in a purchase and sale context and that is how he evaluated HSG. (*See* Ex. 1 at pp. 40-41, 234.) In that context, the evaluation of risk is an important piece of the equation. However, the same risk analysis is not appropriate in the evaluation of HSG's damages in this case. The Hardestys are not attempting to sell their business. They want to operate it. The risks presented to a new buyer of the business are not present in the Hardestys' case if they were allowed to continue operations. The Hardestys are familiar with the product, have a system for successfully running their small business, know the value of the product and to whom to market their product, etc. The Hardestys' situation cannot be equated to that of a new buyer.

The same is true of Hazel's conclusion regarding market method incompatibility. He asserts that Dr. Coleman "grossly overstates" the value any willing investor would be willing to pay for a one-hundred percent (100%) interest in HSG, but that is not the formula used by Dr. Coleman. Dr. Coleman's damage model considers what the Hardestys' profitability would be if they were allowed to operate the business as intended.

If Hazel had the requisite experience to perform a capitalized profit analysis and offered critiques of Dr. Coleman's report using the same methodology that would be one thing. But, in this case, Hazel attempts to apply an incompatible methodology to rebut Dr. Coleman's analysis. Hazel's methodology used is unsound and will only serve to confuse the jury. Accordingly, his testimony related to the Hardestys and HSG should be excluded.

> **b. Hazel does not explain how his experience can reliably be applied to the facts here, his methodologies are flawed, and he relies on insufficient facts and data to attack Dr. Coleman's opinions regarding the Schneiders.**

As with his report regarding the Hardestys, Hazel does not even attempt to explain how his experience leads to the conclusions he reached regarding the Schneiders, why his experience is a sufficient basis for his opinions, and how his experience is reliably applied to the facts in this case. *See* FRE 702 advisory committee's note (2000 Amendments). On this basis alone, his opinions should be excluded because they are unreliable.

Moreover, Hazel's methodologies are flawed because he does not understand the nature of the Schneiders' and the Hardestys' relationship. The Schneiders do not have any overhead costs or risks because they do not mine the property. The product simply exists on their property and the Hardestys pay them to mine there. Hazel criticizes Dr. Coleman's discount rate in this case asserting that Dr. Coleman ignores things like markets, supplier, customer and vendor risks, costs to obtain the materials, lack of size relative to the general equities markets, etc. (*See* 2457 Doc. # 99-1 at p. 3.) However, the Schneiders do not have any of those risks because they do not mine the property. Thus, his methodologies are flawed, irrelevant, and cannot be relied upon.

Hazel's opinions related to the Schneiders also should be excluded because they are based on speculation, not on actual facts and data. For example, he did not try to reconcile his lost profit calculation with the royalty payments actually paid to the Schneiders. (*See* Ex. 1 at pp. 61:19 - 62:16.) He admittedly picked a random number, five (5%), as a reasonable royalty rate without doing the "analysis to come up with the right one for the Schneiders." (*Id.* at p. 63: 3-5.) Hazel admittedly "didn't pull any of the databases related to royalties in this industry."

(*Id.* at l. 13-14.) He also admits that he did not have enough information to evaluate whether there were any overhead costs to the Schneiders. (*Id.* at 76:4-19.) Hazel essentially acknowledges the speculative nature of his calculations by admitting that the royalty rate he used was a "placeholder." (*Id.* at p. 77:3-14.) As such, Hazel's opinions related to the Schneiders are unreliable, based on insufficient facts and data, and should be excluded.

### 3. *Hazel's rebuttal testimony is irrelevant.*

Hazel's proposed opinions related to Hardesty are not relevant because he relies on an incorrect premise: that the Hardestys' damages must be valued in terms of what their business could be sold for in 2010. Similarly, his proposed opinions ignore the Schneiders' role and the parties' relationship. Expert testimony is relevant or helpful "if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2008). The relevancy prong of the analysis requires that "[t]he evidence…logically advance a material aspect of the party's case." *Estate of Barabin*, 740 F.3d at 463 (citation omitted) *see also Daubert*, 509 US at 591 (citing approvingly to *US v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985), for proposition that "An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

### a. Hazel's testimony regarding the Hardestys is irrelevant.

As indicated above, the analysis offered by Hazel regarding HSG is focused on what a reasonable buyer would purchase the business for, but that is not the issue at hand. The Hardestys are not attempting to sell their business. Hazel's report and deposition make it clear that he only considered what a willing investor or buyer would pay for the HSG business. (*See* Doc. # 170-1 at 5-6 (indicating that the calculation is based on the price at which the property would change hands between a willing buyer and a willing seller); Ex. 1 at pp. 155-156, 234.) He conducted a fair market value analysis, not a present value lost profit analysis. The Hardestys are attempting to operate their business, but Defendants' conduct has prevented them from doing so. The relevant considerations are the amount of profits lost by the Hardestys since the business was improperly shut down and the amount of the future lost profits due to the closure. Hazel

does not address these relevant factual issues.  Accordingly, Hazel's opinions regarding the Hardestys are not helpful to the jury and should be excluded.

### b. Hazel's testimony regarding the Schneiders is also irrelevant.

Hazel fails to understand the nature of the Schneiders' and the Hardestys' relationship or the Schneiders' role.  The Schneiders do not have any overhead costs or risks because they do not mine the property.   Hazel, however, ignores the actual facts in this case and assumes that the Schneiders have various overhead costs and market risks that are simply not present. (*See* 2457 Doc. # 99-1 at p. 3.)   Like with the Hardestys, Hazel does not address the relevant factual issue.  Thus, Hazel's opinions will not be helpful to the jury and should be excluded.

### *4. In Summary, Hazel Cannot Satisfy the Basic Admissibility Requirements for His Opinions Related to Both the Hardestys and the Schneiders and His Testimony Should be Excluded.*

While it is Defendants' burden to demonstrate the admissibility of Hazel's testimony, the Hardestys submit that the discussion above demonstrates that Hazel cannot offer any admissible testimony in this matter.  Hazel is not qualified to offer his proposed testimony related to the Hardestys or the Schneiders.  Based on that fact alone, his testimony should be excluded—although, he also fails to satisfy the other admissibility requirements.  As discussed above, Hazel's proposed testimony related to the Hardestys or the Schneiders is unreliable, and he has done nothing to connect his experience to the conclusions reached in this case.  Further, his testimony is irrelevant.  Therefore, Hazel's proposed testimony should be excluded from trial in its entirety.

### B. <ins>Hazel's Testimony Regarding His Independent Damage Calculations Should Be Excluded For Multiple Reasons.</ins>

The second portions of Hazel's reports include his own damage calculations.  With respect to the Hardestys and HSG, Hazel's calculation exceeds the scope of appropriate rebuttal testimony.  The proposed valuation testimony for HSG also fails to meet the admissibility requirements.  Similarly, Hazel's lost profit analysis related to the Schneiders does not satisfy the basic admissibility requirements.  Accordingly, Hazel should not be permitted to testify regarding damages in this case.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 11

### *1. Hazel's valuation opinion related to the Hardestys and HSG should be excluded because it is not within the proper scope of rebuttal testimony.*

The Court should exclude Hazel's proposed opinions regarding valuation of HSG because they are not within the proper scope of rebuttal. Rebuttal expert disclosures are appropriate when they are intended solely to contradict or rebut evidence on the same subject matter. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). Indeed, "[t]he principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case." *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir. 1999). Hazel's valuation is a calculation of what HSG would allegedly sell for as of July 31, 2010, which is not something Dr. Coleman addressed in his report. Hazel does not discuss Dr. Coleman or his opinions in the independent valuation section of his report; thus, it is not appropriate rebuttal.[8] *See e.g. Cunningham v. Arizona*, 2013 U.S. Dist. Lexis 92752, *5-6, 2013 WL 3335190 (D. Ariz. 2013) (excluding an expert's rebuttal opinion because, even though it was contrary to the opinion offered by the defendants' expert, the proposed rebuttal expert did not directly address the specific opinion offered by the defendants' expert or indicate that he reviewed the defendants' expert's report when he prepared his report); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) ("The purpose of rebuttal and supplementary disclosures is just that- to [rebut and to] supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline").

If the Defendants wanted to have Hazel perform his own independent analysis of the Hardesty damages – rather than rebut Dr. Coleman's analysis, then the Defendants should have listed Hazel as a primary witness for that analysis, not simply as a rebuttal witness to Coleman.

---

[8] Hazel's "independent valuation" analysis with respect to the Schneiders is different. Hazel's report for the Schneiders discussed the opinions reached by Dr. Coleman and distinguishes them throughout his "independent valuation" section. (*See* 2457 Doc. # 99-1 at pp. 4-6.) Hazel also indicated his testimony should be considered limited to rebuttal during his deposition. (*See* Ex. 1 at pp. 64:11- 65:12.) Thus, the scope of his opinions is not necessarily an issue related to the Schneiders. Instead, as discussed throughout this Motion, his qualifications to offer such opinions, as well as the reliability and relevance thereof, are the issues with respect to the Schneiders.

### 2. *Hazel's valuation opinion regarding HSG and the Hardestys does not satisfy the basic admissibility requirements.*

Even if Hazel's valuation of HSG was appropriate rebuttal (which it is not), his proposed testimony in that regard is still inadmissible because it does not satisfy the basic admissibility requirements. He is unqualified in the area of the proposed testimony and his proposed testimony is unreliable and irrelevant.

Initially, while Hazel may have some business valuation experience using the fair market value method, Hazel does not have experience valuing a comparable mining operation or situation. (*See e.g.* Ex. 1 at pp. 40-41, 148). Since the method he employs necessitates an analysis of what a reasonable buyer would pay and seller would sell such a business for, his lack of knowledge, training, and experience with valuing mining operations comparable to HSG is fatal. His analysis is speculative and unreliable.

Hazel's methodology is also unreliable because he relied on information on a broad industry scale to calculate risk and growth, not comparable businesses to HSG. (*See* Ex. 1 at pp. 150-151.) He selected a growth rate number on the basis that it would give him a nice round figure, not by examining growth rates specific to the mining industry and operations similar to HSG. (*See* Ex. 1 at pp. 177:9-15.) The same is true of his discount rate and capital expenditure numbers. (*See* Ex. 1 at pp. 175-176, 228:15-23.) Finally, as discussed above, Hazel's fair market value analysis is not relevant to the issues presented in this case because the Hardestys want to operate the business, not sell it.

### 3. *Hazel's lost profit calculation for the Schneiders does not satisfy the basic admissibility requirements*

Finally, Hazel's testimony regarding his lost profits calculation is not admissible because he is admittedly unqualified in the area of the proposed testimony. He simply has no experience in performing lost profit calculations. (*See infra* section A(1)(b).) Further, his proposed testimony is unreliable and irrelevant. (*See infra* section A(2)(b), A(3)(b).) Accordingly, Hazel's testimony regarding his lost profit calculation should be excluded.

## V. CONCLUSION

Plaintiffs submit that the Defendants have not, and cannot, satisfy their burden to demonstrate the admissibility of Hazel's testimony and, therefore, his testimony must be excluded. To the extent the Court is unsure of whether Hazel should be permitted to testify, Plaintiffs request that the Court conduct a hearing outside the presence of the jury to determine whether his testimony is admissible.

DATED this 17th day of June, 2016.

                                            ROBERTSON, JOHNSON,
                                            MILLER & WILLIAMSON

                                            By:   */s/ G. David Robertson*
                                                     G. David Robertson, Esq.
                                            *Attorneys for the Hardesty Plaintiffs*

                                            MILLSTONE PETERSON & WATTS, LLP
                                            2267 Lava Ridge Court, Suite 210
                                            Roseville, CA 95661

                                            By:   */s/ Glenn W. Peterson*
                                            ***(as authorized on 06/--/16)***
                                            Glenn W. Peterson, Esq.
                                            *Attorneys for the Schneider Plaintiffs*

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 14

**Certificate of Conference**

The parties generally conferred about this Motion on June 16, 2016, and Defendants confirmed that they were opposed of the motion.

                                              */s/ G. David Robertson*
                                              G. David Robertson, Esq.

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of Robertson, Johnson, Miller & Williamson, over the age of eighteen, and not a party to the within action. I further certify that on the 17th day of June, 2016, I electronically filed the **PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL** and thus, pursuant to LR 135(a), caused same to be served by electronic mail on the following:

| | |
|---|---|
| Glenn W. Peterson, Esq.<br>Millstone Peterson & Watts, LLP<br>2267 Lava Ridge Court, Suite 210<br>Roseville, CA 95661<br>*Attorneys for Jay Schneider, et al.* | David G. Alderson, Esq.<br>Office of The Attorney General<br>P.O. Box 70550<br>Oakland, CA 94612<br>*Attorneys for Defendants Dennis O'Bryant,<br>Gay Norris, Steve Testa and Curt Taras* |
| Mark O'Dea, Esq.<br>Longyear, O'Dea and Larvara, LLP<br>3620 American River Drive, Suite 230<br>Sacramento, CA 95864<br>*Attorneys for Defendant County of Sacramento* | Richard M. Ross<br>Law Office of Richard M. Ross<br>8081 North Forbes Road<br>Lincoln, CA 95648<br>*Attorneys for Jay Schneider, et al.* |

                                              */s/ Kimberlee Hill*
                                              An Employee of Robertson, Johnson,
                                              Miller & Williamson

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFFS' JOINT MOTION TO EXCLUDE TESTIMONY FROM STEVEN J. HAZEL
PAGE 15